**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF FLORIDA, *ex rel.* ANGELA RUCKH,<br><br>        Plaintiff,<br>v.<br><br>GENOA HEALTHCARE CONSULTING, LLC, d/b/a/ LAVIE CARE CENTERS, and SALUS REHABILITATION, LLC, d/b/a/ LAVIE REHAB,<br><br>        Defendants. | CASE NO. 8:11-cv-01303-SDM-TBM |

**MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO
RELATOR'S FIRST SET OF DOCUMENT REQUESTS**

Relator Angela Ruckh, by and through her attorneys, and pursuant to Fed. R. Civ. P.

34 and Local Rule 3.04, respectfully submits this motion to compel Defendants to produce

documents responsive to Relator's First Set of Document Requests.

Defendants have made clear to Relator that, unless this Court intervenes, they will not

comply with their discovery obligations under the Federal Rules.  Without basis, Defendants

have refused to produce *any* documents in response to three simple, targeted requests for

discovery seeking mostly documents Defendants have *already produced* to or received from

the Government (along with basic documents identifying Defendants' corporate structure).

Moreover, Defendants have unilaterally re-pled Relator's case as if it merely related to a few

minor instances of overbilling.  In fact, as set forth in the specific, concrete allegations in

Relator's complaint, Relator alleges a systematic and organization-wide effort by the LaVie

defendants to overbill Medicare by fraudulently upcoding the amount of care patients received.  Indeed, the breadth of the Government's ongoing investigation of Defendants, which is directly based on the information provided by Relator, demonstrates that Relator's claims are in no way confined in the manner Defendants claim.  With the discovery deadline less than six months away, Defendants are simply trying to run out the clock.  Relator asks this Court to compel production without delay.

## BACKGROUND

This federal and Florida False Claims Act case concerns the "wholesale upcoding of patient/resident care, backdating of documents submitted in support of claims for payment and the fabrication of billing data" at facilities affiliated with or operated or owned by Defendant LaVie Health Care Centers ("LaVie"), both where Relator Angela Ruckh worked in 2011 and elsewhere.  Complaint, Doc. No. 1 ¶¶ 27-28 (June 10, 2011).  Ms. Ruckh's 2011 Complaint prompted the United States Department of Justice ("DOJ") to begin an investigation of Defendants.  *See* First *Ex Parte* Application for Extension, Doc. No. 5, at 2-3 (Aug. 5, 2011) (describing the DOJ's investigation).  Defendants claim they have now produced more than 174,000 pages of documents in response to the DOJ's Civil Investigative Demands ("CIDs").  *See* Defendants' Motion to Stay Discovery and for a Protective Order, Doc. No. 37, at 7 (Jan. 28, 2013) ("Defs.' Motion to Stay").  The DOJ served additional CIDs on Defendants after finding that "some of the MDS assessments" Defendants had produced "had been altered months after the date of the assessment," so that the "produced MDS assessments" differed from "the assessments that had been previously submitted by La Vie to qualify for Medicare and Medicaid reimbursement."  Second *Ex Parte* Application for

Extension, Doc. No. 8, at 3 (Dec. 9, 2011) ("2nd *Ex Parte* Applic. for Ext.") (same).[1]

On August 2, 2012, Ms. Ruckh amended her pleading.  First Amended Complaint, Doc. No. 16 ("Amended Complaint").  On October 2, 2012, Defendants moved to dismiss the Amended Complaint, in part on the theory that the entities named as defendants were not the entities responsible for billing the Government for payment for services provided by the entities or their affiliates.  *See* Defendants' Motions to Dismiss, Doc. Nos. 19-20 (Oct. 2, 2012).[2]  In her opposition, Ms. Ruckh objected to this unsupported "factual attack" on the Amended Complaint, and also pointed out that Defendants' argument only underscored the need for "immediate discovery concerning Defendants' corporate relationship to each other and to others (who perhaps should be named as additional defendants)."  Relator's Opposition to Defendants' Motions to Dismiss, Doc. No. 26, at 2, 12-13, 14 (Oct. 31, 2012).

On December 31, 2012, Relator propounded her first set of document requests to Defendants, which contained three straightforward requests: (1) documents Defendants produced to the Government in connection with its ongoing investigation of Defendants "related to this litigation or the allegations in the Complaint or First Amended Complaint"; (2) the Government's corresponding requests; and (3) documents sufficient to identify the Defendants' corporate structure.  *See* Relator's First Set of Requests for Production of Documents, at 8-10 (Dec. 31, 2012) ("Relator's Requests") (attached as Exhibit A to the Feb.

---

[1]    Although the DOJ advised this Court in April 2012 that its "investigation ha[d] not been completed and, as such, the United States [wa]s not able to decide . . . whether to proceed with the action," it assured the Court that its investigation would continue and left open the prospect that it would intervene at a later time. Notice of the United States that It Is Not Intervening at this Time, Doc. No. 10, at 1, 2 (Apr. 10, 2012).

[2]    *See* Salus Rehabilitation's Motion to Dismiss, Doc. No. 20, at 4 (Oct. 2, 2012) ("Salus is only a company related to Marshall and Governor's Creek in that they share the same parent company, but Salus has no direct control over and little to no involvement with the Facilities' operations, including any billing functions."); Genoa Health Care Consulting's Motion to Dismiss, Doc. No. 19, at 7-8 (Oct. 2, 2012) ("Genoa is only a related company with a tenuous connection, if any, to this matter.").

8, 2013, Declaration of Silvija A. Strikis in Support of Relator's Motion To Compel ("Strikis Decl.")).

On January 30, 2013, Defendants served their "responses" to Relator's first set of document requests. Defendants refused to produce even a *single* document, and instead lodged boilerplate objections. *See* Defendants' Objections to Plaintiffs' First Request for Production (attached as Exhibit B to Strikis Decl.) ("Defs.' Objections"). On February 4, 2013, counsel for the parties met and conferred by telephone regarding the basis for Defendants' objections and Defendants' unwillingness to produce *any* documents in response to Relator's first set of targeted document requests. *See* Strikis Decl. ¶¶ 5-8. During the call, Defendants' counsel admitted that no stay had been entered, but still insisted that Defendants would produce no documents until a ruling on their pending motion to stay. *See id.* ¶ 8.[3] Relator's counsel stated that, given Defendants' position, Relator had no choice but to seek this Court's intervention.

## ARGUMENT

Defendants unilaterally have granted themselves a stay of discovery, which this District's discovery rules make clear they are not permitted to do. Defendants' baseless objections should be rejected in their entirety, and Defendants should be ordered to produce the requested documents promptly.

Defendants' objections to Relator's first set of document requests do not represent a serious effort to comply with their discovery obligations. Defendants offer no authority for

---

[3] On January 28, 2013, two days before the deadline for responding to Relator's document requests, Defendants moved for a protective order and stay of discovery. *See* Defs.' Motion to Stay. Relator promptly filed an opposition to that motion. *See* Relator's Opposition to Motion for Protective Order and Stay, Doc. No. 39 (Jan. 31, 2013). Defendants' motion for a stay is presently pending.

withholding *all* documents because *some* objections have been asserted.  Nor have

Defendants raised valid objections.  Defendants instead ignore the substance of Relator's

requests—and their corresponding discovery obligations—arguing that Relator's case is

limited to conduct at two skilled nursing facilities in 2011, despite that the Relator has

directly and specifically alleged far more sweeping misconduct, as confirmed by the

Government's broad investigation.  They assert that documents are non-responsive, and that

production would be unduly burdensome, even though the very same documents have

already been produced to the Government in response to its ongoing investigation of

Relator's allegations.  They claim ignorance about the existence of documents identifying

Defendants' relationships with related entities, but they are unwilling to describe the nature

or extent of the search they have undertaken for those documents.

**I.      This Court Should Order Defendants To Produce Responsive Documents To
          Which Defendants Have No Specific Objection**

As a threshold matter, Defendants' objections do not comply with the basic principle

that "[o]bjections to portions of a document request do not excuse the responding party from

producing those documents to which there is no objection."  Middle District Discovery

III.A.6 at 11 (rev. Sept. 4, 2001).  Leaving aside that (as explained below) each of

Defendants' objections is meritless, Defendants have no basis for refusing to produce

documents to which they do *not* object, and no basis for objecting wholesale to the targeted

requests made by Relator.  Defendants do not claim that their objections apply to *every*

document responsive to Relator's requests.  Nor could they.  Even under Defendants'

incorrect reading of the Relator's allegations, for example, she is entitled to obtain *some*

documents Defendants have produced to the Government in connection with its

investigation.  For the same reason, she is entitled to obtain the Government's requests—subpoenas, CIDs, and the like—which were issued as a result of Relator's complaint.  And, particularly because Defendants have put at issue the extent of their liability for the actions of related entities, Relator is entitled to obtain documents identifying who owns Defendants; what facilities Defendants or their affiliates own; and which affiliates are responsible for submitting claims for payment to the state and federal governments.

In refusing to produce any documents whatsoever, Defendants have arrogated to themselves the power—properly reserved to this Court—to grant themselves a stay of discovery.  *See* Middle District of Florida Discovery VI.B (2001) at 20 ("The mere filing of a motion for a protective order does not, *absent an order of the Court granting the motion*, excuse the moving party from complying with the requested or scheduled discovery.") (emphasis added).  The Court should reject this improper tactic and order Defendants to comply promptly with their discovery obligations, which are indisputable.

## II.    This Court Should Prohibit Defendants from Constricting This Lawsuit To Avoid Liability and Should Compel Production of All Responsive Documents

Defendants repeatedly claim that Relator's requests are "overly broad," or "seek[] documents outside the scope and time period of the allegations of the Amended Complaint," or are "unduly burdensome"—even as to documents Defendants have already produced. Defs.' Objections at 2 ¶ 1; *accord* at 4, 5.  Defendants' counsel rationalized this objection during the parties' meet-and-confer on the odd theory that Relator's allegations are limited to the facilities at which she worked and the time period she worked at each, and thus that she is entitled to discovery only as to those facilities for that period.  *See* Strikis Decl. ¶ 5. Defendants are wrong both about the scope of Relator's claims and her discovery requests.

"The scope of discovery is not circumscribed by the specific allegations or claims in the complaint." *Adelman v. Boy Scouts of America*, 276 F.R.D. 681, 697 (S.D. Fla. 2011); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (Rule 26 has been construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case," and "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues"); *Dallas v. Calhoun Cnty. Sch. Dist.*, 2011 WL 2006290, at *3 (N.D. Fla. May 23, 2011).  Even if, as Defendants suggest, Relator's claims were limited to the facilities where she worked—and they are not—evidence of fraud at other facilities would still be "reasonably calculated to lead to the discovery of admissible evidence" and therefore discoverable under Rule 26.  Fraud at other facilities, for example, could be offered to show that the false submissions Relator saw were not the result of mistake or accident, but rather part of a common scheme or plan.  *See* Fed. R. Evid. 404(b).

Indeed, Relator's Amended Complaint alleges just that—that Defendants engaged in pervasive upcoding across LaVie facilities, including *but not limited* to the two facilities where Relator worked and the period of time she worked there.  In addition to observing significant upcoding of patient records at Marshall and Governor's Creek, Relator participated in telephone calls on which LaVie managers and regional administrators encouraged employees to upcode RUG levels in order to obtain higher levels of reimbursement from the Government.  Amended Complaint ¶ 32.  These observations provide strong evidence that the fraud Relator personally observed at Marshall and Governor's Creek was a consistent practice promoted by management at other LaVie

facilities, not a one-off event, and thus that Defendants have engaged in a "statewide, if not nationwide, scheme to defraud the Federal Government and State of Florida." *Id.* ¶ 48.

The breadth of the Government's ongoing investigation is more persuasive evidence that the pattern of conduct Relator observed was widespread, and did not merely start when she arrived at Marshall or Governor's Creek and stop when she left.  According to Defendants' counsel during the meet-and-confer, the Government is investigating the conduct of a number of Defendants' facilities and affiliates, including Sea Crest, Shoreline, Genoa, Salus, Marshall, Governor's Creek, and other facilities Defendants' counsel declined to name.  *See* Strikis Decl. ¶ 6.  And the Government has requested responsive documents from these entities covering a four-year period from January 1, 2008, to January 2012.  *See id.*  To date, Defendants have produced more than 174,000 pages in response to these requests.  *See* Defs.' Motion to Stay at 7.  Plainly the Government, which initiated this investigation *at Relator's behest*, does not view Relator's case restrictively, as Defendants conveniently do.

This Court should reject Defendants' unsupportable reading of Relator's allegations, and compel Defendants to produce documents responsive to Relator's requests for the duration of the period to which Relator is statutorily entitled to discovery.[4]  Because Defendants' initial disclosures, served on February 1, 2013, follow the same mistaken theory, *see* Defendants' Initial Disclosures (attached as Exhibit C to Strikis Decl.), Relator also

---

[4]     Relator is entitled to discovery for the ten years preceding the filing of her Complaint on June 10, 2011.  *See* 31 U.S.C. § 3731(b)(2).  Relator's first and second requests for production at issue in this motion cover a much smaller period—the date range in which the Government issued subpoenas, CIDs, or other document requests in connection with this investigation (*i.e.*, 2011 and 2012) and the date range for documents responsive to those requests, which Defendants' counsel has said begins on January 1, 2008.

requests that the Court order Defendants to supplement their initial disclosures without delay.

## III.   Defendants' General Objections Should Be Overruled

Defendants' general objections are contrary to this District's discovery rule that "[o]bjections to requests for production should be specific, not generalized, and should be in compliance with the provisions of Rule 34(b), Federal Rules of Civil Procedure."  Middle District Discovery III.A.6 at 11 (rev. Sept. 4, 2001).  None provides a basis for Defendants not to comply with their discovery obligations.

**A.**     Courts in this Circuit have repeatedly rejected objections identical to Defendants' boilerplate statements that requests lack "relevan[ce] to the subject matter of the pending action," or are "not reasonably calculated to lead to the discovery of admissible evidence,' Defs.' Objections at 2 ¶ 1, 3, 4.[5]

**B.**     Defendants' blanket privilege objections, *see* Defendants' Objections at 2 ¶ 4, supply no basis for refusing to produce any documents.  Privilege must be asserted "on a document-by-document basis," *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987), and "[a] party objecting to production on the grounds of privilege must produce [a] privilege log," *Horowitch v. Diamond Aircraft Indust., Inc.*, 2007 WL 1192401, at *2 (M.D. Fla. Apr. 23, 2007).  Defendants have failed to comply with either requirement.  And, during the parties' meet-and-confer on February 4, 2013, Defendants' counsel indicated that Defendants would not provide a privilege log unless and until production of documents is

---

[5]     *See, e.g.*, *Pepperwood of Naples Condominium Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 3841557, at *4 (M.D. Fla. Aug. 29, 2011) (rejecting same objection as "improper" because it "does not indicate why this request is irrelevant"); *Abdin v. Am. Sec. Ins. Co.*, 2010 WL 1257702 , at *2 (S.D. Fla. Mar. 29, 2010) (describing the same objection as "contain[ing] the meaningless boilerplate language that Courts have found to be inappropriate"); *Martin v. Zale Delaware, Inc.*, 2008 WL 5255555, at *2 (M.D. Fla. Dec. 25, 2008) ("[A]n objection that a discovery request is irrelevant and not reasonably calculated to lead to admissible evidence must include a specific explanation describing why.").

ordered.  *See* Strikis Decl. ¶ 8.

  **C.**  Defendants' objection to Requests to the extent they seek "the production of documents" available to Relator, or documents within Relator's control, Defs.' Objections at 2 ¶ 5, 3 ¶ 9, 4, 5, 6, is also improper.  "[T]o the extent defendant[s] object[] that certain requests . . . seek information equally available to plaintiff, 'courts have unambiguously stated that this exact objection is insufficient to resist a discovery request.'"  *Nat'l Academy of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (citation omitted); *Pepperwood*, 2011 WL 3841557, at \*4 ("Courts have unambiguously stated that this exact objection is insufficient to resist a discovery request."); *City Consumer Servs., Inc. v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) ("It is not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.") (internal citation and quotation marks omitted).

  **D.**  Defendants' various confidentiality objections, Defs.' Objections at 2 ¶ 3, 3 ¶ 10, 4, 5, are also improper boilerplate.  Defendants have not satisfied their "burden to show that the information sought by [Relator] is confidential and that disclosure would be harmful."  *NetJets Aviation, Inc. v. Peter Sleiman Dev. Group, LLC*, 2011 WL 6780879, at \*4 (M.D. Fla. Dec. 27, 2011).  They have not made "'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"  *Id.* at \*3 (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

  Even if Defendants could assert legitimate objections to producing specific documents, such objections would be no excuse for non-production here.  Any confidentiality concerns could be addressed by entry of a protective order to which

Defendants have refused to stipulate.[6]  In light of Defendants' failure timely to seek a

protective order and their unreasonable resistance to Relator's proposed order, their

confidentiality objections have been waived.[7]  At a minimum, Defendants should not be

permitted to avoid their discovery obligations, as long as they refuse to stipulate to a

protective order that they already have acknowledged is acceptable.  *See* Relator's Motion for

Entry of Protective Order Regarding Confidentiality of Records Produced During

Discovery.[8]

## IV.   This Court Should Overrule Defendants' Specific Objections to Relator's Tailored Requests

### A.   **Relator's Request Number 1.**  This request seeks:

> All subpoenas, civil investigative demands, or requests for production of documents, whether formal or informal, served upon Defendants by the Department of Justice, the Florida Attorney General, or any Government Health Agency related to this litigation or the allegations in the Complaint or First Amended Complaint.

Defendants provided the following objections:

> Response:  Objection, overly broad, vague, not reasonably calculated to lead to the discovery of admissible evidence, seeks documents likely already in the possession of

---

[6]     As set forth in Relator's Motion for Entry of Protective Order Regarding Confidentiality of Records Produced During Discovery, filed concurrently with this motion, discussions with Defendants' counsel have made clear that Defendants do not agree to stipulate to entry of a protective order governing any confidential information other than protected health information.

[7]     *See Coach, Inc. v. Visitors Flea Market, LLC*, 2012 WL 3243386, at *3 (M.D. Fla. Aug. 8, 2012) (upholding order to compel where defendant "could have sought a protective order as soon as [the plaintiff] requested the materials at issue"); *Nat'l Academy of Recording Arts & Sciences, Inc.*, 256 F.R.D. at 683 ("[I]f defendant truly believes it has confidential information that should be protected by a protective order, it should have entered into a stipulated protective order or filed a motion for a protective order before the date by which it was to produce responsive documents. . . . Defendant did not enter into a protective order, despite being afforded the opportunity to do so by plaintiff."); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D. Cal. 2007); *see also DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 690 (D. Kan. 2004) (rejecting party's objection to request on confidential information ground when party had neither moved for protective order nor established that documents contain confidential information or that disclosure would injury party or any other entity).

[8]     If the Court grants Relator's Motion for Entry of Protective Order Regarding Confidentiality of Records Produced During Discovery, filed concurrently with this motion, as Relator respectfully has requested that it do, Defendants' confidentiality objections will become moot.

Plaintiff, seeks documents outside the scope and time period of the allegations of the Amended Complaint.  Defendants object to the terms "any Government Health Agency" and "related to this litigation" as vague, imprecise, and ambiguous.

Defs.' Objections at 3-4.  These objections are baseless.

As explained *supra* Part II, this Request is not overbroad and does not seek documents outside the scope and time period of Relator's allegations.  The Request seeks only documents (*i.e.*, the Government's actual document subpoenas, CIDs, or other requests propounded on Defendants) that are "related to this litigation or the allegations in the Complaint or First Amended Complaint."  As the Amended Complaint makes clear, those allegations include upcoding at Defendants' facilities throughout the region for the past several years.

It is also not "vague."  The purportedly vague, imprecise, or ambiguous language in the Request consists of terms expressly defined in Relator's Requests.  *See* Relator's Requests ¶ 10 (defining "Government Health Agency"); *id.* ¶ 14 (defining the term "relate").  In addition, claims of vagueness do not relieve Defendants of their obligation to produce responsive documents to the extent the Request is *not* vague.

Defendants' boilerplate relevance objection also should be rejected.  *See supra* Part III.A.  The same is true of Defendants' objection to documents likely in Relator's possession.  *See supra* Part III.C.  The requests Defendants have received from the Government are obviously necessary to understand the documents (sought in Relator's second request) that Defendants produced to the Government thereafter.  The requests are particularly relevant in light of the Government's concern that Defendants may have produced altered documents in response to the Government's CIDs.  *See* 2nd *Ex Parte* Applic. for Ext., Doc. No. 8, at 3.

- 12 -

**B.      Relator's Request Number 2.**  This request seeks:

Any documents produced in response to any of the requests described in Request 1.

Defendants provided the following objections:

> Response:  Objection, vague, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence; seeks documents available to Plaintiff from other sources; seeks documents protected by attorney work product doctrine and attorney client privilege; seeks documents protected by HIPAA and other state privacy laws and documents protected by quality assurance or risk management privilege; seeks documents outside the scope and time frame of the allegations of the Amended Complaint; seeks documents from non-parties; seeks documents responsive to "documents produced in response to any of the requests described in Request 1" which is vague and overbroad.
>
> In addition, Defendants hereby incorporate any and all objections to any Civil Investigative Demands including, but not limited to: overbroad, vague, ambiguous, imprecise, unduly burdensome; objection to the request/demand to the extent it seeks the creation of any documents, documents protected by attorney client privilege or attorney work product doctrine, medical committee privilege, or any other privilege under state or federal law; objection to the extent such request/demand may be interpreted to violate the rights of confidentiality or privacy of any patient, employee, or staff member; objection to the extent such request/demand seeks confidential financial, business, or proprietary information, to the extent production would be oppressive, and to the extent the request/demand seeks production of a volume of electronic documents and data which would require an unreasonably extensive search and production of data which would impose undue costs on Defendants.

Defs.' Objections 4-5.

These objections are also baseless.  Many merely reiterate similar objections to Request Number 1; Defendants again protest that the Request is "vague, overly broad, . . . not reasonably calculated to lead to the discovery of admissible evidence[,] . . . [and] seeks documents outside the scope and time frame of the allegations of the Amended Complaint." As already explained, *see supra* Parts II, III, and IV.A, such boilerplate objections are improper.

Additionally, Defendants' "unduly burdensome objection cannot be sustained

because it is not supported by evidence establishing the burden that [they] would face in producing documents responsive to the request." *Columbia Data Prods., Inc. v. Symantec Corp.*, 2007 WL 486609, at *2 (M.D. Fla. Feb. 9, 2007). Relator seeks only documents produced to the Government, and only in response to requests relating to Relator's allegations or this litigation. Defendants have not, and cannot, explain why this imposes any burden at all, let alone an *undue* one. Defendants' counsel has represented that the entire production was electronic—PDFs and Concordance load files—and thus the production can be easily copied and provided to Relator. *See* Strikis Decl. ¶ 6. These documents were produced as a result of Relator's claims and are indisputably relevant to them. *See supra* Part II. Just as the Defendants are not entitled to pick and choose which documents they give the Government (or what they do to them first, *see* 2nd *Ex Parte* Applic. for Ext., Doc. No. 8, at 3), so too the Defendants are not entitled to pick and choose which documents to produce to Relator.

Defendants are not permitted to object to production on the ground that the responsive "documents [are] available to Plaintiff from other sources." *See supra* Part III.C. And, insofar as Relator's request seeks "documents from non-parties," that does not absolve Defendants of their obligation to produce documents they *do* have or *can* obtain. If Defendants have custody or control over the documents requested, they have an obligation to produce those documents, regardless of their source.

Although Defendants claim that the Request is vague in requesting "documents produced in response to any of the requests described in Request 1," they do not say which terms they do not comprehend. An unsupported "objection[] stating that a request is 'vague'

- 14 -

[or] 'overly broad'" is "meaningless standing alone." *Arthrex, Inc. v. Parcus Med., LLC*,

2012 WL 5382050, at *4 (M.D. Fla. Nov. 1, 2012) (brackets omitted).  It cannot justify non-

production.

Finally, Defendants' incorporation of "any and all objections to any Civil

Investigative Demands," Defs.' Objections at 4-5, is mystifying.  If Defendants refused to

produce certain privileged documents to the Government, they are of course free to assert the

same objection in producing documents to Relator.  Nothing in Request Number 2 requires

that Defendants make a *broader* production to Relator in response to the Government's CIDs

than they did to the Government itself.

**C.    Relator's Request Number 3.**  This request seeks information concerning

Defendants' corporate structure:

> Documents sufficient to show each and every entity that directly, indirectly or
> beneficially owns, controls, operates, or provides services at the Marshall Facility or
> the Governor's Creek Facility ("the Facilities"), including, but not limited to,
> documents sufficient to show:
>
>> a.    Any entities that own the Facilities, and any entity that owns or
>> controls those entities, through the corporate ownership chain to the ultimate
>> owner(s) of any relevant entities;
>>
>> b.    Any entities that operate the Facilities, and any entity that owns or
>> controls those entities, through the corporate ownership chain to the ultimate
>> owner(s) of any relevant entities;
>>
>> c.    Any entities that provide services at the Facilities, and any entity that
>> owns or controls those entities, through the corporate ownership chain to the
>> ultimate owner(s) of any relevant entities;
>>
>> d.    Any entities that have submitted any request for compensation or
>> reimbursement to any Government Health Agency for any services provided
>> at the Facilities, and any entity that owns or controls those entities, through
>> the corporate ownership chain to the ultimate owner(s) of any relevant
>> entities. For the avoidance of doubt, this includes any Medicare

Administrative Contractors, Fiscal or Administrative Intermediaries, or other carriers that process or submit any request for compensation or reimbursement to any Government Health Agency for any services provided at the Facilities, and any entity that owns or controls those entities, through the corporate ownership chain to the ultimate owner(s) of any relevant entities;

e.      Any entities that own or control property—including beds or medical devices—used at the Facilities, and any entity that owns or controls those entities, through the corporate ownership chain to the ultimate owner(s) of any relevant entities.

f.      Documents are sufficient with respect to an entity if they show, for that entity, (i) the entity's name, (ii) the entity's address, (iii) the nature of the entity's connection to the Facilities, and (iv) any contractual relationship, ownership, or control between that entity and the Defendants or any other entity responsive to this request.

Defendants provided the following objections:

Response:  Objection, overbroad, vague, duplicative, unduly burdensome, exceeds the scope and time frame of the allegations in the Amended Complaint, seeks confidential financial, proprietary business documents, seeks documents available to the Plaintiff through public records requests, seeks documents not in the possession and control of Defendants. Defendants object to the terms "any entities" as vague and overbroad, the terms "corporate ownership chain" as vague and imprecise, the terms "any entities what provide services at the Facilities" as vague and ambiguous, the terms "request for compensation or reimbursement" as vague and overbroad, the terms "Government Health Agency" as vague and overbroad, and the term "property" as vague, ambiguous, and Overbroad.

Defs.' Objections at 5-6.

After arguing in their motion to dismiss that *other* entities related to LaVie and not named in the Amended Complaint should bear responsibility for any False Claims Act violations, and after Defendants' counsel acknowledged in the February 4, 2013 meet-and-confer that there are "lots of entities" connected to LaVie, Defendants now refuse to produce any documents concerning the relationships among these entities.  It is hardly "overbroad" to request documents identifying these relationships where Defendants have put the matter at

issue (and where they or their affiliates are *responsible* for the complicated corporate

structure of which they are a part).  *See, e.g.*, *Markel Am. Ins. Co. v. Flugga*, 2012 WL

4356960, at *2 (M.D. Fla. Sept. 24, 2012) (documents held to be discoverable where they

contained information "directly at issue" in the case).  Moreover, Defendants do not explain

how it would be unduly burdensome to find and produce documents sufficient to identify

what entities *comprise* Defendants, and what entities own, operate, control, and provide

services at LaVie facilities such as where Ms. Ruckh worked.  Defendants presumably relied

on precisely such documents in asserting (without support) in their motion to dismiss that

Relator had sued the wrong entities.[9]  *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a

pleading, written motion, or other paper[,] . . . an attorney . . . certifies that to the best of the

person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances[,] . . . the factual contentions have evidentiary support [and] . . . the denials of

factual contentions are warranted on the evidence.").  Defendants cannot claim both that

Relator has sued the wrong entities and that they are unable provide any relevant evidence to

support that assertion.

Other objections asserted to Request Number 3 are groundless, as already explained.

Boilerplate objections, such as "vague" and "duplicative," are meaningless and improper

---

[9]     Counsel for Defendants said during the meet-and-confer on February 4, 2013, that she was not certain whether ownership documents exist for some entities or whether there are written contracts governing the relationships between the entities.  *See* Strikis Decl. ¶ 7.  Later in the call she said that because the facilities had been sold at the end of 2011, the documents might be hard to find (although none had been destroyed).  *Id.*  She did not explain why, and, on information and belief, such documents should be quite easy to find.  Among other responsive documents, Relator presumes that the Defendants and entities related to them possess formation documents (e.g., articles of incorporation or partnership), stock ledgers, and similar documents companies create and maintain as a matter of practice or law.  In addition, Counsel for Defendants did not explain what steps she had undertaken to search for all responsive documents to Request Number 3—just stated that she had "talked to the client."  *Id.*  Relator requests that the Court order Defendants to explain what specific steps they have taken to search for such documents, and whether documents such as those described above do not exist.

bases for non-production. *See supra* Part III. Defendants' extraordinarily narrow reading of Relator's complaint is wrong, and the Request does not exceed the scope and time frame of Relator's allegations. *See supra* Part II. Confidentiality concerns are improperly generalized; improper given Defendants' refusal to enter into a stipulated protective order that would eliminate the concerns; and moot in any event, if the Court enters a protective order as Relator has asked it to do. *See supra* Part III.D. That documents are available through other means is not a basis for non-production. *See supra* Part III.C.[10] That requests seek documents not in Defendants' possession or control is not a basis for non-production of those documents that *are* in Defendants' possession or control. *See supra* Part IV.B.

Defendants' remaining objections to various terms in Request Number 3—as vague, imprecise, overbroad, ambiguous, or some combination of these terms, Defs.' Objections at 6—are unexplained boilerplate. In addition, they do not give Defendants license to refuse to produce any documents. *See supra* Part I. Defendants' counsel conceded (at the February 4, 2013 meet-and-confer) that there are "lots of entities" connected to the facilities where Ms. Ruckh worked, and Defendants have argued that other entities were responsible for submitting the claims Relator alleges were false. *See* Strikis Decl. ¶ 7. Defendants do not and cannot explain how a request for documents identifying these entities, and their relationships to one another, is too vague or overbroad to permit any production whatsoever.

---

[10]     Even if documents are available "through public records requests," that is not a basis for non-production. *See Jackson v. W.V. Univ. Hospitals, Inc.*, 2011 WL 1831591, at \*2 (N.D. W.V. May 12, 2011) ("obtaining information through FOIA is different than obtaining information through formal discovery in pending litigation," and the prospect of obtaining information through FOIA is thus not a basis for non-production of the same information in formal discovery).

## CONCLUSION

Without waiting for this Court's ruling on their motion to stay, Defendants have unilaterally instituted their own stay of discovery and refused to produce *any* documents in response to Relator's reasonable requests, which seek documents Defendants were given by the Government, documents Defendants have produced, and documents identifying Defendants' related entities.  Defendants' improper refusal to comply with their obligations under Federal Rule 34 should be rejected and Relator's motion to compel should be granted in its entirety.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for the Relator and the Defendants have conferred in good faith but have been unable to reach agreement as to the relief requested in this Consent Motion.

Dated this 8th day of February, 2013.

RELATOR ANGELA RUCKH

Kevin J. Darken (Florida Bar No. 0090956)
THE BARRY A. COHEN LAW GROUP
Fifth Third Center
201 East Kennedy Blvd, Suite 1000
Tampa, FL 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921
E-mail: kdarken@tampalawfirm.com

 s/ Silvija Strikis                       _
Silvija A. Strikis (pro hac vice)
Joseph S. Hall (pro hac vice)
KELLOGG, HUBER, HANSEN, TODD
EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

Rory Delaney (pro hac vice)
7 Liberty Square, 2nd Floor
Boston, MA 02109
Telephone: (857) 498-0384
E-mail: rory@rorydelaney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:

Anna G. Small
Allen Dell, P.A.
202 S. Rome Ave., Suite 100
Tampa, FL 33606-1854
Phone: (813) 223-5351
Facsimile: (813) 229-6682
Email: asmall@allendell.com

Kari Aasheim
Mancuso & Dias, P.A.
5102 W. Laurel Street, Suite 700
Tampa, FL 33607
Phone: (813) 769-6280
Facsimile: (813) 769-6281
Email: kaasheim@mdlegal.net

Peter John Grilli
Peter J. Grilli, PA
3001 W Azeele St
Tampa, FL 33609-3138
Telephone: (813) 874-1002
Facsimile: 813/874-1131
Email: meditr@aol.com

Lacy R. Harwell, Jr.
U.S. Attorney's Office - FLM
Suite 3200
400 N Tampa St
Tampa, FL 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6200
Email: randy.harwell@usdoj.gov

s/  Silvija A. Strikis