UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE UNITED STATES OF AMERICA and
THE STATE OF FLORIDA *ex rel.*
ANGELA RUCKH,

    Plaintiffs,

Case No.: 8:11-CV-1303-SDM-TBM

CMC II, SEA CREST HEALTH
CARE MANAGEMENT, LLC, d/b/a
LAVIE MANAGEMENT SERVICES OF
FLORIDA; SALUS REHABILITATION,
LLC, d/b/a LAVIE REHAB; 207
MARSHALL DRIVE OPERATIONS, LLC,
d/b/a MARSHALL HEALTH AND
REHABILITATION CENTER; and 803
OAK STREET OPERATIONS, LLC, d/b/a
GOVERNOR'S CREEK HEALTH AND
REHABILITATION CENTER,

    Defendants.

_____/

## CMC II, LLC AND SEA CREST HEALTH CARE MANAGEMENT, LLC'S DISPOSITIVE MOTION TO DISMISS WITH PREJUDICE THE REVISED SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendants CMC II, LLC and Sea Crest Health Care Management, LLC d/b/a LaVie Management Services of Florida (collectively "Management Defendants"), file this Dispositive Motion to Dismiss the Revised Second Amended Complaint of Plaintiffs, the United States of America and the State of Florida *ex rel*. Angela Ruckh ("Ruckh" or "Relator"), with prejudice, pursuant to Local Rule 3.01(a) and (h) and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Incorporated Memorandum of Law in Support.

## MOTION TO DISMISS

1. Relator's Revised Second Amended Complaint ("RSAC") is facially deficient because it fails to allege all components of subject matter jurisdiction for a *qui tam* action. More specifically, Relator has not adequately pled the statutory basis for her own standing to bring this lawsuit; thus, the Complaint on its face fails to establish subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

2. The RSAC should be dismissed pursuant to F.R.C.P. 12(b)(6) for failure to state a claim for which relief may be granted as to the Management Defendants, because it does not comport with the minimum pleading requirements of F.R.C.P. 8(a)(2) or its related plausibility standard, as set forth in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

3. Similarly, the Court should dismiss Relator's RSAC as to the Management Defendants pursuant to Rule 12(b)(6), because it fails to satisfy the heightened pleading standard under F.R.C.P. 9(b), which requires all parties alleging fraud in federal court to articulate the circumstances with particularity. As in her previous complaints, Relator has provided no concrete examples of: false claims actually submitted; facts to support how, where, when, and by whom such claims were submitted; or facts to support the involvement of Management Defendants.

4. Because this Court dismissed Relator's First Amended Complaint on similar grounds, and the Relator has not cured these same deficiencies of her earlier pleadings, the RSAC is fatally flawed and must be dismissed with prejudice. After four attempts, Relator can offer no reason for this Court to believe that she could at some future

point offer sufficient allegations to make a claim for relief against Management Defendants; accordingly, this Court should determine that further amendment is futile.

**MEMORANDUM OF LAW**

I.  **SUMMARY OF FACTS AND ALLEGATIONS**

On June 10, 2011, Relator, Angela Ruckh, filed this *qui tam* action on behalf of the U.S. government and the State of Florida under the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and the Florida False Claims Act, *Fla. Stat.* §§ 68.082 *et seq.* ("Florida FCA"). (Docket #1). The original Defendants to this matter were Salus Rehabilitation, LLC ("Salus") and Genoa Healthcare Consulting, L.L.C. ("Genoa").

Of procedural note, on April 10, 2012, the United States Government ***declined to intervene in this matter***. (Docket #12). On April 18, 2012, the Court entered an Order granting the U.S. Government's declination to intervene and ordered that Relator's Complaint be unsealed. (Docket #11). Relator now proceeds on her own.

On August 2, 2012, Relator filed her First Amended Complaint against Salus and Genoa (Docket #16). On October 2, 2012, Defendants Salus and Genoa filed Motions to Dismiss pursuant to Rules 9(b) and 12(b)(6) (Docket #19, #20), which were granted by this Court on March 5, 2013 (Docket #48). In its Order granting dismissal, the Court points out, "Although alleging the place of submission, the culprit, and the patient, the relator alleges no details about the fraudulent substance of the submission or about the time of the submission or about the government's overpaying the claim." (Docket #48). The Court's Order further notes, in the Eleventh Circuit, a plaintiff must "… plead 'facts as to time, place, and substance of the alleged fraud,' specifically 'the details of the defendant['s] allegedly fraudulent acts, when they

occurred, and who engaged in them." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)(quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567-68 (11th Cir. 1994)).

Following limited discovery as permitted by the Court, Relator filed a Second Amended Complaint on April 30, 2013, in which CMC II, LLC ("CMC") and Sea Crest Health Care Management, LLC d/b/a LaVie Management Services of Florida ("Sea Crest") were first added as Defendants (Docket #63). On June 3, 2013, Relator filed the RSAC,[1] the operative complaint to which this motion is directed. This six-count complaint consists of 246 paragraphs in 80 pages.

Under Count I, Relator alleges the Defendants knowingly presented, or caused another to present, a false claim to the government in violation of 31 U.S.C. § 3729(a)(1)(A). Count II alleges the Defendants knowingly made, used, or caused to be made or used, "a false record or statement material to a false or fraudulent claim" in violation of 31 U.S.C. § 3729(a)(1)(B). Count III alleges violations of § 3729(a)(1)(G), which is known as the "reverse false claims section" and provides liability where one improperly avoids payment *to* the government via false submission(s) to the government. Counts IV, V, and VI of the RSAC allege violations of the Florida FCA provisions, *Fla. Stat.* §§ 68.082(2)(a), (b), and (g), which are substantially identical to their federal counterparts.

As in prior versions of Relator's complaint, each count is lodged against all Defendants collectively, and each incorporates by reference all preceding paragraphs (RSAC ¶¶ 215, 219, 224, 231 & 235)("Relator and the United States reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein").

---

[1] The RSAC contains substantive changes and, although titled a "Revised Second Amended Complaint," it is, in effect, a third amended complaint.

The RSAC names five Defendants total. Two of the Defendants, Marshall Drive Operations, LLC d/b/a Marshall Health and Rehabilitation Center ("Marshall") and Oak Street Operations, LLC d/b/a Governor's Creek Health and Rehabilitation Center ("Governor's Creek"),[2] are skilled nursing facilities in the state of Florida. Sea Crest was the management company for Marshall and Governors Creek during the time frame relevant to Relator's claims; CMC, as the current management company, is Sea Crest's successor in interest. As alleged in the RSAC, the remaining Defendant, Salus, provided rehabilitative therapy at Marshall and Governor's Creek. (RSAC at ¶ 22).

Relator alleges all five Defendants engaged in a scheme to improperly increase funds received from the government, by overstating residents' needs and the amount of care and services provided to them, in reports known as Minimum Data Set Assessments ("MDS Assessments"). As in her prior pleadings, Relator purports to have "first-hand knowledge of Defendants' unlawful practices in knowingly falsifying numerous statements and claims submitted for reimbursement by the Medicare, Medicaid, and TRICARE programs." (RSAC ¶2). Relator alleges that she is an "original source," because she "directly witnessed the creation and submission of numerous false statements and claims for Medicare and Medicaid reimbursement" while employed as an MDS nurse by Marshall (from January 2011 to March 4, 2011) and by Governor's Creek (from March 7, 2011 to May 5, 2011). (RSAC ¶¶ 84-85).

As explained in more detail below, the RSAC fails to cure the deficiencies of its predecessors, despite the veritable road map for proper pleading provided by this Court's May 5, 2012 Order, and the Management Defendants now seek entry of an Order dismissing the RSAC with prejudice.

---

[2] Throughout this Motion, the Governor's Creek and Marshall facilities will be collectively referred to as the "Facilities".

## II. ARGUMENT AND AUTHORITIES

### A. The RSAC Should Be Dismissed Pursuant to Rule 12(b)(1)

As a threshold matter, the RSAC is technically deficient for failure to properly plead all necessary components of subject matter jurisdiction for Relator's claims under the federal FCA; specifically, Relator fails to properly plead her own standing as a litigant on behalf of the United States.

Relator cites to three United States Code provisions in support of her jurisdictional allegations vis-à-vis the federal FCA claims: 28 U.S.C. § 1331, 1345, and 31 U.S.C. § 3732. (RSAC ¶13). The first, 28 U.S.C. § 1331, relates to federal question jurisdiction generally, and the third, 31 U.S.C. § 3732, governs *personal* jurisdiction and venue. 31 U.S.C. § 3732(a) (providing that an action to enforce the False Claims Act "may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred"). Relator's reliance on both of these provisions is proper; however, the remaining provision referenced by Relator, 28 U.S.C. § 1345, applies only to "civil actions, suits or proceedings commenced by the United States." Because the RSAC does not establish subject matter jurisdiction for a private litigant, *i.e.,* does not identify the basis of Relator's standing to bring suit *on behalf* of the United States, the action should be dismissed pursuant to F.R.C.P. 12(b)(1).

### B. The RSAC Should Be Dismissed Pursuant to F.R.C.P. 12(b)(6)

The facts as pled in the RSAC do not satisfy applicable pleading requirements, and thus are insufficient to state a claim against Management Defendants.

At the pleading stage, a complaint alleging violations of the FCA must satisfy not only F.R.C.P. 8(a)(2) (requiring "a short and plain statement of the claim" showing entitlement to

relief) and binding precedent interpreting its application, but also Rule 9(b)'s heightened pleading standard, which requires a party to state with particularity the circumstances constituting fraud or mistake. *See U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). Because the Relator fails to meet either standard, the RSAC should be dismissed for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6).

> **1. The RSAC Fails to Satisfy the Pleading Requirements of F.R.C.P. 8(a)(2).**

In its decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009), the United States Supreme Court addressed the pleading standard of Rule 8(a)(2), which explicitly requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require "detailed factual allegations," the Court explained:

> it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Id.* (Internal citations omitted).

The Supreme Court has provided clear guidance to courts in reviewing complaints for compliance with Rule 8(a)(2). In *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 556 (2007), the Court introduced the concept of "plausibility" as the dividing line between successful and unsuccessful pleadings. 550 U.S. at 556. In addition to pleading all requisite elements of a claim, the complaint must contain enough facts to make a claim for relief plausible on its face; *i.e.,* a party must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 556 U.S. at 570).

Thus, a court must turn to the factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Resnick v. Avmed, Inc.,* 693 F. 3d 1317, 1325 (11th Cir.

2012); *see also Butler v. Sheriff of Palm Beach County*, 685 F.3d 1261, 1265 (11th Cir. 2012) ("The plaintiff's factual allegations must be enough to raise a right to relief above the speculative level…"). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citing F.R.C.P. 8(a)(2)).

Noncompliance with the pleading requirements of Rules 8(a)(2) amounts to failure to state a claim warranting dismissal under Rule 12(b)(6). *See, e.g., Frone v. City of Riverdale*, 2013 U.S. App. LEXIS 11552 (11th Cir. 2013). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Notably, however, a court is "***not bound to accept as true a legal conclusion couched as a factual allegation***." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(emphasis supplied). In *Iqbal*, the Supreme Court reiterated this principle:

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

556 U.S. at 678 (emphasis supplied). Stated another way, the "plausibility" test is not satisfied by allegations merely "consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678.

The RSAC's success or failure in satisfying Rule 8(a)(2) and the authoritative, interpretive case law, must be evaluated separately for each Defendant. In other words, Relator must adequately plead her claims regarding violations of the FCA and Florida FCA against CMC and Sea Crest specifically, as entities separate and distinct from the other named Defendants. Despite being granted a third opportunity to amend (with the implicit expectation that pleading

requirements of the Federal Rules of Civil Procedure be heeded), Relator's RSAC fails to cure the insufficiency of its predecessors in this regard.

Relator has presented 246 paragraphs (80 pages) of predominantly vague, irrelevant, and/or conclusory recitations, ultimately amounting to a "shotgun" pleading. This approach to pleading has been explained by the Eleventh Circuit as follows:

> The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.,* all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous.

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Such complaints are disfavored by courts as non-compliant with Rule 8(a)(2), and the Eleventh Circuit is no exception. *See id.* at n. 9 (citing multiple authorities and stating, "[t]his court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay"); *Byrne v. Nezhat*, 261 F.3d 1075, 1128-34 (11th Cir. 2001) ("Shotgun pleadings . . . impede[] the due administration of justice and, in a very real sense, amount[] to obstruction of justice") (internal citation omitted); *Magluta v. Samples*, 256 F.3d 1282, 1284-85 (11th Cir. 2001) (per curiam) (refusing to address and decide serious constitutional issues on the basis of a "quintessential 'shotgun' pleading of the kind condemned repeatedly, beginning at least as early as 1991" because "***it is in no sense the 'short and plain statement of the claim' required by Rule 8***")(emphasis supplied); *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("shotgun pleadings . . . exact an intolerable toll on the trial court's docket"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997) (per curiam) ("Shotgun notice pleadings . . . impede the orderly, efficient, and economic disposition of disputes").

Like the pleadings addressed in *Strategic Income Fund*, the RSAC in the instant case contains multiple counts lodged against the five Defendants collectively, and each count incorporates by reference all preceding paragraphs (RSAC ¶¶215, 219, 224, 231 & 235)("Relator and the United States reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein."). As a result, it is virtually impossible to discern which allegations of fact are intended to support which claims for relief against any particular Defendant.

Similarly, even those few facts alleged against Sea Crest and CMC individually (versus all Defendants collectively, in typical shotgun fashion) are insufficient to satisfy Rule 8(a)(2) and survive a motion to dismiss under Rule 12(b)(6). Per the instructions of the Supreme Court in *Iqbal*, in reviewing such a motion, the Court may identify and disregard language amounting to conclusions, as not entitled to the assumption of truth. 556 U.S. 662 at 679. Only after identifying the well-pleaded factual allegations should a court "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To this end, below is a chronicle of the RSAC's factual allegations against Sea Crest and CMC[3], which are neither admitted nor denied at this stage. These allegations have been stripped of legal conclusions, extraneous commentary, and statements of Relator's own otherwise unsupported opinions and suppositions:

---

[3] The RSAC does not appear to actually contain ANY allegations directly against CMC (other than those establishing its identity as current management company and successor in interest to Sea Crest). Although Relator makes reference to CMC's direct liability for "any false statements or claims occurring after it assumed control of the LaVie Facilities," no such statements or claims are actually alleged at any point in the RSAC. However, because CMC's status as successor in interest is not in dispute, for purposes of this Motion, the allegations directed at Sea Crest (listed here) are interpreted as addressing both Management Defendants, and the propriety thereof is not challenged in and of itself. This concession does not apply to the many allegations throughout the RSAC which are levied against all Defendants as a group, in "shotgun" fashion, as discussed at length in this Motion.

- Sea Crest employee, Regional Reimbursement Specialist Cheryl McAnally ("McAnally"), provided instruction and direction to Relator in completion of MDS Assessments at Marshall. (RSAC ¶ 92).

- McAnally "could have Relator or other MDS nurses disciplined by contacting the Administrator." (RSAC ¶ 92).

- Sea Crest employee, Regional Reimbursement Specialist Leota "Lee" Juliano ("Juliano"), supervised Relator in completion of MDS Assessments at Governor's Creek. (RSAC ¶ 93).

- In 2011, Juliano was responsible for billing at 9 facilities including Governor's Creek. McAnally was responsible for a comparable amount, including Marshall. Both are now employees of CMC. (RSAC ¶ 93-94).

- Relator was hired to work at Marshall by McAnally, who used an executive search consultant.[4] This consultant told Relator that Sea Crest "preferred MDS nurses who had an average RUG level of $650 per patient per day." (RSAC ¶ 98).

- A nurse (unidentified) told Relator that she would have to go through Sea Crest training on RUGs and reimbursement in order to obtain an open position at either Harts Harbor or another facility (unidentified) in Juliano's region. Both of these facilities were managed by Sea Crest. This same unidentified nurse told Relator that certain bonuses would apply for MDS nurses with RUG levels in excess of the facility's RUG budget. **_Relator declined both positions._** (RSAC ¶ 101-103).

- McAnally and Juliano were responsible for ensuring that the facilities in their regions met their "Medicare budget." McAnally and Juliano told the MDS nurses at each facility what the budget was and audited the facilities in order to help them improve their RUG levels. (RSAC ¶ 104-105)

- McAnally and Juliano provided guidance to the MDS nurses and suggested ways the facilities could achieve higher RUG levels. (RSAC ¶ 105-106).

- McAnally and Juliano held weekly calls on Fridays with the MDS nurses and praised those nurses who had the highest RUG levels and provided suggestions (unspecified) about how to increase RUG levels. (RSAC ¶ 106).

---

[4] It is not alleged that this consultant, identified later in the RSAC as an individual named Dean Barbosa, was an employee or agent of any of the Defendants.

- In early March 2011, the executive search consultant who placed Relator at Marshall told Relator that she was being transferred to the Governor's Creek facility at the request of McAnally "and other senior employees" (unspecified) at Sea Crest because they were "concerned that with Relator handling MDS Assessments for Medicare residents, the Marshall facility was not meeting its reimbursement target." (RSAC ¶ 112).

- McAnally told Relator that "she was a 'great nurse,' a 'great MDS nurse,' but a "terrible reimbursement nurse.'" (RSAC ¶ 112).

- At some point during her tenure at Governor's Creek, Relator was called to a meeting with, *inter alia*, Juliano, John Stover (a Regional Vice President for Sea Crest), and Karmen Morgan (Juliano's supervisor and an employee of Sea Crest). This meeting was held following a statement Relator made to the Administrator indicating that her completion of the MDS Assessments for the Facility's Medicare Part A residents would result in significant reduction of the facility's RUG levels. (RSAC ¶ 117-118).

- At the meeting referenced above, Relator raised "concerns" that MDS Assessments prepared by a predecessor MDS nurse were false and suggested the facility "self-report the inaccuracies." (RSAC ¶ 118).

- Juliano, Morgan, and Stover knew there was no "four point remedial plan" to ensure MDS Assessments were completed accurately. (RSAC ¶ 119).

- During weekly calls, McAnally and Juliano "would remind MDS nurses to ensure therapy was properly scheduled to generate the maximum number of therapy minutes" during MDS "look-back" periods, and "to adjust ARDs when necessary to capture a higher amount of therapy." (RSAC ¶ 152).

- Relator prepared a combined Admission and 5-day MDS Assessment for a resident identified as P.B.; however, Juliano told Relator she had changed the category of this Assessment and submitted it as an Admission-only Assessment, per the requirements of the P.B.'s Medicare Advantage Plan, Universal. (RSAC ¶ 204-205).

- Relator learned from someone at AHT software support that Juliano's electronic signature did not appear on P.B.'s Admission Assessment that was submitted to Universal. (RSAC ¶ 204).

In the interest of completeness, Management Defendants call the Court's attention to one additional, specific reference to an employee of Sea Crest in the RSAC, not listed above.

Paragraph 206 states, in connection with P.B.'s 5-day MDS Assessment: "on information and belief, Juliano or another person at the Governor's Creek facility completed P.B.'s MDS assessment and unlawfully submitted it in Relator's name." The next several paragraphs in the RSAC outline the ways in which P.B.'s MDS Assessment would have differed, has she prepared it herself: Relator would have reported P.B.'s ADL score as 6 rather than 10; and she would have reported that P.B. had severe dental issues (which she alleges was omitted from the Assessment actually submitted[5]). These allegations are intentionally absent from the bullet points above, because they do not meet the standards set forth in *Iqbal* and *Twombley*, and the Court is therefore not bound to accept them as true. First, Relator cannot reliably identify the target of these allegations as Juliano or another Sea Crest employee, as opposed to "another person at the Governor's Creek facility" whose employment status is unknown and whose actions are, therefore, not attributable to a specific Defendant. Second, Relator's sole clinical judgment is not dispositive as to what is necessary or appropriate for a resident after less than a week in the facility. The elements of "falseness" and "fraud" must be established based on something more than Relator's own opinion.

Whether independently or in combination, and even in the light most favorable to the Relator, the allegations cited above fail to support a plausible claim for relief under any of the RSAC's six counts. At even the most basic level, the Relator's allegations fail to establish the actual submission of a single false claim, in support of Relator's claims that Management Defendants violated **any** provision of the FCA or Florida FCA. For this reason alone, Relator's claims against the Management Defendants must fail. *See Clausen,* 290 F.3d at 1311 ("The submission of a false claim is the *sine qua non* of a False Claims Act violation"); *see also*

---

[5] Interestingly, Relator does not identify how the **omission** of information supporting a resident's **increased** needs from the MDS Assessment would result in a benefit to any of the Defendants.

*Corsello v. Lincare, Inc.*, 428 F.3d 1108, 1012 (11th Cir. 2005), *cert denied*, 429 U.S. 810 (2006)("Liability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies")(citing *Clausen*).

Further, even if any credence can be given to Relator's supposition that incorrect claims were submitted, Relator's presumption that these alleged acts, in and of themselves, give rise to FCA violations is incorrect and insufficient to state a claim: "While mistakes in submitting claims may violate Medicare/Medicaid regulations, for civil liability [to attach] under the False Claims Act, 'knowledge' of the falsity of the claim or fraudulent nature of the claim must be shown." *United States ex. Rel. Heater v. Holy Cross Hosp.*, Inc., No. 03-63097, 2007 WL 2480236 (S.D. Fla. Aug. 29, 2007)(not designated for publication); *see also Corsello*, 428 F.3d at 1012 (explaining FCA liability "arises from the submission of a fraudulent claim to the government, not the disregard of government regulations.").

In the instant case, Relator does not set forth facts to support the conclusory allegations that Management Defendants had any knowledge of incorrect claims, let alone knowledge of the falsity or fraudulent nature of the alleged false claims. Because Relator has not sufficiently connected Management Defendants, as entities separate and distinct from the other Defendants, to the allegations in her RSAC, she has not shown and cannot show that Management Defendants acted with the requisite scienter ("knowingly") as required by the FCA.

**1. The RSAC Fails to Satisfy the Pleading Requirements of F.R.C.P. 9(b).**

Even assuming, *arguendo*, the RSAC satisfies the minimum requirements of Rule 8(a)(2) as prescribed by the Supreme Court in *Iqbal* and *Twombey*, Relator's burden does not end there. In FCA cases, a Relator must also comport with the more strident pleading standard under Rule

9(b). *Hopper v. Solway Pharmaceuticals, Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009). Under Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." To state a claim under the FCA with particularity, "the complaint must allege facts as to time, place, and substance of the defendant's alleged fraud, and the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Corsello,* 428 F.3d at 1012, (citing *Clausen*, 290 F.3d at 1310). Stated differently, adherence to Rule 9(b) requires a plaintiff to set forth precisely what statements were made in what documents, when, where and by whom, the content, the manner in which they misled the plaintiff [government], and what the defendants obtained as a consequence of the fraud. *Ziemba*, 256 F.3d at 1202.

Moreover, for Rule 9(b) "to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government." *U.S. ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1357 (11th Cir. 2006). In the Eleventh Circuit, "whether the allegations of a complaint contain sufficient indicia of reliability to satisfy Rule 9(b) is determined on a case-by-case basis." *Id.* Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint.

In efforts to comply with the particularity requirement in the RSAC, Relator identifies four Sea Crest employees (McAnally, Juliano, Stover, and Morgan) by full name and job title, though she had failed to do so in her First Amended Complaint. Frequently throughout the RSAC, Relator offers her own commentary on their statements and actions, asking the Court to "read between the lines" to connect Sea Crest to the allegedly fraudulent scheme by interpreting nefarious motives and inferring violations of the FCA.

For example, Relator references a meeting attended by all of these individuals, with the exception of McAnally, at some point during her tenure at Governor's Creek. Allegedly, the

meeting took place in response to statements Relator made to the Administrator indicating that her completion of the MDS Assessments for the Facility's Medicare Part A residents would result in significant reduction of the facility's RUG levels. Relator claims she raised concerns at this meeting, that her predecessor MDS nurse had falsely inflated ADL scores and misrepresented that care plans had been completed. In response, she alleges, the Sea Crest employees were complicit in the facility Administrator's lie that a "four-point remedial action plan" would be implemented to prevent future inaccuracies.

While mildly provocative, these facts are wholly insufficient to establish the actual submission of a false claim. Although the RSAC is replete with similar allegations challenging the integrity and questioning the policies of the Management Defendants generally, it is well established that merely pleading an improper practice does not satisfy Rule 9(b). *See Corsello*, 428 F.3d 1008, 1012 (11th Cir. 2005)("Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government").

Similarly, as the Eleventh Circuit has instructed, the particularity requirement "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *McInteer*, 470 F.3d at 1357 (quoting *Clausen*, 470 F.3d at 1311). This is precisely the situation in the instant case. Relator generally alludes to an improper scheme she alleges existed at the Facilities, but fails to offer reliable facts regarding substance or mechanics of submission of actual false claims sufficient to connect Sea Crest to the improprieties. Where, as here, a Relator provides the "who," "what," "where," "when," and "how" of improper practices,

but fails to allege the "who," "what," "where," "when," and "how" of fraudulent submissions to the government, Rule 9(b) is simply not satisfied. *Id.* In this regard, the Eleventh Circuit has held:

> Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances…Although we construe all facts in favor of the plaintiff when reviewing a motion to dismiss, we decline to make inferences about the submission of fraudulent claims because such an assumption would 'strip[] all meaning from Rule 9(b)'s requirements of specificity.'

*Corsello*, 428 F. 3d at 1013 (citing *Clausen,* 290 F.3d at 1312, n.21 (11th Cir. 2002).

Relator cannot meet the heightened pleading standard simply by hypothesizing about Sea Crest's alleged fraud and submission of claims. Relator must provide specifics showing what false claims were actually presented and submitted, including the content of them, how the government was defrauded, and what Sea Crest allegedly obtained from them. Because Realtor fails to assert the "who, what, where, when, and how" of fraudulent submissions to any government, the complaint must be dismissed for failing to plead allegations of fraud with particularity. *U.S. ex. Rel Sanchez v. Lymphatx, Inc.,* 596 F.3d 1300, 1302 (11th Cir. 2010); *Hopper*, 588 F.3d at 1325-27; *McInteer,* 470 F.3d at 1357 (11th Cir. 2006).

In addition, for the same reasons "shotgun" pleading is disfavored as noncompliant with Rule 8(a)(2), the Relator's persistence in lumping all defendants together, and failure to allege the individual acts of wrongdoing on which the claim is based, do not comport with Rule 9(b). Rule 9(b) is intended to "guard against guilt by association," *United States ex rel. Stewart v. La. Clinic*, No. Civ. A. 99-1767, 2002 WL 1066745, at *2 (E.D. La., May 28, 2002), and prevent Relator from relying upon blanket references or collective assertions to acts or omissions of

"Defendants," which provide no possible way to sift out the irrelevancies. *See, e.g., In re Rospatch Sec. Litig.*, 760 F. Supp. 1239, 1254 (W.D. Mich. 1991).

In *Rospatch*, the court opined that "[e]ach individual defendant must be apprised separately of the specific acts of which he is accused, especially in a case involving multiple defendants. "'The complaint, therefore, may not rely on blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'" *Id.* (quoting, *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981), aff'd 735 F.2d 1363 (6th Cir. 1984)); *see also Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 522 n. 7 (S.D.N.Y. 1977) (finding that in order to satisfy Rule 9(b) a plaintiff may not rely on blanket references to acts or omissions by all defendants, but instead must apprise a defendant "of the circumstances surrounding the fraudulent conduct with which he individually stands charged.").

A principal objective of Rule 9(b) "is to alert defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217 (11th Cir. Fla. 2012). Rule 9(b) is important in FCA actions because it "ensures that the relator's strong financial incentive to bring an FCA claim – the possibility of recovering between fifteen and thirty percent of a treble damages award – does not precipitate the filing of frivolous suits." *Id.* When properly enforced, Rule 9(b) ensures that claims allowed to proceed to discovery will have boundaries and discovery limits. *McInteer*, 470 F.3d at 1360. For this reason, the Relator's evident strategy — to collectively group defendants at the onset, and use the discovery process to establish

connections and specific allegations — utterly flouts the rule's purpose and should be cause for dismissal.

Relator's failure to plead facts sufficient to state a cause of action against Management Defendants, coupled with her blanket assertion against "Defendants" without any attempt to segregate the actions of any one from the others, also demonstrates that Relator has not pled her claims of fraud with the particularity required by Rule 9(b).

### C. The RSAC Should Be Dismissed With Prejudice

Although the Federal Rules of Civil Procedure provide that leave to amend should be given freely, this Court may nevertheless deny leave to amend on numerous grounds, including the futility of the amendment. *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dept. of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003). Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citations omitted).

This Court dismissed Relator's First Amended Complaint on similar grounds as are set forth in the instant motion. The Relator has not cured these same deficiencies and, after four attempts, can offer no reason for this Court to believe that she could at some future point offer sufficient allegations to make a claim for relief against Management Defendants. For these reasons, this Court should determine that further amendment is futile and grant dismissal with prejudice.

### CONCLUSION

Relator has demonstrated an inability to follow this Court's guidance in amending her complaint. In the most recent turn, Relator has alleged certain additional facts that do nothing more than require this Court to discern an indiscernible set of facts hurled against all Defendants

and make impermissible set of inferences that actual FCA violations have occurred. Because Relator is unable to state a claim against the Management Defendants in particular, Sea Crest and CMC respectfully request that the Court grant this Motion to Dismiss and enter an Order dismissing the RSAC with prejudice and for any other relief that this Court deems just and proper at law or in equity, including costs, attorney's fees, and other appropriate relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been served by the Notice of Electronic Filing, and was electronically filed with the Clerk of Court via the CM/ECF system, which generates a notice of the filing to all attorneys of record, on this 17th day of June, 2013.

Respectfully Submitted: /s/ Kari Aasheim
**KARI AASHEIM, ESQUIRE**
Florida Bar No. 486957
**MANCUSO & DIAS, P.A.**
Attorney for Defendants
5102 W. Laurel Street, Suite 700
Tampa, FL 33607
Phone: (813) 769-6280
Fax: (813) 769-6281