# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF FLORIDA *ex rel.* ANGELA RUCKH,<br><br>      Plaintiffs,<br><br>      v.<br><br>CMC II, LLC; SEA CREST HEALTH CARE MANAGEMENT, LLC, d/b/a LAVIE MANAGEMENT SERVICES OF FLORIDA; SALUS REHABILITATION, LLC, d/b/a LAVIE REHAB; 207 MARSHALL DRIVE OPERATIONS, LLC, d/b/a MARSHALL HEALTH AND REHABILITATION CENTER; and 803 OAK STREET OPERATIONS, LLC, d/b/a GOVERNOR'S CREEK HEALTH AND REHABILITATION CENTER,<br><br>      Defendants. | CIVIL ACTION NO.<br>8:11 CV 1303 SDM-TBM |

**RELATOR'S THIRD SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS DIRECTED TO ALL DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rule of Civil Procedure, Relator Angela Ruckh, by and through her undersigned attorneys, hereby requests that Defendants produce the documents described herein (the "Requests") on or before February 24, 2014.

The Documents covered by the Requests shall be produced to Silvija Strikis, of Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., 1615 M Street N.W., Suite 400, Washington, D.C. 20036.

The Definitions and Instructions that appear below form an integral part of the specific Requests and must be read in conjunction with them. It is expected that the Definitions and Instructions set forth herein will be followed in searching for and producing Documents responsive to the specific Requests.

## DEFINITIONS AND INSTRUCTIONS

The following definitions are applicable to terms employed in these Requests:

1. "Defendants," "You," or "Your" means CMC II, LLC; Sea Crest Health Care Management, LLC (d/b/a LaVie Management Services of Florida); Salus Rehabilitation, LLC (d/b/a LaVie Rehab); 207 Marshall Drive Operations, LLC (d/b/a Marshall Health and Rehabilitation Center); 803 Oak Street Operations, LLC (d/b/a Governor's Creek Health and Rehabilitation Center); and any of their divisions, departments, offices, predecessors, successors, officers, parents, subsidiaries, affiliates, directors, employees, partners, agents, financial advisors, consultants, accountants, attorneys, representatives, or any other persons acting for or on behalf of them ("affiliates of Defendants" or "Your affiliates"). For purposes of these Requests, the following entities shall be deemed to be affiliates of Defendants, without limitation upon Defendants' duty to produce documents pertaining to all affiliates of Defendants:

    a.    Each of the entities listed in Exhibit 1 to the Complaint (collectively with the Marshall and Governor's Creek Facilities, "the LaVie Facilities");

    b.    Genoa Health Care Group, LLC (d/b/a LaVie Care);

    c.    Epsilon Health Care Properties, LLC;

    d.    Coastal Administrative Services LLC (d/b/a LaVie Administrative Services).

2.     "Care Plan" means a comprehensive plan of care for a resident that was created in order to comply with CMS and/or AHCA regulations, including but not limited to 42 C.F.R. § 483.20(k). A Care Plan is timely if it is completed within 14 days after a resident's admission to a skilled nursing facility.

3.     "Claim" means any request or demand for money or property, whether formal or informal, submitted to any Government Health Agency, including but not limited to any UB-04.

4.     "Complaint" refers to the Revised Second Amended Complaint filed on June 3, 2013 in the above-captioned action.

5.     "Cost Report" means a report containing Medicare and Medicaid cost and billing information submitted to CMS and/or AHCA on a form MCRIF32, or CMS-2540-96 or other similar format. For purposes of illustration only and without limiting the scope of this definition, documents previously produced with the Bate stamps RTP 3d (M) and RTP 3d (GC) in this litigation are Cost Reports.

6.     "Department of Justice" includes the United States Department of Justice, the United States Attorney's Office for the Middle District of Florida, and their attorneys, officers, or representatives.

7.     "Document" is used in the broadest sense consistent with Rule 34(a) of the Federal Rules of Civil Procedure. The term includes, without limitation, any written, recorded, transcribed, taped, photographic, or graphic matter; any electronically, magnetically, or digitally stored information, including without limitation, electronic mail, software, source code, object code or hard or floppy disc files, spreadsheets, databases, any

3

other tangible things; and all copies of any of the foregoing that are different in any way from the original.

8. "Florida Attorney General" includes the Attorney General of Florida, as well as any attorney, representative, or officer of the Office of the Florida Attorney General.

9. "Fiscal Intermediary" and "Medicare Administrative Contractor" include any entity that has contracted with a Government Health Agency to handle enrollment in Medicare or Medicaid, or processing of Medicare or Medicaid claims.

10. "Government Health Agency" means any local, state, or federal agency, board, commission, or other entity responsible for regulating, supervising, reimbursing, or providing healthcare, including the United States Department of Health and Human Services ("DHHS"), the Centers for Medicare and Medicaid Services ("CMS"), the Florida Agency for Health Care Administration ("AHCA"), and any entity acting on behalf of the foregoing, including any Medicare Administrative Contractor, any Fiscal Intermediary, or any MA Plan; and any officer or employee of any of the foregoing entities.

11. "Governor's Creek Facility" means the facility located at 803 Oak Street, Green Cove Springs, FL 32043.

12. "Marshall Facility" means the facility located at 207 Marshall Drive, Perry, FL 32347.

13. "MA Plan" means any Medicare Advantage Plan established under Medicare Part C, and includes, but is not limited to, Universal Care Health Care, an insurer headquartered in St. Petersburg, Florida.

14. "MedBest" means MedBest, Inc., a corporation located at 2907 West Bay to Bay Blvd., Suite 314, Tampa, FL 33629.

4

15. "Minimum Data Set Assessment" or "MDS Assessment" means the standardized assessment, based on a core set of screening, clinical, and functional status elements, which forms the basis for the comprehensive assessment for all residents of long-term care facilities certified to participate in Medicare or Medicaid. As used in these Requests, "Minimum Data Set Assessment" includes, without limitation, full assessments, comprehensive assessments, admission assessments, annual assessments, significant change in status assessments, significant correction of prior full assessments, quarterly review assessments, significant correction of prior quarterly assessments, Medicare 5, 14, 30, 60, and 90 day assessments, Medicare readmission/return assessments, and any other assessments required by Medicare or other state regulations or guidelines.

16. "MDS or reimbursement nurse" means any nurse whose responsibilities include the review, completion, or submission of Claims or MDS Assessments.

17. "Patient record" refers to all records maintained by any of You or Your affiliates concerning a particular patient, including but not limited to:

   a. Admission and discharge records for the patient, including all documents completed upon or shortly before or after the patient's admission to, or discharge from, any facility owned or controlled by you or your affiliates;

   b. All charting relating to the patient, including charting of activities of daily living ("ADL"); charting of skilled therapy services provided to the patient; charting or other documentation of the patient's mood and behavior; narrative charting or summaries of any observations of, or interviews with, the patient; and all documents or records relating to, or supporting such charts;

   c. Assessments of the patient, including but not limited to any MDS Assessment;

   d. Care plans for the patient, including any directions, objectives, proposals, plans, or arrangements for treatment and assessment of the patient;

5

  e. Medical diagnoses of the patient, including any supporting physician's documentation;

  f. Medicare certification or recertification for the patient, whether or not completed by a physician;

  g. Medicare documentation, including any documents maintained for the purpose of demonstrating the medical reasonableness of, or legal basis for seeking reimbursement for, any services provided, or intended to be provided, to the patient;

  h. Physician documentation, including any documentation of any physician's visits, evaluations, progress notes, treatment directions, prescriptions, and any document reflecting physician review and/or approval of the patient's treatment plan; and

  i. Therapy records, including all documents reflecting the number of minutes of individual, group, or concurrent therapy provided to the patient, the date such therapy was provided, the type of therapy provided, the person providing the therapy, and the certification, if any, held by the person providing the therapy.

For each patient record that lacks any of the above documents, include a statement indicating: (i) that the document was never created or never existed, (ii) that the document existed or was created but was subsequently lost and destroyed, and the approximate date that the document was lost or destroyed, or (iii) that it is not known whether the document ever existed.

 18. "Person" includes any natural person or any business, legal, or governmental entity or association.

 19. "Upcoding" refers to any instance or practice of coding, with the purpose or effect of increasing the amount of compensation sought or received, any part of any document submitted to, or required to be made available for audit or inspection by, any Government Health Agency in an inaccurate, aggressive, improper, or illegal manner. For the avoidance of doubt, Upcoding includes, without limitation, coding, recording, or

6

describing, in a document submitted to or required to be made available for audit or inspection by any Government Health Agency:

    a.    inaccurate reporting of scores relating to activities of daily living ("ADL Scores") in section G of the MDS Assessment;

    b.    inflation of therapy minutes reported in section O of the MDS Assessment;

    c.    inaccurate reporting of the type of therapy (individual, concurrent, or group) provided to residents;

    d.    adjusting or manipulating the Assessment Reference Date;

    e.    submitting electronic MDS Assessments without signing the corresponding hard copy of the Assessment, or signing the hard-copy Assessment after its electronic submission;

    f.    increasing therapy minutes provided to residents during 7-day look-back periods and/or decreasing therapy minutes provided to residents outside of such periods;

    g.    completion and/or submission of an MDS Assessment by any person who is not a Registered Nurse;

    h.    completion and/or submission of an MDS Assessment in the name of another person who did not complete, review, and/or approve the Assessment;

    i.    reporting or billing for any treatment, therapy, or care that is not medically necessary;

    j.    reporting or billing for therapy minutes provided by non-licensed therapist;

    k.    reporting or billing for any treatment, therapy, or other care that was not actually provided; and

    l.    any other method or strategy for increasing RUG levels by inaccurately reporting information on an MDS Assessment.

20.    The terms "refer," "relate," "concern," "referring," "relating," and/or "concerning" shall be construed in the broadest sense to mean information (1) referring to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter

identified in a request; (2) which contains or comprises any communication (including representations, requests, demands, studies, analyses, and the like) referred to in these requests; or (3) which discusses, mentions, or refers, whether directly or indirectly, to the subject matter of the request. The term "concerning" means referring to, describing, evidencing, or constituting.

21. The terms "or," "and," "all," "every," "any," "each," "one or more," "including," and similar words of guidance, are intended merely as such, and are used without limitation. "All" means "any and all" and "any" means "any and all." The words "all," "every," "any," "each," and "one or more" shall include each other as necessary to bring within the scope of the request all responses that might otherwise be outside its scope.

22. The connectives "or" and "and" shall be construed either conjunctively or disjunctively as required by the context or as necessary to bring within the scope of the request all responses that might otherwise be considered to be outside its scope.

23. The terms "include" or "including" mean including but not limited to and denote a portion of a larger whole and does not limit any general category or description that precedes it.

24. As used herein, the singular shall include the plural, and vice versa. References to the past shall include the present, and vice versa.

**B.    Instructions**

The following instructions are applicable to these Requests:

1. These discovery requests are continuing. All requests for the production of documents shall be construed to include all documents created up until the date of production(s) and any additional documents responsive to these requests which are

8

discovered, acquired, created, or generated after the date of production(s).  Therefore, Defendants shall promptly produce to Relator, as supplemental responses to these requests, any additional documents or things that Defendants identify, acquire, or become aware of up to and including the time of trial.

      2.     All documents should be produced in the order in which they appear in your files, organized by source, and should contain a clear indication of where each document ends and the next begins.  Documents which are found in boxes, file folders, bindings, or other containers are to be left intact as kept.  If the back or reverse side of a Document bears any printing, writing, or other markings, both sides of the Document must be produced.  Documents maintained in a file folder or binding should be preceded by the file folder or binding label, if one exists, and should contain a clear indication of where the file folder or binding begins and ends.  All attachments to a document should be produced with the document.  A unique control number should be affixed to each page.  Computer files (including backup files), electronic mail messages, and other documents maintained in electronic form should be produced in machine-readable electronic form.

      3.     Defendants are requested to produce documents in the native electronic file format as the documents are kept in the ordinary course of business.  For example, Defendants may produce email in the PST, NSF, or MSG file format.  If any documents are produced in a format that is not readily accessible by standard available computer programs, Defendants are instructed to provide a copy of or access to the computer software necessary to access all information contained in the related documents, in the same format and presentation as the documents are used in the ordinary course of business.

4. Defendants are requested to provide any necessary passwords or decryption for documents that are password-protected or encrypted.

5. In the event Defendants claim that a Request is overly broad, unduly burdensome, irrelevant, or otherwise objectionable, Defendants shall respond to that portion of the Request which is unobjectionable and shall specifically identify the respect in which the Request is allegedly overly broad, unduly burdensome, irrelevant, or otherwise objectionable. This Instruction applies not only to objections to the Requests as such but also to the Instructions and Definitions relating to them.

6. If You contend that You are entitled to withhold any requested document on the basis of any privilege or other ground, You are requested to produce the non-privileged portions and to provide separately a privilege log consistent with the requirements of Federal Rule of Civil Procedure 26(b)(5) that:

    a. describes the nature of the document, *i.e.*, whether it is an email, memorandum, report, etc.;

    b. states the dates covered by the document;

    c. identifies the person or persons having possession, custody, or control of the document;

    d. identifies the persons with knowledge of the information, including any person who received, edited, revised, or amended the document. This includes any individuals known to You as an intended or unintended recipient of the document;

    e. describes the subject matter of the document with sufficient detail to enable Relator, or the Court if necessary, to determine whether the document was appropriately designated as privileged; and

    f. states the basis upon which You contend that You are entitled to withhold the document from discovery.

10

7.      If You redact privileged portions of any document, You are requested to produce a PDF image representation of the redacted document, and extracted text after redaction.

8.      Defendants are instructed to maintain all privileged documents in native format.

9.      Except where otherwise indicated, responses to the Requests contained herein are to cover the period from June 1, 2005 through the present, and are to be updated through the date of any hearing or trial.

## DOCUMENT REQUESTS

**DOCUMENT REQUEST NO. 1**     All subpoenas, civil investigative demands, and/or requests for production of documents, whether formal or informal, served upon Defendants by the Department of Justice, the Florida Attorney General, or any Government Health Agency related to this litigation or the allegations in the Complaint or any prior version of the Complaint.

**DOCUMENT REQUEST NO. 2**     Any documents produced in response to any of the subpoenas, civil investigate demands, and/or requests described in Request 1.

**DOCUMENT REQUEST NO. 3**     All litigation holds or other notices, directions, or instructions provided to any of Your employees or agents relating to preservation of Documents relevant to this litigation.

**DOCUMENT REQUEST NO. 4**     All Patient Records, MDS Assessments, Claims, and any drafts of the foregoing relating to any resident specifically referred to in the Complaint.

11

**DOCUMENT REQUEST NO. 5**     All Documents or Communications relating to Upcoding at any LaVie Facility.

**DOCUMENT REQUEST NO. 6**     All Documents or Communications relating to any failure to timely complete a Care Plan for any resident of any LaVie Facility.

**DOCUMENT REQUEST NO. 7**     Documents sufficient to show:

- a. all MDS Nurses working at the LaVie Facilities;
- b. the Director of Nursing of each of the LaVie Facilities;
- c. the Business Manager (or other person having responsibility for billing) of each of the LaVie Facilities;
- d. the person responsible for maintaining Patient Records at each of the LaVie Facilities;
- e. the Rehabilitation Director at each of the LaVie Facilities; and
- f. all supervisors or managers of the foregoing and their managers or supervisors, up to and including the management of Genoa Health Care Group, LLC (d/b/a LaVie Care).

**DOCUMENT REQUEST NO. 8**     All manuals, handbooks, guides, policies, procedures, or training materials relating to any of the following topics:

- a. retention or maintenance of Documents and Communications, including but not limited to Claims, MDS Assessments, Patient Records, and/or Care Plans;
- b. data or information security for computer systems used in the LaVie Facilities including assignment and secrecy of passwords and log-in information;
- c. resident evaluation and assessment, including but not limited to the completion and submission of MDS Assessments, and/or the development and creation of Care Plans;
- d. evaluation of residents' therapy needs and provision of therapy services; and
- e. ethics, regulatory compliance, and/or the prevention of fraud.

**DOCUMENT REQUEST NO. 9**     All Documents or Communications relating to the establishment and implementation of Medicare or Medicaid "budgets" or target reimbursement rates, including but not limited to:

    a.    any Document showing the "budget" or desired reimbursement rate for any LaVie Facility or the method for calculating or determining the same;

    b.    any "scorecard" or other Document evaluating the reimbursement rate at any LaVie Facility;

    c.    any "audit" or other evaluation of any LaVie Facility's reimbursement rates; and

    d.    any Document or Communication concerning methods for increasing reimbursement rates at any LaVie Facility.

**DOCUMENT REQUEST NO. 10**   The Cost Report submitted for each LaVie Facility for each year during the Relevant Period.

**DOCUMENT REQUEST NO. 11**   All documents relating to Angela Ruckh, including but not limited to:

    a.    any personnel file relating to Ms. Ruckh;

    b.    any performance reviews relating to Ms. Ruckh;

    c.    any communications relating to Ms. Ruckh's transfer from the Marshall Facility to the Governor's Creek Facility;

    d.    any documents relating to the termination of Ms. Ruckh's employment at the Governor's Creek Facility; and

    e.    any documents relating to Ms. Ruckh's reporting of any facility or individual for violating, or failing to comply with, any rule, regulation, policy, or procedure.

**DOCUMENT REQUEST NO. 12**   All Documents or Communications relating to the selection, evaluation, or hiring of MDS or reimbursement nurses through MedBest.

Dated this 23rd day of January, 2014

                                                       *s/ John B. Ward*

| | |
|---|---|
| Kevin J. Darken | Silvija A. Strikis (*pro hac vice*) |
| Florida Bar No. 0090956 | Joseph S. Hall (*pro hac vice*) |
| THE COHEN LAW GROUP | Christopher A. Klimmek (*pro hac vice*) |
| 201 East Kennedy Boulevard, Suite 1000 | John B. Ward (*pro hac vice*) |
| Tampa, Florida 33602 | KELLOGG, HUBER, HANSEN, TODD, |
| Telephone: (813) 225-1655 |   EVANS & FIGEL, P.L.L.C. |
| Facsimile: (813) 225-1921 | 1615 M Street, N.W., Suite 400 |
| kdarken@tampalawfirm.com | Washington, D.C. 20036 |
| | Telephone: (202) 326-7900 |
| Rory Delaney (*pro hac vice*) | Facsimile: (202) 326-7999 |
| DELANEY KESTER LLP | sstrikis@khhte.com |
| 7 Liberty Square, 2nd Floor | jhall@khhte.com |
| Boston, MA 02109 | cklimmek@khhte.com |
| Telephone: (857) 498-0384 | jward@khhte.com |
| royston@delaneykester.com | |

Charles F. Kester (*pro hac vice*)
DELANEY KESTER LLP
4505 Las Virgenes Road, Suite 203
Calabasas, CA 91302
Telephone: (818) 974-8627
Facsimile: (818) 914-6911
charles@delaneykester.com

                                       *Counsel for Relator*

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on January 23, 2014, I served the foregoing Relator's First Request for Production of Documents Directed to all Defendants on attorneys for Defendants listed below.

                s/ John B. Ward

Kari Aasheim
Vilma Martinez
Jennifer L. Watson
Mancuso & Dias, P.A.
5102 W. Laurel Street, Suite 700
Tampa, FL 33607
Phone: (813) 769-6280
Facsimile: (813) 769-6281
Email: kaasheim@mdlegal.net
Email: jlwatson@mdlegal.net
Email: vmartinez@mdlegal.net