# EXHIBIT G

**UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmd.uscourts.gov

THE UNITED STATES OF AMERICA
And THE STATE OF FLORIDA ex rel.
ANGELA RUCKH

       Plaintiffs,

      v.                                                            No. 8:11-CV-1303 (SDM-TBM)

CMC II, LLC; SEA CREST HEALTH
CARE MANAGEMENT, LLC d/b/a
LAVIE MANAGEMENT SERVICES OF
FLORIDA; SALUS REHABILITATION
LLC, d/b/a LAVIE REHAB; 207
MARSHALL DRIVE OPERATIONS, LLC,
d/b/a MARSHALL HEALTH AND
REHABILITATION CENTER; and 803
OAK STREET OPERATIONS, LLC, d/b/a
GOVERNOR'S CREEK HEALTH AND
REHABILITATION CENTER,

       Defendants.

**DEFENDANTS' RESPONSES TO RELATOR'S FIRST SET OF**
**REQUESTS FOR ADMISSION**

1

## <u>RESPONSES TO REQUESTS FOR ADMISSION</u>

Pursuant to Federal Rule of Civil Procedure 36, DEFENDANTS, CMC II, LLC; SEA CREST HEALTH CARE MANAGEMENT, LLC, d/b/a LAVIE MANAGEMENT SERVICES OF FLORIDA; SALUS REHABILITATION, LLC, d/b/a LAVIE REHAB; 207 MARSHALL DRIVE OPERATIONS, LLC, d/b/a MARSHALL HEALTH AND REHABILITIATION CENTER; 803 OAK STREET OPERATIONS, LLC, d/b/a GOVERNOR'S CREEK HEALTH AND REHABILITATION CENTER, (collectively "Defendants") hereby respond to Relator's First Set of Requests for Admission.[1]  Each of Defendants' Responses herein is limited to the above-captioned action, is not intended, and may not be used as an admission by Defendants in any other action or for any other purpose.

Defendants' Responses are based on information currently known.  Defendants reserve the right to supplement, amend, correct, or clarify these responses as necessary, based on subsequently acquired information or knowledge, whether gained through Defendants' own continued investigation or the investigation of others.

## GENERAL OBJECTIONS

1.      Defendants object to the extent any request, definition, or instruction seeks information in the possession, custody, or control of Relator, or that is equally or more readily available to Relator from other sources, including but not limited to, third parties.

---

[1] Although Relator styles the Requests for Admission dated September 30, 2015 as "Relator's First Set of Requests for Admission to Defendants," Defendants note that another set of Requests for Admission, dated March 15, 2013, were also styled "Relator's First Set of Requests for Admission."  Any reference herein to the "First Set of Requests for Admission," the "RFAs," or the "Requests" pertains to Relator's September 30, 2015 Requests for Admission only.

2

2.      Defendants object to every request, definition, or instruction to the extent it purports to require Defendants to provide information on behalf of persons or entities other than Defendants.

3.      Defendants object to each request to the extent that it purports to require Defendants to ascertain the knowledge, however limited or tangential, of every individual employed by Defendants at every level of authority or responsibility relating to the subject matter of the request.

4.      Defendants object to the Requests on the ground that Rule 36 requests for admission are not "a discovery device," and cannot seek admissions "as to central facts in dispute." *See, e.g.*, *Modern, Inc. v. Florida*, No. 6:03-cv-718-Orl-31DAB, 2005 U.S. Dist. LEXIS 35515, *5 (M.D. Fla. July 18, 2005) (citing *Pickens v. Equitable Life Assur. Soc. of U.S.*, 413 F.2d 1390, 1393-1394 (5th Cir. 1969)); *see also Perez v. Miami-Dade County*, 297 F.3d 1255, 1269 (11th Cir. 2002) (Rule 36 prohibits "re-serv[ing] the complaint in the form of a request for admission," and "issues obviously subject to dispute should be resolved at trial").

5.      To the extent any request, definition, or instruction may be construed as calling for the disclosure of privileged or protected information including, without limitation, information subject to the attorney-client privilege, the work product doctrine, and/or any other privilege or protection from discovery, Defendants hereby claim such privileges and protections, and object to the disclosure of any documents or information subject thereto.  Any disclosure of privileged or protected documents, materials, or information is inadvertent and not intended to waive those privileges and protections.

3

6.      Defendants cared for thousands of patients during the four-year period in question.  Defendants have also produced over 4 million documents, including emails and attachments, spreadsheets and other ESI, and medical records.  Defendants object to any request that requires them to admit what these documents contain or do not contain, where the request does not identify a specific document to which the request is referring.  Without directing Defendants to specific documents, the Requests are unduly burdensome and simply re-serve the complaint in the form of Requests for Admission.  *See* General Objection 4.  In addition, Defendants object to such requests, definitions, or instructions as vague, ambiguous, and calling for speculation.

7.      Defendants object to each and every request, definition, and instruction to the extent it assumes disputed facts or legal conclusions.  Defendants hereby deny any disputed facts or legal conclusions assumed by each request, definition, and instruction.  Any response or objection herein is without prejudice to this objection and Defendants' rights to dispute facts and legal conclusions assumed by any request, definition, or instruction.

8.      Defendants object to each and every request, definition, and instruction to the extent that it purports to impose burdens upon Defendants that are not permitted by law, or seeks to impose greater obligations than those imposed under the Federal Rules of Civil Procedure, the Local Rules of the Middle District of Florida, or any order of the Court.

9.      Defendants object to the Requests to the extent that they are not directed to a party.

10.      Defendants object to the Requests to the extent they are overbroad, harassing, unduly burdensome as to time and scope, would require Defendants to expend unreasonable

effort or expense, or seek information that is not relevant or material to the subject matter of this action.

## OBJECTIONS TO DEFINITIONS

In addition to their General Objections, Defendants object to certain of Relator's definitions.

2.     "Facilities" means all Skilled Nursing Facilities, as that term is defined by 42 U.S.C. § 1395i-3 and 42 C.F.R. § 483.5, that Defendants owned, operated, or provided services for in the State of Florida during the period between and including January 1, 2008, and January 25, 2012.

**Objection:**  Defendants object that the phrase "owned, operated, or provided services for" is vague and ambiguous.

4.     "Administrator" means corporate officers or executives, including but not limited to Regional Managers and Regional Vice Presidents.

**Objection:**  Defendants object to this definition as vague, ambiguous, and overly broad.

7.     "Audit" means an official or unofficial audit, review, or other effort undertaken by Defendants or their Affiliates to assess the accuracy of recordkeeping and/or communications with a government agency.

**Objection:**  Defendants object to this definition as vague, ambiguous, and overly broad. Defendants further object to this definition to the extent it calls for the disclosure of documents or information protected from disclosure by the attorney-client privilege and/or the work product doctrine.

14.     "Falsify" means providing incomplete, inaccurate, misleading, or otherwise untruthful information; backdating; or forging or using unauthorized signatures.

**Objection:**  Defendants object that the definition calls for a legal conclusion, and improperly seeks admissions about facts in dispute.

20.     "Local facility employees" means an employee or independent contractor who is not an Administrator and who works or worked at one of the Facilities.

**Objection:**  Defendants object to this definition as vague, ambiguous, and overly broad.

21.     "Minimum Data Set Assessment" or "MDS Assessment" means the standardized assessment, based on a core set of screening, clinical, and functional status elements, which forms the basis for the comprehensive assessment for all residents of long-term care facilities certified to participate in Medicare or Medicaid.  As used in this Notice, "Minimum Data Set Assessment" includes, without limitation, the following types of assessments: [listing 16 types of purported assessments].

**Objection:**  Defendants object to this definition as vague, ambiguous, and overly broad. Defendants further object to this definition to the extent it is inconsistent with applicable statutes, regulations, rules, and guidance concerning MDS assessments and their requirements.

28.     "Upcoding" refers to any instance or practice of coding, with the purpose or effect of increasing the amount of compensation sought or received, any part of any document submitted to, or required to be made available for audit or inspection by, any Government Health Agency in an inaccurate, aggressive, improper, or illegal manner.  For the avoidance of doubt,

upcoding includes, without limitation, coding, recording, or describing, in a document submitted to or required to be made available for audit or inspection by any Government Health Agency:

    a.    Minutes of therapy provided to a patient by a non-licensed therapist;

    b.    The medical needs or medical condition of any patient in an inaccurate or mischaracterized manner;

    c.    Medically unnecessary care, treatment, or therapy; or

    d.    Care, treatment, or therapy where such care, treatment or therapy was not actually provided or expected to be provided.

**Objection:**  Defendants object to the definition as vague, ambiguous, overly broad, and unduly burdensome.  Defendants further object that the definition calls for a legal conclusion.

## OBJECTIONS TO INSTRUCTIONS

Defendants object to the Instructions to the extent they purport to impose burdens upon Defendants that are not permitted by law, or seek to impose greater obligations than those imposed under the Federal Rules of Civil Procedure, the Local Rules of the Middle District of Florida, or any order of the Court.

## RESPONSES TO REQUESTS FOR ADMISSION

All General Objections, Objections to Definitions, and Objections to Instructions are incorporated in the below Responses by reference, as if fully set forth therein.  To the extent that each and every part of any Request is not specifically and expressly admitted, it is denied.

**REQUEST NO. 1**

Admit that the records of patients receiving care from Defendants' Affiliates were falsified.

**RESPONSE**

    Denied.


**REQUEST NO. 2**

Admit that Defendants knew that the records of patients receiving care from Defendants'

Affiliates were falsified.

**RESPONSE**

    Denied.

**REQUEST NO. 3**

Admit that the care plans of patients receiving care from Defendants' Affiliates were

falsified.

**RESPONSE**

    Denied.

**REQUEST NO. 4**

Admit that Defendants knew that the care plans of patients receiving care from Defendants'

Affiliates were falsified.

**RESPONSE**

    Denied.

**REQUEST NO. 5**

Admit that the MDS Assessments of patients receiving care from Defendants' Affiliates were

falsified.

**RESPONSE**

    Denied.

**REQUEST NO. 6**

Admit that Defendants knew that the MDS Assessments of patients receiving care from

Defendants' Affiliates were falsified.

**RESPONSE**

Denied.

**REQUEST NO. 7**

Admit that at least one Audit of the Facilities' operations uncovered evidence that patients'

ADL scores were higher than supported by required documentation.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.  *See* General

Objection 6.

**REQUEST NO. 8**

Admit that at least one Audit of the Facilities' operations uncovered evidence that patients'

RUG levels were higher than supported by required documentation.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.  *See* General

Objection 6.

**REQUEST NO. 9**

Admit that at least one Audit of the Facilities' operations uncovered evidence suggesting that

Facility employees or contractors purposefully inflated RUG levels.

**RESPONSE**

Defendants deny any purposeful inflation of RUG levels.  Defendants currently lack

sufficient information to admit or deny the remainder of the Request.  *See* General Objection 6.

**REQUEST NO. 10**

Admit that at least one Audit of the Facilities' operations uncovered evidence suggesting that

Facility employees or contractors purposefully inflated ADL scores.

**RESPONSE**

Defendants deny any purposeful inflation of ADL scores.  Defendants currently lack

sufficient information to admit or deny the remainder of the Request.  *See* General Objection 6.

**REQUEST NO. 11**

Admit that at least one Audit of the Facilities' operations uncovered evidence suggesting that

Facility employees or contractors purposefully upcoded patients in a manner not described in

Request 9 or 10.

**RESPONSE**

Defendants deny any purposeful upcoding of patients.  Defendants currently lack

sufficient information to admit or deny the remainder of the Request.  *See* General Objection 6.

**REQUEST NO. 12**

Admit that Medicare Part A patients received care at the Facilities in the absence of

recommendations from an interdisciplinary team (as defined by 42 C.F.R. § 483.20(k)(2)(ii)).

**RESPONSE**

Defendants object to the extent this Request calls for a legal conclusion.  The Request is

otherwise denied.  *See* General Objection 6.

**REQUEST NO. 13**

Admit that Medicare Part B patients received care at the Facilities in the absence of

recommendations from an interdisciplinary team (as defined by 42 C.F.R. § 483.20(k)(2)(ii)).

**RESPONSE**

Defendants object to the extent this Request calls for a legal conclusion.  The Request is otherwise denied.  *See* General Objection 6.

**REQUEST NO. 14**

Admit that Medicaid patients received care at the Facilities in the absence of recommendations from an interdisciplinary team (as defined by 42 C.F.R. § 483.20(k)(2)(ii)).

**RESPONSE**

Defendants object to the extent this Request calls for a legal conclusion.  The Request is otherwise denied.  *See* General Objection 6.

**REQUEST NO. 15**

Admit that Medicare Part A patients received care at the Facilities in the absence of a completed care plan more than seven days after the respective patient was admitted.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.  *See* General Objection 6.

**REQUEST NO. 16**

Admit that Medicare Part B patients received care at the Facilities in the absence of a completed care plan more than seven days after the respective patient was admitted.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.  *See*  General Objection 6.

**REQUEST NO. 17**

Admit that Medicaid patients received care at the Facilities in the absence of a completed care plan more than seven days after the respective patient was admitted.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.  *See* General Objection 6.

**REQUEST NO. 18**

Admit that Medicare Part A patients received care at the Facilities that was not medically necessary.

**RESPONSE**

Denied.

**REQUEST NO. 19**

Admit that Medicare Part B patients received care at the Facilities that was not medically necessary.

**RESPONSE**

Denied.

**REQUEST NO. 20**

Admit that Medicaid patients received care at the Facilities that was not medically necessary.

**RESPONSE**

Denied.

**REQUEST NO. 21**

Admit that Defendants or their Affiliates set goals for the percentage of Medicare Part A patients in the Facilities who would have "Ultra High" or "Very High" RUG levels.

**RESPONSE**

As part of their normal budgeting process, Defendants admit that various Facilities in Florida had benchmarks for various factors, including but not limited to RUG levels, but deny that any such benchmarks contributed to, resulted in, or otherwise related to the submission of

any false or fraudulent claim for payment to any government payor.  The Request is otherwise denied.

## REQUEST NO. 22

Admit that employees or contractors working at Defendants' Facilities assumed that newly admitted patients would be coded at an "Ultra High" RUG level by default, unless Defendants or their Affiliates affirmatively decided otherwise.

## RESPONSE

Denied.

## REQUEST NO. 23

Admit that Defendants or their Affiliates required employees to justify coding a patient at an ADL level of "A" but had no such requirement for patients coded at an ADL level of "B" or "C."

## RESPONSE

Denied.

## REQUEST NO. 24

Admit that Defendants or their Affiliates instructed employees to attempt to extend patients' stays beyond the time when continued inpatient treatments were medically necessary.

## RESPONSE

Denied.

## REQUEST NO. 25

Admit that some patients receiving care at Defendants' Facilities were given more therapy during the seven days preceding an Assessment Reference Date than immediately before and after those seven days, with the goal of increasing reimbursement.

**RESPONSE**

Denied.

**REQUEST NO. 26**

Admit that Defendants or their Affiliates used "grace days," as defined in the CMS Long-Term Care Facility Resident Assessment Instrument User's Manual, Version 3.0, at 2-43 (Sept. 2010),  to move ARDs with the goal of achieving higher RUG levels.

**RESPONSE**

Defendants object to the Request to the extent that it calls for a legal conclusion. Defendants and their Affiliates deny any improper use of "grace days" to achieve any RUG level. The Request is otherwise denied.

**REQUEST NO. 27**

Admit that Defendants or their Affiliates employed special-compensation or bonus plans to reward Administrators for their performance, whether measured based on net profits, RUG scores, patient mix, therapy minutes, or any other similar metric.

**RESPONSE**

Defendants admit that, at times, certain employees were eligible for bonuses based on a number of factors, but deny the accuracy of the Request's characterization of the criteria. Defendants further object to the phrase "other similar metric" as vague and ambiguous.  The Request is otherwise denied.

**REQUEST NO. 28**

Admit that Defendants or their Affiliates employed special-compensation or bonus plans to reward local Facility employees, including Directors of Nursing, based at least in part on the Facility's revenue, profit, EBITDA, or any other similar financial metric.

14

**RESPONSE**

Defendants admit that, at times, certain Facility employees, including Directors of Nursing, were eligible for bonuses based on a number of factors, including some financial metrics, but deny the accuracy of the Request's characterization of the criteria. Defendants further object that the phrase "other similar financial metric" is vague and ambiguous. The Request is otherwise denied.

**REQUEST NO. 29**

Admit that Defendants or their Affiliates received payments from one or more Government Health Agencies for care provided to patients.

**RESPONSE**

Admitted.

**REQUEST NO. 30**

Admit that Defendants or their Affiliates received payments from one or more Government Health Agencies for care provided to patients who lacked a completed care plan at the time the request for payment was submitted.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny. *See* General Objection 6.

**REQUEST NO. 31**

Admit that Defendants or their Affiliates took actions to encourage their Facilities to achieve higher average RUG levels.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny because the phrase "took actions to encourage their Facilities to achieve higher average RUG levels" is undefined,

15

vague, and ambiguous.  Defendants and their Affiliates deny taking any action that contributed

to, resulted in, or otherwise related to the submission of any false or fraudulent claim for

payment to any government payor.  The Request is otherwise denied.

**REQUEST NO. 32**

Admit that Defendants or their Affiliates or contractors submitted claims to a Government

Health Agency that they knew or should have known to be false.

**RESPONSE**

 Denied.

**REQUEST NO. 33**

Admit that employees or Administrators of Defendants or their Affiliates sought to remove

from patient records care plans that did not support the therapy actually provided.

**RESPONSE**

 Denied.

**REQUEST NO. 34**

Admit that some patient records, including care plans, for the 800 Sampled Patients are

presently missing or incomplete.

**RESPONSE**

 Defendants currently lack sufficient information to admit or deny.  *See* General Objection
6.

**REQUEST NO. 35**

Admit that some of the missing or incomplete patient records and care plans described in

Request No. 34 went missing, in whole or in part, after Relator Angela Ruckh filed her initial

Complaint in this matter in June 2011.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.  *See* General Objection 6.

**REQUEST NO. 36**

Admit that some of the missing or incomplete patient records and care plans described in Request No. 34 went missing, in whole or in part, before Relator Angela Ruckh filed her initial Complaint in this matter in June 2011.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.  *See* General Objection 6.

**REQUEST NO. 37**

Admit that some of the missing or incomplete patient records and care plans described in Request No. 34 were never completed.

**RESPONSE**

Defendants object to the phrase "missing or incomplete patient records" in reference to records that were "never completed" as vague and ambiguous.  Defendants currently lack sufficient information to admit or deny.  *See* General Objection 6.

**REQUEST NO. 38**

Admit that the records of Medicare Part A patients who had received or were receiving care at the Facilities were altered after Relator Angela Ruckh filed her initial Complaint in this matter in June 2011.

**RESPONSE**

Defendants object to the Requests to the extent "altered" is undefined, vague,

ambiguous.  Defendants currently lack sufficient information to admit or deny.  *See* General

Objection 6.

**REQUEST NO. 39**

Admit that the records of Medicare Part B patients who had received or were receiving care at

the Facilities were altered after Relator Angela Ruckh filed her initial Complaint in this matter

in June 2011.

**RESPONSE**

Defendants object to the Requests to the extent "altered" is undefined, vague,

ambiguous.  Defendants currently lack sufficient information to admit or deny.  *See*  General

Objection 6.

**REQUEST NO. 40**

Admit that the records of Medicaid patients who had received or were receiving care at the

Facilities were altered after Relator Angela Ruckh filed her initial Complaint in this matter in

June 2011.

**RESPONSE**

Defendants object to the Requests to the extent "altered" is undefined, vague,

ambiguous.  Defendant currently lack sufficient information to admit or deny.  *See* General

Objection 6.

**REQUEST NO. 41**

Admit that there was no written "four point plan" as referenced in the document bearing

Bates number RUQT_ESI00008400.

18

**RESPONSE**

Denied.

**REQUEST NO. 42**

Admit that Defendants or their Affiliates received Requests for Documents from the Medicaid

Fraud Control Unit of the Office of the Attorney General for the State of Florida in or about

October or November 2011.

**RESPONSE**

Defendants admit that the Medicaid Fraud Control Unit of the Office of Attorney

General for the State of Florida sent a request for certain documents to the Custodian of Records

for Governor's Creek Health and Rehabilitation on our around October 12, 2011.  Defendants

currently lack sufficient information to admit or deny the remainder of the Request.

**REQUEST NO. 43**

Admit that Defendants or their Affiliates received Requests for Documents not described in

Request No. 42 after September 2011.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny because the phrase

"Requests for Documents not described in Request No. 42" is undefined, vague, ambiguous, and

overly broad.

**REQUEST NO. 44**

Admit that Defendants' in-house counsel, Anna Small, had a conversation with Assistant

Attorney General Erin Nobles regarding Requests for Documents on or about October 19,

2011.

19

**RESPONSE**

Defendants object to the characterization of Anna Small as "in-house counsel."

Defendants currently lack sufficient information to admit or deny the remainder of the Request.

**REQUEST NO. 45**

Admit that Warburg Pincus notified Defendants or their Affiliates that the Office of the

Attorney General of the State of Florida had issued a Request for Documents regarding

LaVie's Medicare, Medicaid, or TRICARE records before Warburg Pincus sold LaVie.

**RESPONSE**

Denied.

**REQUEST NO. 46**

Admit that Warburg Pincus notified Defendants or their Affiliates that the federal government

had issued a Request for Documents regarding LaVie's Medicare, Medicaid, or TRICARE

records before Warburg Pincus sold LaVie.

**RESPONSE**

Denied.

**REQUEST NO. 47**

Admit that Formation Capital knew that the Office of the Attorney General of the State of

Florida had issued a Request for Documents regarding LaVie's Medicare, Medicaid, or

TRICARE records before Formation Capital bought LaVie.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.

**REQUEST NO. 48**

Admit that Consulate Management, LLC, knew that the Office of the Attorney General of the State of Florida had issued a Request for Documents regarding LaVie's Medicare, Medicaid, or TRICARE records before Consulate Management, LLC agreed to manage the Facilities.

**RESPONSE**

    Denied.

**REQUEST NO. 49**

Admit that Formation Capital knew that the federal government had issued a Request for Documents regarding LaVie's Medicare, Medicaid, or TRICARE records before Formation Capital bought LaVie.

**RESPONSE**

    Defendants currently lack sufficient information to admit or deny.

**REQUEST NO. 50**

Admit that Consulate Management, LLC, knew that the federal government had issued a Request for Documents regarding LaVie's Medicare, Medicaid, or TRICARE records before Consulate Management, LLC agreed to manage the Facilities.

**RESPONSE**

    Denied.

**REQUEST NO. 51**

Admit that Formation Capital sought and had access to RUG distributions, individualized or summary data on patient's lengths of stay, and other similar data before it consummated its purchase of LaVie.

**RESPONSE**

    Defendants currently lack sufficient information to admit or deny.

**REQUEST NO. 52**

Admit that writing and signing patient records was within the scope of employment of Directors of Nursing and Directors of Rehabilitation employed by Defendants or their Affiliates.

**RESPONSE**

Defendants admit that Directors of Nursing and Rehab wrote and signed patient records. Defendants object to the phrase "within the scope of employment" as calling for a legal conclusion. The Request is otherwise denied.

**REQUEST NO. 53**

Admit that completing and signing MDS Assessments was within the scope of employment of MDS Coordinators for Defendants or their Affiliates.

**RESPONSE**

Defendants admit that MDS Coordinators at Facilities completed and signed MDS Assessments. Defendants object to the phrase "within the scope of employment" as calling for a legal conclusion. The Request is otherwise denied.

**REQUEST NO. 54**

Admit that the Weekly Nursing Progress Note form represented in document AR_CMC_00000143 was not in use on October 30, 2010.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny.

**REQUEST NO. 55**

  A.    With respect to document AR_0000164, admit the following:

        a.  The Registered Nurse Assessment Coordinator did not sign the form before October 2011.

    b.  Caroline Packer signed the form on or about October 25, 2011.

    c.  Caroline Packer signed the form after the Governor's Creek facility received a Request for Records from the Office of the Attorney General of the State of Florida.

    d.  Caroline Packer signed the form while government investigators were visiting the Governor's Creek facility.

B.     With respect to document AR_0000801, admit the following:

    a.  The Registered Nurse Assessment Coordinator did not sign the form before October 2011.

    b.  Caroline Packer signed the form on or about October 25, 2011.

    c.  Caroline Packer signed the form after the Governor's Creek facility received a Request for Records from the Office of the Attorney General of the State of Florida.

    d.  Caroline Packer signed the form while government investigators were visiting the Governor's Creek facility.

C.     With respect to document AR_0000805, admit the following:

    a.  The Registered Nurse Assessment Coordinator did not sign the form before October 2011.

    b.  Caroline Packer signed the form on or about October 25, 2011.

    c.  Caroline Packer signed the form after the Governor's Creek facility received a Request for Records from the Office of the Attorney General of the State of Florida.

      d.  Caroline Packer signed the form while government investigators were visiting the Governor's Creek facility.

**RESPONSE**

Defendants admit that Caroline Packer signed AR_0000164, AR_0000801, and AR_0000805 on or about October 25, 2011.  Defendants admit that Governor's Creek received a Request for Records from the Office of the Attorney General of the State of Florida prior to October 25, 2011.  Defendants currently lack sufficient information to admit or deny whether Caroline Packer signed AR_0000164, AR_0000801, or AR_0000805 "while government investigators were visiting the Governor's Creek facility."  The Request is otherwise denied.

**REQUEST NO. 56**

Admit that the medical records Defendants have produced to date in response to Relator Angela Ruckh's Requests for Production constitute all of the responsive medical records that, to the best of Defendants' knowledge, were in Defendants' possession at the time such Requests for Production were made.

**RESPONSE**

Defendants admit that they have produced, or otherwise made available to Relator, all responsive medical records in their possession.

**REQUEST NO. 57**

Admit that the medical records Defendants have produced to date in response to Relator Angela Ruckh's Requests for Production constitute all of the responsive medical records that are now, to the best of Defendants' knowledge, in Defendants' possession.

**RESPONSE**

Defendants admit that they have produced or otherwise made available to Relator all responsive medical records in their possession.

**REQUEST NO. 58**

Admit that the records other than medical records Defendants have produced to date in response to Relator Angela Ruckh's Requests for Production constitute all of the responsive medical records that, to the best of Defendants' knowledge, were in Defendants' possession at the time such Requests for Production were made.

**RESPONSE**

Defendants admit that all responsive records, other than medical records, in Defendants' possession at the time the Requests for Production were produced or otherwise made available to Relator.

**REQUEST NO. 59**

Admit that the records other than medical records Defendants have produced to date in response to Relator Angela Ruckh's Requests for Production constitute all of the responsive medical records that are now, to the best of Defendants' knowledge, in Defendants' possession.

**RESPONSE**

Defendants admit that all responsive records, other than medical records, in Defendants' possession have been produced or otherwise made available to Relator.

**REQUEST NO. 60**

Admit that a majority of Defendants' Medicare revenue within the State of Florida came from reimbursements for treatment of patients in "Ultra High" or "Very High" RUG categories.

**RESPONSE**

Defendants currently lack sufficient information to admit or deny because the word "majority" and the phrase "Medicare revenue" are undefined, vague, and ambiguous.

**REQUEST NO. 61**

Admit that the medical records of the Sampled Patients produced in response to Relator

Angela Ruckh's Requests for Production:

> A.  Are true and accurate representations of what they purport to be;
>
> B.  Were made at or near the time of the occurrence of the matters set forth by, or
>
> from information transmitted by, a person with knowledge of these matters; and
>
> C.  Were kept in the ordinary course of Defendants' or their Affiliates'
>
> regularly conducted activity.

**RESPONSE**

Defendants object to the Request as unreasonable and unduly burdensome to the extent it

purports to require Defendants to admit the admissibility or authenticity of the medical records of

the Sampled Patients.  Subject to and without waiving any of the foregoing objections,

Defendants admit that the medical records of the Sample Patients produced in response to

Relator's Requests for Production are (a) true and accurate representations of what they purport

to be; (b) were made at or near the time of the occurrence of the matters set forth by, or from

information transmitted by, a person with knowledge of the matters therein; and (c) were kept in

the ordinary course of Defendants' business.

**REQUEST NO. 62**

Admit that the financial and payment records regarding the Sampled Patients produced in

response to Relator Angela Ruckh's Requests for Production:

> A.  Are true and accurate representations of what they purport to be;
>
> B.  Were made at or near the time of the occurrence of the matters set forth by, or
>
> from information transmitted by, a person with knowledge of these matters; and

C.      Were kept in the ordinary course of Defendants' or their Affiliates'
regularly conducted activity.

**RESPONSE**

Defendants object to the Request as unreasonable and unduly burdensome to the extent it purports to require Defendants to admit the admissibility or authenticity of the financial and payment records of the Sampled Patients.  Defendants further object that the phrase "financial and payment records" is vague and ambiguous.  Subject to and without waiving any of the foregoing objections, Defendants admit that the financial and payment records of the Sample Patients produced in response to Relator's Requests for Production are (a) true and accurate representations of what they purport to be; (b) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of the matters therein; and (c) were kept in the ordinary course of Defendants' business.

**REQUEST NO. 63**

Admit that all of the documents in the following Bates ranges reflect information sent to a Government Health Agency on UB-04 forms:

A.      [RUQT_UB 0000000001 – RUQT_UB 0000000292]

B.      [RUQT_UB 0000000322 – RUQT_UB 0000000729]

C.      [RUQT_UB 0000000765 – RUQT_UB 0000000864]

D.      [RUQT_UB 0000000877 – RUQT_UB 0000001253]

E.      [RUQT_UB 0000001292 – RUQT_UB 0000001710]

F.      [RUQT_UB 0000001742 – RUQT_UB 0000002690]

G.      [RUQT_UB 0000002758 – RUQT_UB 0000002934]

H.      [RUQT_UB 0000002951 – RUQT_UB 0000003614]

I.      [RUQT_UB 0000003749 – RUQT_UB 0000004494]

J.      [RUQT_UB 0000004628 – RUQT_UB 0000005375]

K.      [RUQT_UB 0000005435 – RUQT_UB 0000005716]

L.      [RUQT_UB 0000005747 – RUQT_UB 0000006023]

M.      [RUQT_UB 0000006050 – RUQT_UB 0000006276]

N.      [RUQT_UB 0000006301 – RUQT_UB 0000006346]

O.      [RUQT_UB 0000006356 – RUQT_UB 0000007013]

P.      [RUQT_UB 0000007067 – RUQT_UB 0000007768]

Q.      [RUQT_UB 0000007828 – RUQT_UB 0000008634]

R.      [RUQT_UB 0000008702 – RUQT_UB 0000009401]

S.      [RUQT_UB 0000009455 – RUQT_UB 0000010126]

T.      [RUQT_UB 0000010184 – RUQT_UB 0000010737]

U.      [RUQT_UB 0000010788 – RUQT_UB 0000011256]

V.      [RUQT_UB 0000011287 – RUQT_UB 0000012470]

W.      [RUQT_UB 0000012572 – RUQT_UB 0000012808]

X.      [RUQT_UB 0000012848 – RUQT_UB 0000013197]

Y.      [RUQT_UB 0000013234 – RUQT_UB 0000014046]

Z.      [RUQT_UB 0000014113 – RUQT_UB 0000014544]

AA.     [RUQT_UB 0000014585 – RUQT_UB 0000015049]

BB.     [RUQT_UB 0000015094 – RUQT_UB 0000015790]

CC.     [RUQT_UB 0000015846 – RUQT_UB 0000016198]

DD.    [RUQT_UB 0000016225 – RUQT_UB 0000016795]

EE.    [RUQT_UB 0000016841 – RUQT_UB 0000017432]

FF.    [RUQT_UB 0000017480 – RUQT_UB 0000017750]

GG.    [RUQT_UB 0000017777 – RUQT_UB 0000018349]

HH.    [RUQT_UB 0000018404 – RUQT_UB 0000018944]

II.    [RUQT_UB 0000018995 – RUQT_UB 0000019343]

JJ.    [RUQT_UB 0000019381 – RUQT_UB 0000020238]

KK.    [RUQT_UB 0000020318 – RUQT_UB 0000020491]

LL.    [RUQT_UB 0000020512 – RUQT_UB 0000020728]

MM.    [RUQT_UB 0000020749 – RUQT_UB 0000021266]

NN.    [RUQT_UB 0000021308 – RUQT_UB 0000021820]

OO.    [RUQT_UB 0000021860 – RUQT_UB 0000022524]

PP.    [RUQT_UB 0000022570 – RUQT_UB 0000022851]

QQ.    [RUQT_UB 0000022877 – RUQT_UB 0000023366]

RR.    [RUQT_UB 0000023415 – RUQT_UB 0000024355]

SS.    [RUQT_UB 0000024417 – RUQT_UB 0000024989]

TT.    [RUQT_UB 0000025036 – RUQT_UB 0000025640]

UU.    [RUQT_UB 0000025696 – RUQT_UB 0000025945]

VV.    [RUQT_UB 0000025969 – RUQT_UB 0000026801]

WW.    [RUQT_UB 0000026875 – RUQT_UB 0000026936]

XX.    [RUQT_UB 0000026950 – RUQT_UB 0000027185]

YY.    [RUQT_UB 0000027212 – RUQT_UB 0000028111]

ZZ.    [RUQT_UB 0000028199 – RUQT_UB 0000028996]

AAA.  [RUQT_UB 0000029063 – RUQT_UB 0000029392]

BBB.   [RUQT 043904 – RUQT 043974]

**RESPONSE**

Due to the volume of documents that are the subject of the Request (over 20,000 pages), Defendants currently lack sufficient information to admit or deny.  Defendants' review of the listed documents is ongoing, and Defendants will further supplement.

**REQUEST NO. 64**

Admit that Defendants received funds paid by a Government Health Agency in connection with the information reflected in the documents in the following Bates ranges:

A.    [RUQT_UB 0000000001 – RUQT_UB 0000000292]

B.    [RUQT_UB 0000000322 – RUQT_UB 0000000729]

C.    [RUQT_UB 0000000765 – RUQT_UB 0000000864]

D.    [RUQT_UB 0000000877 – RUQT_UB 0000001253]

E.    [RUQT_UB 0000001292 – RUQT_UB 0000001710]

F.    [RUQT_UB 0000001742 – RUQT_UB 0000002690]

G.    [RUQT_UB 0000002758 – RUQT_UB 0000002934]

H.    [RUQT_UB 0000002951 – RUQT_UB 0000003614]

I.    [RUQT_UB 0000003749 – RUQT_UB 0000004494]

J.    [RUQT_UB 0000004628 – RUQT_UB 0000005375]

K.    [RUQT_UB 0000005435 – RUQT_UB 0000005716]

L.    [RUQT_UB 0000005747 – RUQT_UB 0000006023]

M.   [RUQT_UB 0000006050 – RUQT_UB 0000006276]

N.    [RUQT_UB 0000006301 – RUQT_UB 0000006346]

O.    [RUQT_UB 0000006356 – RUQT_UB 0000007013]

P.    [RUQT_UB 0000007067 – RUQT_UB 0000007768]

Q.    [RUQT_UB 0000007828 – RUQT_UB 0000008634]

R.    [RUQT_UB 0000008702 – RUQT_UB 0000009401]

S.    [RUQT_UB 0000009455 – RUQT_UB 0000010126]

T.    [RUQT_UB 0000010184 – RUQT_UB 0000010737]

U.    [RUQT_UB 0000010788 – RUQT_UB 0000011256]

V.    [RUQT_UB 0000011287 – RUQT_UB 0000012470]

W.    [RUQT_UB 0000012572 – RUQT_UB 0000012808]

X.    [RUQT_UB 0000012848 – RUQT_UB 0000013197]

Y.    [RUQT_UB 0000013234 – RUQT_UB 0000014046]

Z.    [RUQT_UB 0000014113 – RUQT_UB 0000014544]

AA.   [RUQT_UB 0000014585 – RUQT_UB 0000015049]

BB.   [RUQT_UB 0000015094 – RUQT_UB 0000015790]

CC.   [RUQT_UB 0000015846 – RUQT_UB 0000016198]

DD.   [RUQT_UB 0000016225 – RUQT_UB 0000016795]

EE.   [RUQT_UB 0000016841 – RUQT_UB 0000017432]

FF.   [RUQT_UB 0000017480 – RUQT_UB 0000017750]

GG.   [RUQT_UB 0000017777 – RUQT_UB 0000018349]

HH.   [RUQT_UB 0000018404 – RUQT_UB 0000018944]

II.   [RUQT_UB 0000018995 – RUQT_UB 0000019343]

JJ.   [RUQT_UB 0000019381 – RUQT_UB 0000020238]

KK.   [RUQT_UB 0000020318 – RUQT_UB 0000020491]

LL.   [RUQT_UB 0000020512 – RUQT_UB 0000020728]

MM. [RUQT_UB 0000020749 – RUQT_UB 0000021266]

NN. [RUQT_UB 0000021308 – RUQT_UB 0000021820]

OO. [RUQT_UB 0000021860 – RUQT_UB 0000022524]

PP. [RUQT_UB 0000022570 – RUQT_UB 0000022851]

QQ. [RUQT_UB 0000022877 – RUQT_UB 0000023366]

RR. [RUQT_UB 0000023415 – RUQT_UB 0000024355]

SS. [RUQT_UB 0000024417 – RUQT_UB 0000024989]

TT. [RUQT_UB 0000025036 – RUQT_UB 0000025640]

UU. [RUQT_UB 0000025696 – RUQT_UB 0000025945]

VV. [RUQT_UB 0000025969 – RUQT_UB 0000026801]

WW. [RUQT_UB 0000026875 – RUQT_UB 0000026936]

XX. [RUQT_UB 0000026950 – RUQT_UB 0000027185]

YY. [RUQT_UB 0000027212 – RUQT_UB 0000028111]

ZZ. [RUQT_UB 0000028199 – RUQT_UB 0000028996]

AAA. [RUQT_UB 0000029063 – RUQT_UB 0000029392]

BBB. [RUQT 043904 – RUQT 043974]

**RESPONSE**

Due to the volume of documents that are the subject of the Request (over 20,000 pages), Defendants currently lack sufficient information to admit or deny.  Defendants' review of the listed documents is ongoing, and Defendants will further supplement.

**REQUEST NO. 65**

Admit that Defendants' Affiliates received funds paid by a Government Health Agency in connection with the information reflected in the documents in the following Bates ranges:

A. [RUQT_UB 0000000001 – RUQT_UB 0000000292]

32

B.    [RUQT_UB 0000000322 – RUQT_UB 0000000729]

C.    [RUQT_UB 0000000765 – RUQT_UB 0000000864]

D.    [RUQT_UB 0000000877 – RUQT_UB 0000001253]

E.    [RUQT_UB 0000001292 – RUQT_UB 0000001710]

F.    [RUQT_UB 0000001742 – RUQT_UB 0000002690]

G.    [RUQT_UB 0000002758 – RUQT_UB 0000002934]

H.    [RUQT_UB 0000002951 – RUQT_UB 0000003614]

I.    [RUQT_UB 0000003749 – RUQT_UB 0000004494]

J.    [RUQT_UB 0000004628 – RUQT_UB 0000005375]

K.    [RUQT_UB 0000005435 – RUQT_UB 0000005716]

L.    [RUQT_UB 0000005747 – RUQT_UB 0000006023]

M.    [RUQT_UB 0000006050 – RUQT_UB 0000006276]

N.    [RUQT_UB 0000006301 – RUQT_UB 0000006346]

O.    [RUQT_UB 0000006356 – RUQT_UB 0000007013]

P.    [RUQT_UB 0000007067 – RUQT_UB 0000007768]

Q.    [RUQT_UB 0000007828 – RUQT_UB 0000008634]

R.    [RUQT_UB 0000008702 – RUQT_UB 0000009401]

S.    [RUQT_UB 0000009455 – RUQT_UB 0000010126]

T.    [RUQT_UB 0000010184 – RUQT_UB 0000010737]

U.    [RUQT_UB 0000010788 – RUQT_UB 0000011256]

V.    [RUQT_UB 0000011287 – RUQT_UB 0000012470]

W.    [RUQT_UB 0000012572 – RUQT_UB 0000012808]

X.    [RUQT_UB 0000012848 – RUQT_UB 0000013197]

Y.      [RUQT_UB 0000013234 – RUQT_UB 0000014046]

Z.      [RUQT_UB 0000014113 – RUQT_UB 0000014544]

AA.     [RUQT_UB 0000014585 – RUQT_UB 0000015049]

BB.     [RUQT_UB 0000015094 – RUQT_UB 0000015790]

CC.     [RUQT_UB 0000015846 – RUQT_UB 0000016198]

DD.     [RUQT_UB 0000016225 – RUQT_UB 0000016795]

EE.     [RUQT_UB 0000016841 – RUQT_UB 0000017432]

FF.     [RUQT_UB 0000017480 – RUQT_UB 0000017750]

GG.     [RUQT_UB 0000017777 – RUQT_UB 0000018349]

HH.     [RUQT_UB 0000018404 – RUQT_UB 0000018944]

II.     [RUQT_UB 0000018995 – RUQT_UB 0000019343]

JJ.     [RUQT_UB 0000019381 – RUQT_UB 0000020238]

KK.     [RUQT_UB 0000020318 – RUQT_UB 0000020491]

LL.     [RUQT_UB 0000020512 – RUQT_UB 0000020728]

MM.     [RUQT_UB 0000020749 – RUQT_UB 0000021266]

NN.     [RUQT_UB 0000021308 – RUQT_UB 0000021820]

OO.     [RUQT_UB 0000021860 – RUQT_UB 0000022524]

PP.     [RUQT_UB 0000022570 – RUQT_UB 0000022851]

QQ.     [RUQT_UB 0000022877 – RUQT_UB 0000023366]

RR.     [RUQT_UB 0000023415 – RUQT_UB 0000024355]

SS.     [RUQT_UB 0000024417 – RUQT_UB 0000024989]

TT.     [RUQT_UB 0000025036 – RUQT_UB 0000025640]

UU.     [RUQT_UB 0000025696 – RUQT_UB 0000025945]

VV.   [RUQT_UB 0000025969 – RUQT_UB 0000026801]

WW.   [RUQT_UB 0000026875 – RUQT_UB 0000026936]

XX.   [RUQT_UB 0000026950 – RUQT_UB 0000027185]

YY.   [RUQT_UB 0000027212 – RUQT_UB 0000028111]

ZZ.   [RUQT_UB 0000028199 – RUQT_UB 0000028996]

AAA.  [RUQT_UB 0000029063 – RUQT_UB 0000029392]

BBB.  [RUQT 043904 – RUQT 043974]

**RESPONSE**

Due to the volume of documents that are the subject of the Request (over 20,000 pages), Defendants currently lack sufficient information to admit or deny.  Defendants' review of the listed documents is ongoing, and Defendants will further supplement.

Dated:  October 30, 2015                    Respectfully submitted,


                                             _/s/ Terence J. Lynam_____
                                              Terence J. Lynam

                                            **TERENCE J. LYNAM** (*pro hac vice*)
                                            Primary email: tlynam@akingump.com
                                            **ROBERT S. SALCIDO** (*pro hac vice*)
                                            Primary email: rsalcido@akingump.com
                                            AKIN GUMP STRAUSS HAUER & FELD LLP
                                            1333 New Hampshire Avenue, N.W.
                                            Washington, D.C. 200136
                                            Telephone: 202-887-4000
                                            Facsimile: 202-887-4288

                                            **TINA DUNSFORD**
                                            Florida Bar No. 624721
                                            Primary Email: tdunsford@ldlfirm.com
                                            **SCOTT R. LILLY**
                                            Florida Bar No. 0119245
                                            Primary Email: slilly@flhealthlaw.com
                                            Secondary Email: srlilly@ldlfirm.com
                                            FLORIDA HEALTH LAW CENTER TAMPA, PLLC
                                            501 E. Kennedy Blvd., Suite 775
                                            Tampa, FL 33602
                                            Telephone:  (813) 517-1661
                                            Facsimile:  (813) 517-1668


                                            *Attorneys for Defendants*

36

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

electronic mail to the following counsel of record this 30th day of October 2015.

| | |
|---|---|
| Kevin J. Darken, Esquire<br>Fl. Bar No. 0090956<br>The Cohen Law Group<br>201 East Kennedy Boulevard,  Suite 1950<br>Tampa, Florida 33602<br>Telephone: (813) 225-1655<br>Facsimile: (813) 225-1921<br>kdarken@tampalawfirm.com | Silvija A. Strikis, Esquire (*pro hac vice*)<br>Joseph S. Hall<br>John B. Ward<br>Kellogg, Huber, Hansen, Todd,<br>  Evans & Figel, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Telephone: (202) 326-7900<br>Facsimile: (202) 326-7999<br>sstrikis@khhte.com<br>jhall@khhte.com<br>jward@khhte.com |
| Rory Delaney, Esquire (*pro hac vice*)<br>Delaney Kester LLP<br>7 Liberty Square, 2nd Floor<br>Boston, MA 02109<br>Telephone: (857) 498-0384<br>royston@delaneykester.com | Charles F. Kester (*pro hac vice*)<br>Delaney Kester LLP<br>4505 Las Virgenes Road, Suite 203<br>Calabasas, CA 91302<br>Telephone: (818) 974-8627<br>Facsimile: (818) 914-6911<br>charles@delaneykester.com<br>*Attorneys for Plaintiff-Relator, Angela Ruckh* |

/s/ Terence J. Lynam
**Terence J. Lynam**

*Attorney for Defendants*

37