**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

THE UNITED STATES OF AMERICA and
THE STATE OF FLORIDA *ex rel.*
ANGELA RUCKH,

    Plaintiffs,

      v.

CMC II, LLC et al.

    Defendants.

CIVIL ACTION NO.
8:11 CV 1303 SDM-TBM

## DEFENDANTS' OPPOSITION TO RELATOR'S MOTION TO PRECLUDE AND FOR SANCTIONS

Defendants hereby oppose Relator's Motion to Preclude and For Sanctions.  Relator

seeks extraordinary remedies—precluding Defendants from using a discrete number of relevant

documents, a partial default judgment, and the imposition of monetary sanctions—on the basis of

an invented discovery violation.  Because Defendants have met their discovery obligations, and

because there is no prejudice to Relator as a result of the production of a relatively small number

of documents months before trial and during the expert discovery period, which Defendants'

expert will use in his upcoming expert report, the extreme remedies Relator seeks are

unwarranted and Relator's Motion should be denied.

## I.    INTRODUCTION

Relator worked at two of Defendants' Skilled Nursing Facilities ("SNFs") for a short

period of time (totaling approximately a month) in 2011.  Her allegations about those two SNFs,

arising from her brief employment, have now been inflated to include all 53 SNFs that

1

Defendants' predecessor LaVie operated in Florida for a four-year period.  This case is no longer about what Relator did or did not observe.  Instead, Relator has turned this litigation into an audit of Defendants' records that is wholly divorced from her allegations in the Revised Second Amended Complaint (the "Complaint"), and that has resulted in drastically disproportional discovery.

Relator's claim of a discovery violation is unfounded.  Defendants have produced over five million documents to Relator, including over one million pages of patient files from its 53 facilities over a four year period (2008-2012). Relator has long since ignored the requirement that  discovery should be "proportional to the needs of the case," (Fed. R. Civ. P. 26(b)(1); instead,  Relator's motion is consistent with the years of burdensome, scorched-earth discovery she has sought in this case.

Defendants have expended significant resources responding to Relator's disproportional discovery demands.  Among other things, Defendants engaged discovery vendors at significant expense, and incurred other substantial costs.  Ex. A, Decl. of R. D. Thomas, at ¶ 5 (for example, Defendants have spent in excess of $570,000 on discovery vendors alone).  Conversely, Relator has made some relatively minor document productions consisting primarily of medical records Defendants originally produced to her, and a few self-serving interrogatory responses that Relator apparently prepared acting as her own "expert."  None of the millions of documents produced, or reams of witness testimony provided, support Relator's claims in the Complaint that Defendants' employees provided medically unnecessary therapy to achieve a higher reimbursement rate, sought reimbursements that were not supported by the medically necessary services actually provided, or provided a different level of patient care based on payer source.  In

fact, the witnesses Relator deposed specifically denied those allegations.  *See* Ex. B (excerpts of relevant deposition testimony).

After the close of fact discovery, left with no evidence of actual False Claims Act ("FCA") violations, Relator has now invented a new theory of supposed liability that does not appear anywhere in her Complaint or in the FCA.  Her flawed notion, articulated for the first time in her December 11, 2015 expert reports, seems to be that perceived record-keeping errors somehow amount to false claims for which the government would seek recoupment under the FCA.  Specifically, as it relates to this Motion, Relator claims that a missing MDS assessment from a resident file means that an MDS assessment was never completed, and Defendants' reimbursement for the resident during that period was based on a false statement for which the government would seek recoupment.

That theory is fatally flawed for numerous reasons, including that the absence of a particular MDS assessment in a file years later could never, standing alone, establish that the MDS assessment was never completed.  For example, there can be no dispute that the actual claims for payment submitted to Medicare—reflected on the UB-04 forms produced in this litigation—identify the date when the assessment reflected in the MDS occurred, the MDS assessment type, and the number of days covered in the MDS for which payment is sought.  Ex. C., Decl. of P. Dressel, at ¶ 6.  Furthermore, as Defendants' expert's review of the resident files will show, medically necessary services were provided to the relevant residents.  Even putting aside the multitude of indicia that the services billed were actually provided, and as discussed

further below, alleged regulatory noncompliance (here in the form of supposedly missing documentation) does not, by itself, support an FCA violation or support FCA damages.[1]

Even if Relator's legal theory concerning the supposedly missing documentation had merit, which it does not, the MDS assessments *are not missing*. That fundamental truth, which directly refutes Relator's allegations in her expert reports, is not disputed. The reality—that Defendants followed state and federal regulations concerning the performance and documentation of MDS assessments—does not fit the narrative Relator is advancing to her own financial advantage. It is no wonder, then, that she is so keen for the Court to impose the extraordinary remedy of precluding Defendants' use of those MDS assessments, and entering a judgment against Defendants on those supposed "claims," on the ground that Defendants have committed some imaginary discovery violation.

To be clear, Relator is asking this Court to adopt a fiction, in the form of a factual finding, that the MDS assessments do not exist when there is no dispute that they do. Relator is asking this Court to ignore the truth simply because a relatively small number of documents, among the over five million produced, were provided after the close of fact discovery, but promptly after Defendants became aware the documents were not previously produced and were central to Relator's revised theory of the case, weeks before the close of expert discovery, and months before trial is scheduled in this case. Relator is further asking this Court to award her, personally, monetary damages based on an allegation that has never appeared in any Complaint in this case, and that is directly refuted by the existence of MDS assessments she claims are missing.

---

[1] As the D.C. Circuit aptly noted in *United States ex rel. Davis v. District of Columbia*, 793 F.3d 120, 125 (D.C. Cir. 2015), where the relator alleged that defendant, contrary to law, failed to maintain adequate documentation regarding certain Medicaid claims because it did not have actual possession of the supporting documentation, the relator's claim failed because nothing in the defendant's "State Plan or the Medicaid regulations on which [the relator] relies conditioned payment on [the defendant's] *physical possession* of documentation…."

Even if Relator will suffer prejudice as a result of Defendants' production of a discrete set of MDS assessments, that prejudice is easily remedied by giving Relator's experts a reasonable amount of additional time to analyze the MDS assessments and supplement their reports. Defendants do not oppose giving Relator's experts that opportunity, and do not believe that a reasonable extension for that purpose will impact the trial date in this case. The relief Relator seeks, conversely, is extreme and unwarranted. Relator's Motion should be denied.

## II.    FACTUAL BACKGROUND

On February 6, 2015, Relator identified 800 nursing home residents (the "sample group") for whom she requested resident files. Ex. A at ¶ 6. A resident's file, of which an MDS assessment is only a small part, is maintained in paper form at the facility where the resident is treated. *Id.* at ¶¶ 7, 12. Defendants retrieved responsive resident files from 53 separate facilities across Florida. *Id.* at 8. The process of collecting the resident files was arduous and time-consuming in light of the number of facilities where responsive records were kept and the volume requested. *Id.* at ¶¶ 6-7. Ultimately, Defendants collected 1.1 million pages of resident files, filling approximately 350 boxes. *Id.* at ¶ 8. The amount of material collected prevented Defendants from undertaking a page-by-page review of each resident file, as doing such a review of over a million pages of records would have required personnel resources that Defendants did not have available, and would have caused substantial delay in providing the files to Relator. *Id.* at ¶¶ 8-10. The original resident files were provided to Relator as they were kept in the usual course of business. *Id.* at ¶ 10.

It was Defendants' practice to print MDS assessments and maintain them in the resident files along with the other components of those files at the facility. *Id.* at ¶¶ 7, 12, 13. Because of that practice, it was Defendants' reasonable expectation that the resident files provided to Relator included all responsive MDS assessments. *Id.* at ¶ 12. In fact, consistent with that

expectation, most of the resident files provided to Relator *did* contain the MDS assessments. *Id.* at ¶ 10, 13; Ex. C at ¶ 5. Of the 800 patients in the sample group, Relator's expert, Shirley Bradley, identified only 91 resident files with missing MDS assessments in her report provided on December 11, 2015. Ex. A at ¶ 13; Ex. C. at ¶ 6. After receiving that report, Defendants attempted to locate the MDS assessments for those residents by searching its legacy IT system. Defendants' expert at FTI subsequently conducted manual, resident-by-resident searches, and was ultimately able to locate electronic versions of the MDS assessments for those 91 resident files from the electronic database. Ex. A at ¶ 14; Ex. C at ¶ 8. Those MDS assessments were promptly produced to Relator. Defendants' expert from FTI will use those MDS assessments as supporting documentation in his expert report that is due on February 25, 2016.

## III.   ARGUMENT

Federal Rule of Civil Procedure 37 prohibits discovery sanctions when a party's *failure* to provide information as required by Rules 26(a) or (e) is either "substantially justified *or* is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Here, rather than failing to provide information, Defendants' *produced it* in accordance with their obligations under Rule 26. The production was made months before trial, and the information—upon which Defendants' rebuttal experts will rely—was produced weeks before the close of expert discovery. As a result, Defendants' production of MDS assessments in response to Relator's revised theory of the case was *both* substantially justified and harmless. Rule 37 sanctions are not available here, and Relator's Motion is meritless.

### A.   Defendants' production of a limited number of MDS assessments was consistent with their obligations under the Federal Rules of Civil Procedure and was substantially justified.

Defendants appropriately supplemented discovery responses they previously believed to be complete, and produced material that their rebuttal experts will rely on in advance of serving

their rebuttal expert reports.  An analysis of the plain language of the applicable Rules

demonstrates that Defendants' January 22, 2016 production of MDS assessments for 91 residents

was proper under Rule 26 and was substantially justified.

To support her motion, Relator seeks to impose unreasonable, duplicative, and

burdensome discovery obligations that extend well beyond those set forth in the Federal Rules of

Civil Procedure.  The Rules' actual requirements and limitations are much different.  Rule 26

requires a party to supplement discovery responses, including responses to requests for

production of documents, *if the party learns that previous responses were "incomplete in some*

*material respect*," and the "corrective information has not otherwise been made known" to the

other party "during the discovery process."  Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).  Rule

26 further requires parties to produce information, like the MDS assessments at issue here, relied

upon by their experts but not previously produced.  Fed. R. Civ. P. 26(a)(2)(B).

In addition to those Rules that require Defendants to supplement their previous

production  of resident files, including the MDS assessments, there are some important

limitations that Relator conveniently ignores.  Information that may be stored electronically does

not have to be produced in more than one format (Fed. R. Civ. P. 34(b)(2)(E)(iii)), and

documents should be produced in the form "in which [they are] ordinarily maintained."  Rule

34(b)(2)(E)(ii).  Moreover, Rule 26(b)(2)(C) instructs courts to limit discovery that is

unreasonably cumulative or duplicative.

Defendants complied with their obligations under the Rules.  After receiving Relator's

document requests, Defendants collected the actual resident files (*i.e.*, the paper files) from the

individual facilities where those files are maintained in the ordinary course of business.  Ex. A at

¶ 7-8.  As noted, it is Defendants' practice to maintain MDS assessments for a particular resident

in that resident's file.[2]  *Id.* at ¶ 12.  Relator agrees with, and anticipated, that practice.  Compl. at

¶ 68 ("The MDS Assessment must be kept in the resident's medical file….").

When resident files are requested in litigation or state audits, it is the Defendants' practice to

produce the file from the facility, as that is believed to represent the complete file.  Ex. A at ¶¶ 7-

8.

Because Defendants reasonably expected that responsive MDS assessments were in the

resident files at each facility, they produced the resident files to Relator unaware that any MDS

assessments were missing.[3]  *Id.* at ¶ 12.  The resident files were provided to Relator for copying

in the same condition in which Defendants maintained them.  *Id.* at ¶ 10.  Relator began copying

resident files in March 2015, but did not alert Defendants that MDS assessments were missing

from any material number of the files, or that Relator would contend that missing MDS

assessments, by themselves, constitute an FCA violation or would form the sole basis for many

of her damages claims, for nearly nine months.  As a result, Defendants did not know until

---

[2] There are a number of reasons Defendants maintain MDS assessments in resident files. For example, many MDS assessments bear physical signatures that would only be present on a hard copy.  Ex. A at ¶ 12.  As Relator herself points out, MDS assessments kept in the back-up electronic database often do not have signatures.  Mot. at 13.  This is not a defect in the MDS assessments, but rather is further evidence of Defendants' practice of keeping signed, hard copy MDS assessments in resident files. Additionally, keeping the MDS assessment in the resident's file gives medical professionals and other caregivers ready access to it while they are providing services to the resident. Ex. A at ¶ 12.

[3] Defendants' reasonable belief that the responsive MDS assessments were in the resident files is borne out by the fact that, according to Relator's own experts, resident files collected from numerous SNFs did not have any missing MDS assessments at all, and some had only a single missing MDS assessment.  Ex. C at ¶ 5.  Defendants also specifically informed Relator that MDS assessments had been produced as part of the resident files of the sample group, as Relator acknowledges.  Mot. at 4 (citing Defendants' Resp. and Objs. to Relator's Fifth Set of Requests for Production, No. 21) ("MDS Assessments are included within the Sample Patients' medical records").

recently that their production of resident files was "incomplete in some material respect."  Fed.
R. Civ. P. 26(e)(1)(A).[4]

Although Relator's damages theory does not appear in her Complaint and does not exist
under the FCA, Defendants nevertheless promptly undertook additional efforts to locate the
allegedly missing MDS assessments from the electronic database.  Ex. A at ¶ 14.  After locating
the MDS assessments, Defendants provided them to Relator pursuant to their obligations to
supplement their discovery responses under Rule 26(e)(1)(A).

Additionally, in light of Relator's experts' reliance on missing MDS assessments in
forming their opinions, Defendants' experts will necessarily need to address that issue in their
rebuttal reports.  Because Defendants' rebuttal experts will rely on the MDS assessments,
Defendants also provided the MDS assessments under Rule 26(a)(2)(B).  *See* Fed. R. Civ. P.
26(a)(2)(B) (requiring a party to disclose the "facts or data considered" by an expert in forming
his or her opinions); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013)
(citing Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment) ("the term
'facts or data' should 'be interpreted broadly to require disclosure of any material considered by
the expert, from whatever source, that contains factual ingredients.'").

Experts routinely rely on documents and other information that has not previously been
produced in fact discovery, and courts reject claims of prejudice particularly when, as here,
plaintiffs have revised their damages theory and the documents are subsequently produced.  *See,
e.g., Bizrocket.com, Inc. v. Interland, Inc.*, No. 04-60706-CIV, 2005 WL 6745908, at *1 (S.D.

_____

[4] The 800 resident files that were selected for the sample group included a core group of
300 each for Medicare and Medicaid, and a replacement group of 100 each in the event that a file
from the core group could not be located.  Had the Relator advised Defendants that a resident file
in the core group was incomplete, a substitute file from the replacement group could have been
used.  Instead, Relator remained silent until issuing an expert report claiming that documentation
missing from a file means a false claim was submitted.

Fla. Aug. 31, 2005) (agreeing that production of material relied upon by a party's expert was proper when the documents had not been previously produced in the litigation during fact discovery, the plaintiff failed to demonstrate any prejudice, and reliance on the materials was necessary to rebut plaintiffs' revised damages theory).

Thus, Defendants' conduct in supplementing discovery once it became aware of additional documents was substantially justified, under Rule 37, and conformed with Rule 26. Defendants conducted a reasonable, good-faith search for responsive resident files.  Defendants had a reasonable, good-faith belief that the resident files they provided to Relator contained all responsive MDS assessments because that is where MDS assessments are ordinarily maintained. When Relator added an allegation that objectively did not exist in any of Relator's complaints, and revised her damages theory through her expert reports, Defendants promptly undertook a reasonable, good-faith search for the records from an electronic database containing information previously believed to be duplicative of information already produced.  Moreover, because their own rebuttal experts now have to rely on the MDS assessments to rebut Relator's new damages theory, Defendants exceeded their obligations under Rule 26(a)(2)(B) and produced the information weeks in advance of serving their rebuttal expert reports.  In short, Defendants have fully complied with what the Rules actually require, and there is nothing from which Relator needs "relief."

> **B.    Even if there were a discovery violation here, which there is not, the extreme remedies Relator seeks are either unavailable as a matter of law, or inappropriate because Relator is not harmed.**
>
> > **1.    A default judgment cannot be entered on claims that are not alleged in the Complaint and not actionable under the FCA.**

On December 11, 2015 Relator served four expert reports.  Those reports, particularly the report of Shirley Bradley, articulated for the first time Relator's erroneous legal theory that a

missing MDS from a resident's file constitutes an FCA violation.[5]  Despite Relator's current

assertions to the contrary, Defendants could not have reasonably anticipated before December 11

that Relator would assert a new claim for damages that does not exist in the law or in the

Complaint.  While the Complaint alleges that certain MDS assessments are false, it nowhere

alleges that a missing MDS assessment, by itself, constitutes an FCA violation, which is the

theory Relator now advances.[6]

 Relator's request for a default judgment on non-existent claims that do not appear in her

Complaint is meritless for at least two reasons.  First, as multiple courts have ruled, an FCA

plaintiff cannot assert an FCA allegation for the first time at this late stage.[7]  Aside from being

---

[5] Relator asserts that she identified 72 of the 91 residents with allegedly missing MDS assessments in her October 27, 2015 interrogatory responses.  Mot. at 5.  The basis for that assertion is not clear because Defendants cannot identify those supposed 72 instances of missing MDS assessments in Relator's interrogatory responses even today.  At most, there are only seven residents who are clearly identified as having missing MDS assessments, and only one of those has "missing MDS" as the sole deficiency.  Oct. 27, 2015 Interrogatory Responses at Ex. H. From this, it is difficult to understand how Defendants should have been on notice that a missing MDS assessment would form the basis of an alleged false claim for 91 residents when that allegation is never made in any complaint or amended complaint.  Moreover, Relator expressly stated in her interrogatory responses that she expected to supplement Exhibit H in her expert reports.  *See* Oct. 27, 2015 Interrogatory Responses at 10.

[6] For example, the allegations in the complaint are that the MDS assessments were in fact done, but done improperly due to allegedly inflated ADL scores, medically unnecessary rehabilitative therapy, an overstated amount of rehabilitative therapy provided to residents, and non-authorized individuals signing MDS assessments.  Compl. ¶¶ 7, 11.

[7] *See United States ex rel. Phalp v. Lincare Holdings, Inc.*, No. 10-cv-21094, 2015 U.S. Dist. LEXIS 99285, *29 (S.D. Fla. July 10, 2015) ("a relator cannot raise a new theory of the case in response to a dispositive motion when that theory does not appear in the pleadings"); *United States ex rel. Estate of Donegan v. Anesthesia Assocs. of Kansas City, PC*, 4:12-CV-0876-DGK, 2015 U.S. Dist. LEXIS 74239, at *21-23 (W.D. Mo. June 9, 2015) ("[a] relator may not assert new theories of liability based on information learned during discovery…. [P]ermitting a relator to assert new theories of liability after conducting discovery would enable the relator to conduct an end-run around the heightened pleading standard, effectively allowing the relator to file a flimsy lawsuit subjecting the defendant to time-consuming and expensive discovery in the hope of uncovering an unknown wrong or extracting a settlement from the defendant "); *United States ex rel. Graves v. Plaza Med. Ctrs. Corp.*, No. 1023382-Civ, 2014 U.S. Dist. LEXIS 143269, at *12, n. 4 (S.D. Fla. Oct. 7, 2014) (barring claims not included in the complaint, and

barred because Defendants have no effective notice when the allegation does not appear in the complaint, it is also barred because otherwise, the FCA plaintiff would be permitted to improperly circumvent the requirements of Fed. R. Civ. P. 9(b).  The Eleventh Circuit has taken the lead in underscoring that FCA allegations must be alleged with specificity in the Complaint. *See United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002) (a relator must set forth "facts as to time, place, and substance of the defendant's alleged fraud" and "the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them") (citations omitted); *accord United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir. 2010).[8]  Relator's failure to allege her "missing MDS" theory in her Complaint is fatal to her request for a judgment on that theory.

    Furthermore, Relator's newly-asserted theory of FCA liability does not exist under applicable FCA law.  Many courts have held that documentation issues, and even disregard of government regulations, does not equate to a false claim.  *See, e.g., United States ex rel. Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015) ("Liability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard

---

raised for the first time in response to a motion to dismiss); *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1028 (D. Nev. 2006) (noting that the FCA allegation not stated in complaint should not be addressed at summary judgment stage); *see also Phalp*, 2015 U.S. Dist. LEXIS 99285, *30 ("And as the Eleventh Circuit observed in *Keeler*, the district courts must guard against 'the situation where a plaintiff does not specifically plead the minimum elements of their allegation, and is able to learn the complaint's bare essentials through discovery'.") (citing *Keeler*, 568 F. App'x at 805) (quoting *Clausen*, 290 F.3d at 1313).

    Had Relator included her new allegation that a missing MDS constitutes a false claim in any of her complaints, Defendants would have moved to dismiss under Fed. R. Civ. P. 12(b)(6) as there is no such claim available under the FCA.

    [8] Although "the Eleventh Circuit has recognized that, while these requirements of Rule 9(b) may in practice, make it difficult for a qui tam plaintiff to bring an action, they are necessary to prevent '[s]peculative suits against innocent actors for fraud' and charges of guilt by association."  *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 793 (11th Cir. 2014) (quoting *Clausen*, 290 F.3d at 1308).

of government regulations or failure to maintain proper internal procedures") (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)); *United States ex rel. Hutto v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) ("Improper practices standing alone are insufficient to state a claim under either § 3729(a)(1) or (a)(2) absent allegations that a specific fraudulent claim was in fact submitted to the government.") (citation omitted); *United States ex rel. Ortolano v. Amin Radiology*, No. 5:10-cv-583, 2015 U.S. Dist. LEXIS 9724, at *8-9, n. 3 (M.D. Fla. Jan. 28, 2015) ("The fact that there may have been a violation of the laws governing Medicare, Medicaid, or Tricare is not enough, standing alone, to sustain a cause of action under the False Claims Act.") (citation omitted); *see also United States ex rel. Davis v. District of Columbia*, 793 F.3d 120, 125 (D.C. Cir. 2015) (where the relator alleged that defendant, contrary to law, failed to maintain adequate documentation for audit regarding Medicaid claims because it did not have actual possession of the supporting documentation, the relator's claim failed because nothing in the defendant's "State Plan or the Medicaid regulations on which [the relator] relies conditioned payment on [the defendant's] *physical possession* of documentation supporting its year-end cost reports") (emphasis in original).

Because Relator's allegations concerning missing MDS assessments do not appear in the Complaint, and are not recognized as violations of the FCA, her request for a default judgment on those supposed claims fails as a matter of law.

> **2.      Because Defendants' production of a limited number of MDS assessments was harmless, the remedies Relator seeks are inappropriate.**

Relator incorrectly claims that Rule 37 sanctions are appropriate because she is harmed by the "untimely" production of the MDS assessments nearly two months before the close of expert discovery and more than three months before trial in this case.  She further claims that her supposed harm justifies an order from this Court precluding Defendants from using relevant

documents, imposing monetary sanctions, and entering a partial default judgment. Even if the discovery violation Relator alleges had occurred, none of those extreme remedies would be appropriate because Relator is not harmed by the production of a small number of documents while expert discovery is ongoing and long before trial.

Relator's supposed harm is, by her own account, limited to additional expense she will allegedly incur from examining the MDS assessments and a supposed delay in the trial date for this case. Mot. at 9. As to the first category of so-called prejudice, given the extreme financial burden her discovery requests have placed on Defendants, Relator's claim of financial prejudice arising from the need to review and analyze the MDS assessments is unfounded.[9] Additionally, Relator fails to acknowledge that had Defendants produced these documents earlier she would have incurred the very same expense for reviewing the MDS assessments at that time. Any expense she incurs reviewing the MDS assessments now has, at most, been delayed. It is not an expense that would have otherwise been avoided, and therefore cannot be considered prejudice.

Relator's claim that trial will be delayed by the production of the MDS assessments is similarly unsubstantiated. Re-opening fact discovery is unnecessary, and in fact, Relator's insistence that she requires additional fact discovery in light of the January 22 production of MDS assessments is belied by her conduct during the fact discovery that has already occurred.

---

[9] Relator attempts to mislead the Court about the amount of information she needs to review by referring to the page count associated with the 159 MDS assessments. However, the page count is due to changes in the MDS assessment form that occurred with the implementation of MDS 3.0. The MDS 3.0 assessment form is longer, but the great majority of the new form is not relevant to this case in any way. For example, many pages of the MDS 3.0 form are simply worksheets that may or may not be completed. Relator's expert Shirley Bradley, having now reviewed hundreds of MDS assessments, including MDS 3.0 assessments, has not previously considered the inapplicable information on the form and would not need to consider it now (*e.g.*, the sample MDS Bradley attaches to her report is only 38 pages). Additionally, the page count Relator cites is significantly inflated as a result of how the data was printed from the electronic database, *i.e.*, with many blank spaces and a format that results in the MDS being printed over twice as many pages as the paper copy Bradley attached as a sample.

14

There is a substantial disparity between Relator's previous fact discovery efforts concerning perceived deficiencies in MDS assessments and their role in her astronomical damages calculations of over $300 million before trebling.  Although Relator took numerous depositions, her allegations regarding deficiencies in MDS assessments were hardly a focus.  That is because, as the Bradley Report makes plain, Relator identified purported issues with MDS assessments through her experts, not through fact discovery.[10]

There is no reason Relator's experts cannot review and analyze the MDS assessments produced on January 22 in the same manner that they have reviewed and analyzed all the thousands of other MDS assessments produced in this litigation.  Defendants are agreeable to allowing Relator's experts additional time to do that work and supplement their reports.  *See Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962, 2015 U.S. Dist. LEXIS 71742, at *9-10 (M.D. Fla. June 3, 2015) (declining to impose Rule 37 sanctions, even for information produced after the close of expert discovery and after dispositive motions were filed, when the non-producing party was given the opportunity to rebut the information).  Moreover, a reasonable extension would not impact the trial date for this case, which is still months away.[11]

---

[10] Moreover, because Relator's allegations about missing MDS assessments are not based on fact witness testimony, Relator's claim that the passage of two months between the close of fact discovery and the production of this limited set of documents results in a prejudicial lapse in fact witnesses' memories is meritless.

[11] While Defendants have met their discovery obligations by producing the MDS assessments, Relator has ignored her obligations and filed a Motion that is inconsistent with the letter and spirit of the Rules.  *See* Fed. R. Civ. P. 1 (the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 5-6 (Dec. 31, 2015) (outlining the Rules' focus on encouraging cooperation among counsel); Tr. of April 27, 2015 Hearing at 33:15-16 (Judge Merryday encouraging counsels' efforts to work cooperatively).  Rather than undertaking cooperative efforts to resolve any issue of additional time Relator will need to review the MDS assessments, Relator's counsel have instead engaged in wasteful motions practice.  The reasons for that are quite obvious.  Relator is not interested in reasonable resolutions to discovery disputes or the

The length of time between Defendants' production and trial counsels against the severe remedies Relator is asking this Court to impose. *See, e.g.*, *Collins v. United States*, No. 3:08-cv-923-J-32JRK, 2010 U.S. Dist. LEXIS 119095, at *16 (M.D. Fla. Nov. 9, 2010) (courts should be "loathe to invoke the strong medicine" of precluding evidence unless there is a finding of "bad faith or gamesmanship *on the eve of trial*.") (emphasis added) (citations omitted); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 666 (M.D. Fla. 2012) (noting that "a failure to comply with disclosure deadlines may be harmless in certain situations when the disclosure is ultimately made well before trial"); *Pineda v. San Francisco*, 280 F.R.D. 517, 522 (N.D. Cal. 2012) (declining to exclude an untimely expert report because, among other reasons, "trial [was] not scheduled to commence" for almost three months).  *Cf. Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339 (11th Cir. 2004) (excluding an expert report because it was produced *at the time of trial* and "*four months after* the report's publication") (emphasis added).  Defendants produced 159 MDS assessments for the 91 residents in January—documents its rebuttal experts will rely upon—more than three months in advance of trial in this case, and while expert discovery is ongoing.[12]  There is no evidence of bad faith here, as Defendants reasonably believed that the MDS assessments were previously produced as part of the resident files—as most undeniably were.

---

efficient conduct of a case that has already dragged on for years at heart-stopping expense to Defendants; she is only interested in obscuring the faults in her allegations.  If the MDS assessments supported her damages calculations, Relator's Motion would never have been filed. Her claims of prejudice are a thin veil over her true objective here, and should not be mistaken as support for the extraordinary "relief" she requests in her Motion.

[12] As already noted, Relator's request for a default judgment must fail as a matter of law. In any event, a default judgment is not appropriate in this circumstance because it is grossly disproportional to the discovery violation Relator claims.  *See, e.g.*, *BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 235 (S.D. Fla. 1989) (noting that "[d]efault is a draconian measure that should be imposed only in exceptional cases" and "[t]he court should not be quick to forfeit a party's right to a full and fair trial on the merits" in finding $29 million default would be a "disproportionate sanction for violation of a single Order").

Precluding Defendants from relying upon these MDS assessments is similarly inappropriate for at least three reasons. First, through her request that Defendants be precluded from relying on the MDS assessments, Relator is asking the Court to establish as true something that is indisputably false, *i.e.*, that no MDS assessment was completed. Doing so would obscure the facts of this case. This Court has readily acknowledged its "typical heavy preference in favor of not excluding evidence, so that cases can be decided on their merits." *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10-cv-891-J-37JBT, 2011 U.S. Dist. LEXIS 127320, at *11 (M.D. Fla. Nov. 3, 2011).[13] What Relator is asking for here flies in the face of the well-founded principle that exclusion is inappropriate when it would prevent a case from being litigated on its merits. If the Court ignores the existence of the MDS assessments by precluding Defendants from relying on them, not only will the case not be decided on its merits, it will be decided in direct conflict with the facts for these 91 residents.

Second, the recently-revealed importance of these documents to rebut Relator's damages theory counsels against their exclusion. *See, e.g.*, *Tampa Bay Water*, 2011 U.S. Dist. LEXIS 88212 at *10-11 (the importance of the evidence at issue is at least one factor courts should consider in determining whether to exclude documents on the ground that they were "newly

---

[13] *See also Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-cv-2446-T-27TBM, 2011 U.S. Dist. LEXIS 88212, at *11 (M.D. Fla. Aug. 9, 2011) ("Even if the Court finds that a party's failure to disclose evidence is neither substantially justified or harmless, 'the sanction of exclusion is not mandatory.'") (citing *Whetstone Candy Co. v. Nestle USA, Inc.*, No. 3:01-cv-415-J-25HTS, 2003 U.S. Dist. LEXIS 27625, at *8 (M.D. Fla. June 2, 2003)), aff'd, 731 F.3d 1171 (11th Cir. 2013); *Palma v. Fla. Neurological Ctr. LLC*, No. 5:10-cv-00117-MMH-TBS, 2011 U.S. Dist. LEXIS 142584, at *12 (M.D. Fla. Sept. 7, 2011) (characterizing dismissal of a claim as "too drastic" a discovery sanction because "[c]ases are best decided on their merits which w[ould] not occur if the [responding party could not] fully litigate its . . . defense"). Appellate courts have similarly recognized that exclusion of evidence can amount to reversible error when, as here, it impacts the fair trial of the case. *See, e.g.*, *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995); *Smith v. Ford Motor Co.*, 626 F.2d 784, 794 (10th Cir. 1980).

disclosed").[14]   The very existence of these MDS assessments directly refutes Relator's claim, which does not appear in the Complaint, that Defendants billed the government for services supported by MDS assessments that were never completed.

Third, unlike Relator who claims an invented prejudice, Defendants will actually be prejudiced if the Court precludes their use of these properly-produced MDS assessments.[15] Relator now claims she is entitled to a massive amount of damages based on a legal theory that does not exist involving "missing" MDS assessments that are not missing.  Precluding Defendants from using the very documents (and only documents) that directly contradict Relator's claim for those alleged damages is obviously prejudicial to Defendants.

---

[14] *See also In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1358-59 (N.D. Ga. 2012) (finding that, although the defendant did not meet its discovery obligations when it produced responsive documents after the close of fact discovery, preclusion was inappropriate); *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (noting that, among other factors, a court of appeals will look to "the importance of the . . . precluded [evidence]" when "determining whether a district court . . . exceeded its discretion" in precluding documents); *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 162 (S.D.N.Y. 2012) (preclusion is "a particularly severe result" in a high-stakes litigation with significant potential damages).

[15] Relator asks the Court to increase Defendants' prejudice by imposing a convoluted and unworkable rubric for admitting the MDS assessments, *i.e.*, preclude Defendants from using them to rebut Relator's baseless allegations that they were not done, while simultaneously allowing Relator to use them as a basis for entirely different allegations.  The MDS assessments are only relevant because Relator claims they do not exist when they certainly do.  Relator's suggestion that the existence of these MDS assessments should only be acknowledged if they have additional alleged deficiencies, but should be denied otherwise, is fundamentally unfair. Relator cites *Rabello v. Bell Helicopter Textron, Inc.*, 200 F.R.D. 484 (S.D. Fla. 2001), in support of her position, but that case, like so many others Relator cites, involved the production of documents much closer to the start of trial and is therefore inapposite.  *See, e.g., Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339 (11th Cir. 2004) (plaintiffs waited until trial to submit an expert report, which was four months after the report was created).

**C.      Relator's unfounded accusations about Defendants' supposed discovery misconduct are inappropriate and do not provide any justification for the extreme sanctions she seeks.**

Apparently recognizing that none of the relief she seeks is appropriate based on the actual circumstances here, Relator resorts to unsupported accusations that Defendants *intentionally* withheld the MDS assessments, and then "cherry-picked" the MDS assessments they produced on January 22.  Mot. at 7, 19.  As an initial matter, Defendants did not "cherry-pick" anything, but rather looked for the specific MDS assessments Relator's experts claim were missing because the other MDS assessments—the ones Relator's experts have identified and reviewed— were obviously already produced.  Additionally, Defendants did not withhold the MDS assessments, *they produced them.*  Relator's claim otherwise has no support whatsoever.[16]

Relator then cites prior discovery rulings that have nothing to do with her Motion as supposed proof that Defendants did not comply with their discovery obligations here.  Mot. at 7. Relator's unfounded assertion that Defendants failed to comply with their discovery obligations in this instance is not made true by citations to prior discovery rulings.  The circumstances surrounding Defendants' recent location of certain MDS assessments differ from the circumstances surrounding discovery issues this Court has considered in the past.  Here, Defendants undertook reasonable efforts to comply with Relator's discovery requests, produced over a million pages of patient records, and reasonably believed their response was complete. Promptly after Relator disclosed her new damages theory, Defendants looked for and produced

---

[16] Relator baldly states that Defendants intentionally withheld the MDS assessments because of the Complaint's unsupported allegation that Defendants' employees falsified or otherwise tampered with assessment signatures.  Mot. at 14 n. 10, 18.  None of the MDS assessments produced on January 22 are probative of any alleged signature issues, however, because they are, by definition, not the MDS assessments that were printed out, signed, and placed in resident files.  Moreover, none of the MDS assessments produced on January 22 were performed during the short time Relator worked at a Defendant SNF, so they could not possibly relate to her allegation that her own electronic signature was altered.

the missing MDS assessments from an electronic database.  As discussed above, Defendants

acted in good faith in their production of the patient records, including the MDS assessments.

**IV.      CONCLUSION**

For the foregoing reasons, Relator's Motion should be denied.[17]


February 11, 2016                                        Respectfully submitted,


                                                         */s/ Robert S. Salcido*

                                                         Robert S. Salcido (*pro hac vice*)
                                                         rsalcido@akingump.com
                                                         Terence J. Lynam (*pro hac vice*)
                                                         tlynam@akingump.com
                                                         AKIN GUMP STRAUSS HAUER & FELD LLP
                                                         1333 New Hampshire Avenue, NW
                                                         Washington, D.C. 20036
                                                         Telephone: (202) 887-4000
                                                         Facsimile: (202) 887-4288

                                                         Tina Dunsford (Florida Bar No. 624721)
                                                         tdunsford@flhealthlaw.com
                                                         FLORIDA HEALTH LAW CENTER
                                                         501 E. Kennedy Blvd., Suite 775
                                                         Tampa, Florida 33602
                                                         Telephone: (813) 517-1661
                                                         Facsimile: (813) 517-1668

                                                         *Counsel for Defendants*

---

[17] The parties are obligated under Rule 26(e)(1)(A) to supplement previous discovery responses if they later learn the responses are incomplete "in some material respect."  Pursuant to that obligation, on February 10, 2016, Defendants produced some additional resident records for twelve residents in the 800-resident sample group.  Earlier today, February 11, 2016, Relator filed a supplement to her pending Motion based on that production.  Defendants will submit a brief supplemental response to Relator's filing as soon as possible.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 11, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for Plaintiffs.

*s/ Terence J. Lynam*

**Terence J. Lynam**

*Attorney for Defendants*
