```
 1                   UNITED STATES OF AMERICA
                     MIDDLE DISTRICT OF FLORIDA
 2                        TAMPA DIVISION

 3   THE UNITED STATES OF AMERICA      Case No. 8:11-CV-1303-T-23TBM
     and THE STATE OF FLORIDA, ex rel,
 4   ANGELA RUCKH,

 5            Plaintiffs,

 6   VS.                              Tampa, Florida

 7   CMC II, LLC, et al,             February 22, 2016

 8            Defendants.             11:49 a.m.

 9   _____/

10            TRANSCRIPT OF TELEPHONIC MOTION PROCEEDINGS
              BEFORE THE HONORABLE THOMAS B. MCCOUN, III
11                UNITED STATES MAGISTRATE JUDGE

12   Appearances:

13
     For the Plaintiffs:      MS. SILVIJA A. STRIKIS
14                            Kellogg, Huber, Hansen, Todd, Evans &
                              Figel, P.L.L.C
15                            1615 M. St. NW, Suite 400
                              Washington, DC  20036
16                            (202)326-7939
                              sstrikis@khhte.com
17

18                            ROYSTON DELANEY, ESQUIRE
                              Royston Delaney, Esq.
19                            745 Atlantic Ave., F13
                              Boston, MA  02111
20                            (857)498-0384
                              royston@delaneykester.com
21

22                            KEVIN J. DARKEN, ESQUIRE
                              The Barry A. Cohen Legal Team
23                            201 E. Kennedy Blvd., Ste 1950
                              Tampa, FL  33602-5865
24                            (813)225-1655
                              kdarken@tampalawfirm.com
25
```

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

```
 1   For the Defendants:        TERENCE J. LYNAM, ESQUIRE
                                ROBERT S. SALCIDO, ESQUIRE
 2                              Akin, Gump, Strauss, Hauer & Feld, LLP
                                1333 New Hampshire Ave NW., Ste 400
 3                              Washington, DC  20036-1564
                                (202)887-4045
 4                              tlynam@akingump.com
                                rsalcido@akingump.com
 5
                                MS. TINA E. DUNSFORD
 6                              LDL Firm, PLLC
                                100 S. Ashley Dr., Suite 600
 7                              Tampa, FL  33606
                                (813)517-1663
 8                              tdunsford@ldlfirm.com

 9   Court Reporter:           MS. CLAUDIA SPANGLER-FRY, RPR, RMR
                                Official Court Reporter
10                              801 North Florida Ave., 7th Floor
                                Tampa, FL  33602
11                              (813)301-5575
                                cookiefry@aol.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

```
 1                    P R O C E E D I N G S
 2                    February 22, 2016
 3                        ********
 4            THE COURT:  Good morning.  Let's call the case.  All
 5    right.
 6            THE CLERK:  United States of America, ex rel, Angela
 7    Ruckh versus CMC II, LLC, et al, Case Number
 8    8:11-CV-1303-T-23TBM.
 9            THE COURT:  Okay.  I've got a little cheat sheet here
10    indicating that Silvija Strikis, Rory Delaney, Kevin Darken are
11    here for the Relator, and Mr. Lynam, Tina Dunsford and Robert
12    Salcido are here for the Defendant.
13            Anybody else on the phone?
14            All right, good, thank you.  Thanks for being
15    available.
16            I was alerted on Friday to this Relator's motion to
17    preclude the use of certain what they describe as untimely or
18    related documents or produced documents in connection with an
19    expert report, which I guess is due from the Defendants here
20    shortly, and after a quick run through of the pleadings, I
21    thought maybe we would benefit by having this hearing.
22            So I don't think we'll take too long, but let me ask
23    for Relators to state as succinctly as they can what they're
24    actually asking the Court to do here on this motion.
25            MS. STRIKIS:  Your Honor, this is Silvija Strikis.
```

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

```
 1              THE COURT:  Jump to the end of your argument, tell me
 2    what relief that you're actually --
 3              MS. STRIKIS:  All right.
 4              Leafing through my outline here, this is Silvija
 5    Strikis, and I hope you can hear me.  I have a bit of a cold
 6    and I understand other counsel on the line may as well.
 7              We believe that the appropriate relief here would be
 8    for the Defendants not to be able to use the documents that
 9    they produce on an untimely basis.  And they should be
10    sanctioned with default as to Relator's expert's findings on
11    those patients.
12              And just to explain what the Relator's expert did is
13    went through the medical records of the sample patients that
14    the parties agreed to produce and in order to assess whether
15    the documentation therein supported the claim that was
16    submitted for the patient and the date in question chosen by --
17    to the expert -- Relator's expert process.
18              And in so doing, those experts assessed the whole
19    files and did a file audit and came up with findings which in
20    the case of -- if an MDS assessment is missing.  The MDS
21    assessment is the core document in this case, really.
22              It starts out referenced in paragraph five of
23    Relator's complaint, you know, the key document to Defendants
24    alleged fraud in this case.
25              And it sets forth the information on which the claim
```

1   form, UB-04, which is a separate, you know, certified claim

2   form that goes to the Government, it sets up the basis for the

3   amount claimed in the UB-04 form which is expressed at the RUG

4   level that ultimately converts to dollars paid.

5          And so not having the MDS assessment form is a key

6   form that Relator's expert did not have.  And what the expert

7   did in that case was to do what (unintelligible) could do under

8   audit if they came in and there was no MDS assessment form,

9   they assumed that Defendants would only be reimbursed at the

10  lowest RUG level because they did not have documentation in the

11  file to support the claim at the highest RUG level.

12         Now, for some of these patients, there may be other

13  issues as well, but the ones that limited MSS assessment, that

14  was a top line issue that there was no MDS assessment.  And --

15         THE COURT:  So let me ask you to jump ahead.  So your

16  expert concluded where there was an MDS missing -- and how many

17  were missing by your count?

18         MS. STRIKIS:  91, I believe.

19         THE COURT:  And where they were missing, the

20  assumption that your expert made was what?

21         MS. STRIKIS:  That there was not support for the RUG

22  level -- corresponding RUG level claimed on the UB-04 form.

23         THE COURT:  And, therefore, it was a fraudulent

24  claim?

25         MS. STRIKIS:  Yeah, therefore, it was a fraudulent

1   claim with the damages being the amount of the difference
2   between the over claim -- claimed amount being the difference
3   between the RUG level charged and the RUG level.
4           THE COURT:  One of the things left unclear to me in
5   my very quick read through the pleadings was apparently there
6   was some part of the protocol that was outlined or agreed to or
7   whatever in place, assumed that there were records that were
8   missing, there was this sort of default group that you would
9   then use a claim there.  Somebody explain that to me.
10          And for purposes of somebody wanting to get a
11  transcript of this, before you speak, it's probably best to
12  identify yourselves, so...
13          But am I wrong in that?  I thought I read somewhere
14  in the Defendants' response that there was -- maybe it was
15  Plaintiffs', but there was a protocol for when there were
16  missing documents, they would simply pull up from a group of an
17  additional hundred or 200 files to look and substitute that
18  person in or am I wrong on that?
19          MR. LYNAM:  Your Honor, this is Terence Lynam for the
20  Defendants.  And Your Honor, we did raise that in our
21  opposition brief because there was a protocol.  There was a
22  sample group of 300 Medicare, 300 Medicaid patients selected,
23  and then a replacement group of 100 Medicare, 100 Medicaid
24  patients that were available in case documentation was
25  incomplete or missing.

1            So our position is is that the Relators had every
2    availability that the documents that they needed were
3    available.  If they couldn't find something in a particular
4    file, they simply had to use the replacement set so that they
5    had the full file.  And they didn't do that.
6            And instead, what they did is they sort of sat back
7    and waited until expert reports were due, and then in their
8    expert reports, they kind of played a gotcha and said, see, you
9    have missing documentation, that's a false claim.
10           And what they should have done is they should have
11   just earlier in the process, because they've had these
12   documents for a very long time, they should have worked out an
13   arrangement to use the replacement set.  That's what the
14   Defendants produced the replacement set for in the first
15   instance.
16           And instead, they just, you know, they sat back, we
17   produced 1.1 million pages of these medical records, Your
18   Honor, a very expensive process for the company to do, and we
19   got them to them last year.
20           And I know there were some earlier problems with the
21   response of the Defendants, but they got these records produced
22   from all around the State, and then the Relator had them for
23   months.  And then in December, they spring these expert reports
24   on us and say, you're missing some documentation and that's a
25   false claim.

```
 1          Well, Your Honor, they didn't allege that in their
 2   complaint.  They didn't allege that there were missing MDS
 3   assessments, so that's something that they're now moving for
 4   judgment on that they didn't even allege in the complaint.
 5          And secondly, missing documentation doesn't
 6   constitute a false claim.  And we cited cases to that effect in
 7   our brief.
 8          But, Your Honor, to your point, there were
 9   replacement sets or there were other records that were
10   available for them to use when there were missing and
11   incomplete files.
12          And these files go back to 2008.  They were produced
13   from all over the State in the form that they were normally
14   kept, but sometimes the MDS was not actually just copied and
15   kept in that file.
16          So what we did --
17          THE COURT:  We'll come back to your argument in a
18   moment.  Let me go back to the Plaintiff because you've
19   clarified the point that I wanted to make.
20          Explain -- well, first of all, does the Relator side
21   agree that this was the protocol, and if so, it appears that by
22   your complaint here, it appears that that protocol was not
23   followed?  In other words, where they found missing records,
24   they didn't pull -- necessarily pull one up from the
25   replacement group, and instead, used the lack of files to bill
```

1    the case for the false claims.

2            But if there was a protocol in effect that they were

3    to, in those instances, to pull up one from the replacement

4    group, I guess the question is, one, do you agree that was the

5    protocol, and two, was it done, or if not, why wasn't it done

6    in this case, because it seems to me that goes to perhaps a

7    question of prejudice or harm, too, so -- because the

8    Defendants essentially are urging that you're sort of -- you're

9    changing your theory a little but here from what it was

10   earlier.

11           So was there a protocol in place for where there

12   would be missing records where you were -- would then go to

13   this replacement group?  And that's directed to the Relators;

14   anybody?

15           MS. STRIKIS:  Your Honor, this is Silvija Strikis.

16   There was not a protocol when the specific documents within a

17   patient's file were not available.  The protocol was used when

18   entire patient files were missing.  And there were 49 or 50

19   files where there was no patient file produced.

20           Indeed, the complaint makes allegations that there

21   are -- Defendants billed for therapy and coded to increase

22   their billing based on information that was not in the file,

23   that patients did not need the therapy or did not receive the

24   therapy, the patients were not as disabled or needing as much

25   assistance as Defendants alleged when they put in their bills.

1            And so the other way the replacement protocol could

2    have worked if there was any confusion about the files, about

3    the payor source; i.e., we thought it was Medicare, but it

4    ended up being another type of payor, so that a hundred extra

5    patient files were drawn from each of Medicare and Medicaid to

6    a sort of patient that had a problem, but didn't have a file or

7    didn't fit the criteria for what we were looking at in this

8    case.   It was not to substitute a substitute patient anytime a

9    document was --

10           THE COURT:   I have not gone through all of the

11   attachments, but is the expert report or the protocol that was

12   agreed to for the Plaintiffs or the Relator's expert, is that

13   included in the submissions?

14           MS. STRIKIS:   I believe there's a citation to a

15   report in Defendants' pleadings, this is Silvija again, but you

16   know, I also think to the extent if Defendants have an issue

17   with expert's protocol that results in a *Daubert* hearing, I

18   mean, what was presented by Relator's experts on damages is

19   what -- how the protocol was established and implemented by

20   Relator's expert.

21           THE COURT:   And how does the production of this

22   rather sizable number of documents, how does that actually

23   affect their expert's position?   I mean, where is the prejudice

24   in doing this?   They argue like we're obliged to, one, we were

25   obliged to rebut, file a rebuttal report, and two, we're

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1    obliged to supplement our prior responses and we did so.

2            Now, putting aside the history of this case with

3    regards to Defendants' production, let me again advance the

4    argument and ask, okay, in that light, where's the harm to the

5    Plaintiff if, in fact, they're allowed to use this as a form of

6    rebuttal evidence to your expert's report?

7            MS. STRIKIS:  Well, Your Honor, the harm to Plaintiff

8    is that it would require the expert to rework and re-review the

9    files for which additional documents have lately been produced

10   and the documents apparently extend beyond just the MDS

11   assessments which were always available to Defendants on an

12   electronic database, and do not agree that Defendants should

13   not have produced them in the first instance or had any reason

14   not to.

15           In fact, there's a long history of them being told

16   that documents were missing, including in the later responses

17   to interrogatories, in June, 2015, and again, in detail in

18   October, 2015.

19           But if -- if we were to say this additional

20   information plus the additional information that's coming in

21   from the facilities which Defendants, in their first

22   opposition, stated that the documents that they were treated

23   came from the facilities, now we have a supplemental production

24   of some documents for 12 additional patients that are coming

25   from the facilities, and that apparently includes some mix of

1    documents that they already produced to the Relator because

2    they marked all the mixed together somewhere and simply were

3    not produced, even though Defendants searched the facilities.

4            And then there's an oblique reference that there

5    would be another round of documents apparently coming from

6    Defendants.

7            And there are also issues in this case, Your Honor,

8    about the security of documents, the manner in which MDS

9    assessments were submitted and stored and signed.  This late

10   production that we received is unsigned.

11           They're not -- many of them don't even indicate that

12   an RN, which is what is required to certify the data, looked at

13   the document.  All of these types of allegations about the MDS

14   assessments are in Relator's complaint.

15           So this is not -- we do not see this as a gotcha

16   claim.  I mean, there could be any reason that these MDS

17   assessments were not in the patient files.

18           And we asked repeatedly that Defendants certify that

19   they -- and affirm that they produced all the medical records,

20   and they did so, apparently without undertaking any effort to

21   confirm that because they claim that they did not have enough

22   time to do that.

23           And meanwhile, now we hear from Mr. Lynam that

24   Relator had so much time to review all these files while her

25   experts were busy reviewing the files that we did get, the 750

1    files that we did get and the documents that we did get, the

2    million pages, and preparing the expert report.

3           THE COURT:  Let me jump over to the Defendants here.

4    It really can't be disputed, I don't think, by the Defendants

5    that these matters were required to be produced, either under

6    discovery requests or under prior Court's order.  And it really

7    can't be disputed, as far as I can tell, that on a number of

8    occasions or at least say -- let's put it this way, at least on

9    more than one occasion, Defendants represented that they had

10   produced all of the patient files.

11          So, you know, particularly as a matter of, one, the

12   Court's deadlines, and two, as a matter of fairness, how fair

13   is it to, in light of the circumstances where it's been

14   represented repeatedly that this is everything, how fair is it

15   to allow for this additional discovery to be used after the

16   Plaintiffs have submitted their expert report when clearly, the

17   production is not timely and appears to be inconsistent with

18   prior representations that Defendant has made that it had

19   produced all of this information?

20          Why should the Court grant the Defendants any leeway

21   in these circumstances?

22          MR. LYNAM:  Your Honor, this is Terence Lynam for the

23   Defendants.  Your Honor, I think what the Court -- the way the

24   Court respect -- submit the way the Court would analyze this is

25   whether the Defendants, in good faith, believed that when they

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1    produced the physical hard copy files of the patient records

2    from the facilities, whether they had a reasonable good faith

3    basis to believe that those files were complete.  And they did.

4              In fact, the files have proven to be complete for the

5    large majority of these patients because it's a relatively

6    small number that the Relator identified were missing some MDS.

7              So the Defendants, in good faith, produced the files

8    that are kept in the normal course of business that have all

9    the doctors' notes, and all the other nurses' notes, as well as

10   an MDS assessment.

11             Remember, the MDS assessment is only a small part of

12   the file and that's why these all add up to 1.1 million pages.

13             So the Defendants acted in good faith and then when

14   the Relator -- and they produced files that they would normally

15   produce in response to any State auditor or any other

16   litigation in a lawsuit as Mr. Thomas' declaration makes clear.

17   They always produced the file at the facility because that's

18   the complete patient file.

19             And what happened here was when Relator gave us their

20   expert reports in December and said, you're missing some

21   documentation, we can't find some MDS, and Your Honor, it's

22   important to know that the MDS is done periodically.

23             And what the Relator's expert pointed out is they

24   can't find the MDS for this particular sample date that they're

25   focusing on for their claim for damages.

1              So it's not that the MDS weren't even in the files

2     for these 91 patients, they were, but what the Relator's expert

3     was saying, I can't find the one for this specific sample date.

4     So that's what -- we said, okay, well, let's see if there's

5     some other data that has the MDS.

6              And so we were able to find out that the company had

7     some of the old data from the LaVee days that goes back to 2008

8     and this time period is 2008 to 2012.  So we produced that data

9     and just had it printed out.

10             But, Your Honor, at all times the Defendant had a

11    reasonable good faith belief which has been proven to be true

12    and validated that the MDS were in the files for these patients

13    because for the vast majority, they were.

14             So going to Your Honor's question about what kind of

15    prejudice there is to the Defendants, well, Your Honor, it's

16    not unusual in a case that an expert in submitting a rebuttal

17    report, which is what we're doing using these documents, for

18    the expert to be relying on some documents that have not been

19    previously produced in the litigation.

20             We started a bizrocket.com case in the Southern

21    District of Florida for that proposition that the experts can

22    rely on documents that were not previously produced.  And we

23    gave them the documents even well in advance of our expert

24    reports.  They've had them for four weeks now since

25    January 22nd.


**CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER**

```
1          So this is really a timing issue under claim of
2    prejudice.  They would like to have had them before December,
3    before they submitted their reports, but they got them on
4    January 22nd.  And what we propose is that they now be allowed
5    to supplement their expert reports in light of the documents
6    that we gave them four weeks ago, and that schedule can be
7    worked out and still keep all the trial dates which are coming
8    up.  In fact, the expert discovery period hasn't even expired
9    yet, that isn't until March.
10          So in terms of any prejudice, it's just a timing
11   issue that can be easily cured by them being able to submit a
12   supplement in light of these additional reports.
13          MR. DELANEY:  Your Honor, may I just --
14          THE COURT:  No, no, no, let me ask a follow-up
15   question here.  You basically say that, if I'm understanding
16   the Defendants' argument, is that you were notified that there
17   were missing MDS by Plaintiff or Plaintiffs' experts, Relator's
18   experts, and so you went looking for additional information and
19   found out that there were additional records.
20          You're telling me you don't think you were obligated
21   to do that two years ago or a year ago when we were -- when
22   discovery was ripe and we were ordering these things and you
23   were representing that you were producing everything?  I mean,
24   you're kind of shifting the burden to the Relator here and it
25   seems grossly unfair in light of the record here.
```

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1          Now you were obliged back then to be looking for

2    these matters and instead of what appears has happened here,

3    the assumption was made that the patient files are complete

4    and, therefore, if we give you that, you're getting everything,

5    which probably somebody knew wasn't exactly correct.

6          But I'm having a little difficulty putting any blame

7    in this on the Plaintiffs.  And I think it's, you know, the

8    case of experts where they've gone to the expense that you have

9    to go through to get these expert reports, based on a certain

10   quantum of evidence, that it's not so easy a remedy to just

11   say, well, we'll reopen the expert opinion and they can go back

12   and take a look at it and reformulate their opinions.

13         One, it's extremely costly, and two, it's entirely

14   inconsistent with the way the schedule was set up by the Court

15   to operate in this case.  So, you know, I'm not entirely

16   persuaded by your argument.

17         That said, I do think that, you know, frankly, they

18   discovered these documents, they were obliged to turn them

19   over.  If they didn't turn them over and that was discovered

20   later, there would be a huge blowup about it, so I think they

21   were required to supplement, if you will, the production there.

22         But what seems to me to be the circumstances here is

23   that it, in effect, is going to result in sort of redoing the

24   expert reporting -- reopening the expert reporting period if we

25   allow for Defendants to use this in a manner that wasn't

**CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER**

1    originally contemplated.

2         So that said -- but let me go to the Relators.  You

3    know, to a certain extent, Defendants can't win for losing here

4    because, frankly, had they not produced these documents and it

5    was discovered that they didn't, you'd be screaming about that,

6    so they produced them because they found them based on your

7    complaint, and now you complain, so what is the appropriate,

8    you know, remedy here?

9         I'm a little troubled by your argument for a default

10   that results in your expert's findings being correct, you know,

11   I'm kind of fundamentally of the view that a trial anyway is

12   the search for the truth, and if we're suppressing evidence

13   that makes one portion of the testimony be less than entirely

14   accurate, that's not the way I'd prefer to go if I were the

15   trial Judge on this.

16        So I'm not, but what is the appropriate remedy here?

17   Is it appropriate to say, hey, you can use the same records our

18   expert did, even though those records may not be completely

19   representative of what the circumstances are?

20        MS. STRIKIS:  Your Honor, this is Silvija Strikis for

21   Relator.  We do believe that the Court, within its discretion,

22   could preclude Defendants' use of the documents and could, in

23   fact, allow Relator to use them.  That is not an uncommon

24   sanction for, you know, late produced discovery.

25        But, you know, frankly, one of our primary goals here

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

 1   is to stop the late discovery.  We are not even sure what
 2   additionally will be produced, where it's coming from.
 3          I think in addition to opening up, you know, another
 4   round of Relator's expert report to respond to this additional
 5   information, which will be costly, our original report cost us
 6   in the neighborhood of $500,000, but if you -- we may also need
 7   some discovery into where these documents are coming from
 8   because they weren't produced before, and the Defendants,
 9   according to the testimony of their witnesses, knew about
10   electronic databases for MDS assessments, they never told us
11   they weren't producing them.
12          There are allegations in the complaint and we've
13   received documents in discovery that support that these
14   documents could be altered after the fact or printed out long
15   after the fact and signed with incorrect dates and so we also
16   would like some period of time to discover exactly what the
17   nature of these documents is, where they came from and what --
18   how they came to be produced at the time that they were.
19          THE COURT:  Well, is that the remedy you're
20   suggesting here, that we sort of reopen the expert discovery
21   and reporting period, or do you think that the remedy -- the
22   proper remedy is to just say, no, there was a deadline, you
23   didn't meet the deadline, you're stuck with the documents
24   produced by that point?
25          MS. STRIKIS:  I believe that the proper remedy that

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1    the Relator is requesting is that it's too late, people should

2    be stuck with the documents that were in the record as of the

3    time discovery closed.

4            However, if the documents are allowed in, I was just

5    making the point that the relief that the Relator seeks goes

6    beyond simply her expert reports, I'm sure, when it comes to

7    discovery and exactly what these documents are, where they came

8    from, why they weren't produced for, whether there is any

9    custodial chain that supports the legitimacy of the documents,

10   et cetera.

11           THE COURT:  When is the Defendants' or the

12   Defendants' reports, I'm putting that in plural, I don't know

13   how many are coming, but when are they due?

14           MR. LYNAM:  Your Honor, this is Terence Lynam for the

15   defense.  They're due this Thursday, Your Honor, and what we

16   were just going -- I can tell the Court very quickly what the

17   report will say.

18           The Relator's expert said that there were missing MDS

19   assessments and therefore that's a false claim which we don't

20   think is even legally a valid theory.  But our expert report

21   will say that these 91 MDS assessments or these 91 patients, in

22   fact, were produced back in January and, therefore, the experts

23   claim that there's a false claim because they weren't done is

24   incorrect because the documents do exist.

25           And so, Your Honor, that's really the only claim our

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1   expert is going to be making about them is that these documents

2   exist, but the Relator would -- is asking is that they be

3   excluded so that they can allege at trial that MDS assessments

4   don't exist when they do exist.

5           And, Your Honor, again, you know, to exclude them on

6   the theory that they didn't even put in their complaint I think

7   would be the wrong result here.  They did not allege in their

8   complaint that the MDS assessments were not done and they're

9   missing.  They alleged that they were done and they were

10  falsified.

11          And then we got their expert reports with this new

12  theory that they weren't even done because they weren't in the

13  file.  And so, that's why we went to see if we could locate the

14  data.

15          And again, Your Honor, this is well within the expert

16  discovery period.  That doesn't end till March 21st.  So we

17  produced them well within that period and well in advance of

18  the expert's report.

19          THE COURT:  Let me ask Relator's counsel, do you

20  agree with defense arguments that were made repeatedly here and

21  also in the pleadings that the mere fact that maybe an MDS is

22  missing or it is incomplete in and of itself does not give rise

23  to a false claim?  Do you agree with that principle?

24          MS. STRIKIS:  No, Your Honor, I do not agree with

25  that principle because the MDS assessment is a critical

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1    document that supports how the RUG level that is ultimately
2    billed on the UB-04 is determined.  And it's the documentation
3    supporting the claim that goes in.
4           And in particular in this case, there were
5    allegations that Defendants were behind on MDS assessments in
6    the complaint and there were also allegations about people
7    going in after the fact and changing MDS assessments and all
8    issues around the security and certification that is required
9    of MDS assessments.
10          So when patient files present without an MDS
11   assessment, and later asked repeatedly have we received all the
12   patient documents, have we received all the medical records,
13   have we received everything, and Defendants say, yes, yes, yes,
14   I mean, the Relator doesn't know that, oh, they're just missing
15   because of accident, they could be missing because they were
16   foliated or whatever, but our expert just dealt with the
17   documents that were produced.  And at the point of fact,
18   without the MDS assessments, there's support lacking from the
19   UB-04, the claim form that goes in.
20          And Mr. Lynam's prior statement that, you know, the
21   fact that MDS assessments were validated by what was found in
22   the file, I mean, that is not actually accurate.  We chose
23   specific days to go in and assess the patients because we were
24   doing this on a sampling basis, and of the 400 Medicare
25   patients, 91 of them were missing an MDS assessment for the day

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1   in question.  50 other files were missing that consisted of

2   both Medicare and Medicaid patients, and that was a fairly

3   significant percentage of the files.

4        So -- but I do not agree that in this case, the fact

5   that an MDS assessment was missing does not support our claim.

6        THE COURT:  That wasn't my question.  That wasn't my

7   question.  My question is, is that fact alone enough to

8   establish your false claim theory?  I mean, you say it

9   supports -- the fact that one is not in there supports your

10  false claim, but is the mere fact that it is -- one is missing,

11  is that in and of itself enough to give rise to a false claim?

12       MS. STRIKIS:  Well, we believe that a missing MDS

13  assessment is enough to give rise to a false claim, Your Honor,

14  because in submitting the UB-04 that claims one, basically, it

15  is a certification that the MDS assessment was performed and

16  supports the RUG level that is actually billed on the UB-04.

17       THE COURT:  All right.

18       One more question for you.  When -- what's the Court

19  to do with the fact that, through no fault of Relator, the

20  assessment done here by your expert may not be entirely

21  accurate?  I mean, should the Court be concerned about that as

22  to what's the conclusions that are reached that may not be

23  entirely accurate based on these additional records?

24       Is there a problem to go forward, assuming they were

25  acting as if the information your expert relied on was entirely

1    accurate, and let you present that to the jury when, in fact,

2    the Court knows that maybe it wasn't entirely accurate?

3              MS. STRIKIS:  Your Honor, we don't know the extent to

4    which Relator's expert conclusions are inaccurate, if at all,

5    because we haven't -- we haven't had discovery of these

6    documents, many of which are unsigned.  They're not actual

7    certifications that would support the UB-04.

8              So I believe that in a number of the cases, we

9    will -- the expert's conclusion might be the same, that there

10   is no support for the certification provided with the UB-04

11   form that comes in as a claim to bill to the Government.

12             THE COURT:  Is the Court -- is the Court not -- or

13   should the Court not allow for the production of the

14   Defendants' report in these circumstances and address your

15   complaints after that report has been presented as opposed to

16   preemptively doing what you're requesting in part of your

17   motion which is to say they can't use any of the 18,000 files

18   that they produced, any of the late discovery that they

19   produced?

20             Would it be wiser in this circumstance for the Court

21   to not rule on your motion at this point, wait and see what the

22   expert report says, and then address this after further

23   arguments, after you've -- both sides have dissected what the

24   reports say, so that the -- be in a better position to assess

25   what the circumstances actually are and better position to wage

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1  whether or not there's been any prejudice in this untimely

2  production?

3           Let me say this to the Relator.  I think in the light

4  of the history of this case, I could make a finding that this

5  is untimely and not to be given any consideration to the

6  arguments here, but am I better served by waiting to let this

7  thing run its course or should the Court preemptively say, no,

8  you can't use that information?

9           MS. STRIKIS:  Well, Your Honor, this is Silvija

10 Strikis for Relators.  Well, I believe if Relator -- if

11 Defendants were allowed to present their report, then Relator

12 would need a chance to respond to that, and that basically

13 opens up the entire process of changing the trial schedule,

14 building in an additional expert analysis by the Relator and I

15 --

16          THE COURT:  But that would occur anywhere.  In the

17 usual course, you would supply your expert with the rebuttal

18 expert report.  That's nothing unique there.  And I take it

19 from what I'm hearing, maybe I'm hearing this wrong or I'm

20 assuming what I shouldn't, but the Relator has not seen the

21 Defendants' expert report, right.

22          MS. STRIKIS:  We have not.  And under the current

23 schedule, were we to respond to it, you know, expert discovery

24 closes on March 21st, and with the dumping of considerable new

25 documents, I mean, the schedule needs to change and Defendants

CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1  do not dispute that Defendants' expert would need to respond to

2  the materials that they have produced and whatever material

3  they're continuing to produce, apparently, which further

4  complicates the issue.

5          THE COURT:  Well, that issue is not before me.  I

6  guess what I'm trying to assess here is whether or not it makes

7  more sense for the Court to sit on this motion, let the report

8  be produced, let it be digested by the Relator, and then

9  revisit this as to whether or not it's appropriate for --

10  because, you know, who's to say the report won't come out and

11  agree with your expert in some fashion?  I don't know,

12  doubtful, but -- I just threw that out.

13          Defendants have a position on that?  I assume they

14  think that's a great idea.

15          MR. LYNAM:  Your Honor, that's a great idea.  This is

16  Terence Lynam.

17          Your Honor, with regard to the MDS, all our expert

18  will say is that these MDS were produced on January 22nd,

19  therefore, rebutting the Relator's claim that the MDS didn't

20  exist.

21          And with regard to the signatures that Ms. Strikis

22  has raised, we tried to explain that in our papers that these

23  were not the paper MDS that existed in the file, this was data

24  from the database that was printed out in the MDS form, so it

25  doesn't have signatures on it because it wasn't the signed copy

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

```
1    in the file, but nevertheless, it reflects the MDS assessment
2    that was done which appears to be the issue that they're saying
3    is the false claim.
4             So, you know, just trying to clarify this whole thing
5    about the signature, and in fact, the documents that were
6    produced are not even for the time period that the Relator
7    worked for the Defendants.  She only worked at two facilities
8    for a total of 39 days.
9             And these MDS assessments are not for the period she
10   worked there, so there's no issue about her signatures on these
11   documents because they're for a different time period.
12            But, Your Honor, I think the solution of -- you know,
13   we'll submit our expert reports on Thursday, they can see how
14   we use the -- what we say about the MDS, they can see what, if
15   anything, we say about these additional documents that we found
16   that we felt we were obligated to produce from the patient
17   files themselves, and then we have no objection to them
18   entering a rebuttal to that if they think they need to and we
19   suggested that in our papers.
20            MR. DELANEY:  Your Honor, this is Rory Delaney
21   speaking.  May I ask permission to speak?
22            THE COURT:  Sure.
23            MR. DELANEY:  Your Honor, I must pose the rhetorical
24   question, but if their expert is simply to point out that MDS
25   forms were subsequently provided and therefore (unintelligible)
```

CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER

1    what was the subject matter of their expert report prior to the

2    production of our report in which we point out the absence of

3    these MDS forms, which raises the question of the good faith

4    certification that discovery was complete, because if the

5    expert is simply to say those forms exist, well then, they have

6    not been analyzing the 800 patient files that they produced to

7    us.

8                And therefore, certification that they're complete is

9    not in good faith because nobody has bothered to doublecheck

10   until it became in their financial interest to do so.  So I

11   challenge the good faith, Your Honor.

12               I would also like to say that we have received two

13   productions since our expert reports with indications that

14   further productions will be made.  It's our position that it is

15   simply too late, but the Court at the very least should draw a

16   line under the late production and say no more.

17               And if the Court does that, well then, the Court is

18   faced with the same conundrum which is, there may be

19   information out there which is relevant which was not produced

20   and how fair is that that we are faced with that same issue

21   now, Your Honor?  So there comes a time when it is simply too

22   late to use this material.

23               And finally, Your Honor, I would just like to say

24   that if the Court is minded to fashion some alternative to a

25   default judgment against Defendants, any costs incurred in

```
 1    re-reviewing all these files and reproducing the expert reports
 2    should be borne by the Defendants because, as Your Honor says,
 3    this is not a fault that can be laid at the door of the
 4    Plaintiff Relator.
 5            THE COURT:  What does the Defendant say to that last
 6    missive?
 7            MR. LYNAM:  Yes, Your Honor, thank you.
 8            I think it's important to clarify something here,
 9    Your Honor.  The expert reports that the Relator provided
10    raised numerous issues with regard to these patient files that
11    we produced, the 1.1 million pages that we produced last year.
12            The existence or non existence of MDS assessments is
13    only one of many issues that their expert has raised.  So our
14    experts have indeed been reviewing all these patient files and
15    our expert report will include rebuttal expert opinions on all
16    the other issues that they've identified from those files.
17            And the MDS issue that I was referring to was simply
18    when their Relator said that you have 91 false claims because
19    there's no MDS in the file, their response to my rebuttal
20    expert will simply be, well, the MDS were produced -- located
21    and produced on January 22nd.  So that's the response to that,
22    they do, in fact exist.
23            But there's a lot of other issues that the Relator
24    raised that our expert reports would be addressing.  So we have
25    been very diligent in reviewing these files, but, you know, it
```

1    was quite a bit of documentation to produce and we produced it

2    back last year without any -- taking a reasonable position that

3    it would have been extremely burdensome to go through a million

4    pages of records to try to determine whether or not something

5    should have been in there that wasn't in there.

6            It would have been an enormous expenditure of

7    resources and time and the company took the position, let's

8    produce these documents.  And in a typical audit situation with

9    a Government agency, when you produce the patient files and the

10   auditor comes back and says, well, I don't see document such

11   and such in the file, then the company goes and tries to look

12   for it.

13           That's the typical scenario with a State auditor or

14   CNS or any other auditor, as Mr. Thomas' declaration

15   establishes.

16           So the procedure that the Defendants followed is

17   consistent with what they do routinely dealing with Government

18   agencies.  They produce the file at the facility.

19           But, Your Honor, we will be rebutting other expert

20   opinions, we didn't want the Court to think that the MDS was

21   the only one.

22           THE COURT:  Okay.  All right.

23           We'll issue something here as soon as we can.  Thank

24   you for being available.

25           MR. LYNAM:  Thank you, Your Honor.


CLAUDIA SPANGLER-FRY   OFFICIAL U. S. COURT REPORTER

1          MS. STRIKIS:   Thank you.

2          (Thereupon, the proceedings concluded.)

3                    *******

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E
 2
 3    STATE OF FLORIDA          )
 4    COUNTY OF HILLSBOROUGH    )
 5
 6         I, CLAUDIA SPANGLER-FRY, Official Court Reporter for
 7    the United States District Court, Middle District, Tampa
 8    Division,
 9         DO HEREBY CERTIFY, that I was authorized to and
10    did, through use of Computer Aided Transcription, report
11    in shorthand the digital proceedings and evidence in the
12    above-styled cause, as stated in the caption hereto, and
13    that the foregoing pages numbered 1 to 32, inclusive,
14    constitute a true and correct transcription of my
15    shorthand report of said digital proceedings and evidence.
16         IN WITNESS WHEREOF I have hereunto set my hand
17    in the City of Tampa, County of Hillsborough, State of
18    Florida, this 8th day of March, 2016.
19
20    _____
21    CLAUDIA SPANGLER-FRY, Official Court Reporter
22
23
24
25
```

**CLAUDIA SPANGLER-FRY  OFFICIAL U. S. COURT REPORTER**

$
$500,000 [1]   1976

0
02111 [1]   1/19
0384 [1]   1/20
04 [9]   5/1 5/3 5/22 22/2 22/19
 23/14 23/16 24/7 24/10

1
1.1 [3]   7/17 14/12 29/11
100 [3]   2/6 6/23 6/23
11:49 [1]   1/8
12 [1]   11/24
1333 [1]   2/2
1564 [1]   2/3
1615 [1]   1/15
1655 [1]   1/24
1663 [1]   2/7
18,000 [1]   24/17
1950 [1]   1/23

2
200 [1]   6/17
20036 [1]   1/15
20036-1564 [1]   2/3
2008 [3]   8/12 15/7 15/8
201 [1]   1/23
2012 [1]   15/8
2015 [2]   11/17 11/18
2016 [3]   1/7 3/2 32/18
202 [2]   1/16 2/3
21st [2]   21/16 25/24
22 [2]   1/7 3/2
225-1655 [1]   1/24
22nd [4]   15/25 16/4 26/18
 29/21
23TBM [2]   1/3 3/8

3
300 [2]   6/22 6/22
301-5575 [1]   2/11
32 [1]   32/13
326-7939 [1]   1/16
33602 [1]   2/10
33602-5865 [1]   1/23
33606 [1]   2/7
39 [1]   27/8

4
400 [3]   1/15 2/2 22/24
4045 [1]   2/3
49 [1]   9/18
498-0384 [1]   1/20

5
50 [2]   9/18 23/1
517-1663 [1]   2/7
5575 [1]   2/11
5865 [1]   1/23

6
600 [1]   2/6

7
745 [1]   1/19
750 [1]   12/25
7939 [1]   1/16
7th [1]   2/10

8
800 [1]   28/6
801 [1]   2/10
813 [3]   1/24 2/7 2/11
857 [1]   1/22
88-7-4045 [1]   2/2
8:11-CV-1303-T-23TBM [2]   1/3
 3/8
8th [1]   32/18

9
91 [6]   5/18 15/2 20/21 20/21
 22/25 29/18

A
a.m [1]   1/8
able [3]   4/8 15/6 16/11
about [15]   10/2 10/2 12/8
 12/13 15/14 17/20 18/5 19/9
 21/1 22/6 23/21 27/5 27/10
 27/14 27/15
above [1]   32/12
above-styled [1]   32/12
absence [1]   28/2
accident [1]   22/15
according [1]   19/9
accurate [6]   18/14 22/22 23/21
 23/23 24/1 24/2
acted [1]   14/13
acting [1]   23/25
actual [1]   24/6
actually [7]   3/24 4/2 8/14
 10/22 22/22 23/16 24/25
add [1]   14/12
addition [1]   19/3
additional [1]   6/17 11/9
 11/19 11/20 11/24 13/15 16/12
 16/18 16/19 19/4 23/23 25/14
 27/15
additionally [1]   19/2
address [2]   24/14 24/22
addressing [1]   29/24
advance [3]   11/3 15/23 21/17
affect [1]   10/23
affirm [1]   12/19
after [8]   3/20 13/15 19/14
 19/15 22/7 24/15 24/22 24/23
again [5]   10/15 11/3 11/17
 21/5 21/15
against [1]   28/25
agencies [1]   30/18
agency [1]   30/9
ago [3]   16/6 16/21 16/21
agree [8]   8/21 9/4 11/12 21/20
 21/23 21/24 23/4 26/11
agreed [4]   4/14 6/6 10/12
ahead [1]   5/15
Aided [1]   32/10
Akin [1]   2/2
akingump.com [2]   2/4 2/4
al [2]   1/7 3/7
alerted [1]   3/16
all [28]   3/4 3/14 4/3 7/22
 8/13 8/20 10/10 12/2 12/13
 12/19 12/24 13/10 13/19 14/8
 14/9 14/12 15/10 16/7 22/7
 22/11 22/12 23/17 24/4 26/17
 29/1 29/14 29/15 30/22
allegations [1]   9/20 12/13
 19/12 22/5 22/6
allege [5]   8/1 8/2 8/4 21/3
 21/7
alleged [3]   4/24 9/25 21/9
allow [4]   13/15 17/25 18/23
 24/13
allowed [4]   11/5 16/4 20/4
25/11
alone [1]   23/7
already [1]   11/10
also [7]   10/16 12/7 19/6 19/15
 21/21 22/6 28/12
altered [1]   19/14
alternative [1]   28/24
always [2]   11/11 14/17
am [3]   6/13 6/18 25/6
AMERICA [3]   1/1 1/3 3/6
amount [3]   5/3 6/1 6/2
analysis [1]   25/14
analyze [1]   13/24
analyzing [1]   28/6
ANGELA [2]   1/4 3/6
another [3]   10/4 12/5 19/3
any [17]   10/2 11/13 12/16
 12/20 13/20 14/15 14/15 16/10
 17/6 20/8 24/17 24/18 25/1
 25/5 28/25 30/2 30/14
anybody [2]   3/13 9/14
anything [1]   27/15
anytime [1]   10/8
anyway [1]   18/11
anywhere [1]   25/16
aol.com [1]   2/11
apparently [6]   6/5 11/10 11/25
 12/5 12/20 26/3
Appearances [1]   1/12
appears [5]   8/21 8/22 13/17
 17/2 27/2
appropriate [5]   4/7 18/7 18/16
 18/17 26/9
are [25]   3/10 3/12 9/8 9/21
 11/24 12/7 12/14 14/8 16/7
 17/3 18/19 19/1 19/7 19/12
 20/4 20/7 20/13 20/13 23/22
 24/4 24/6 24/25 27/6 27/9
 28/20
argue [1]   10/24
argument [6]   4/1 8/17 11/4
 16/16 17/16 18/9
arguments [3]   21/20 24/23 25/6
around [2]   7/22 22/8
arrangement [1]   7/13
as [29]   3/17 3/23 3/23 4/6
 4/10 5/13 9/24 9/24 9/25 11/5
 12/15 13/7 13/7 13/11 13/12
 14/9 14/9 14/16 20/2 23/21
 23/25 24/11 24/15 26/9 29/2
 30/14 30/23 30/23 32/12
Ashley [1]   2/6
aside [1]   11/2
ask [6]   3/22 5/15 11/4 16/14
 21/19 27/21
asked [2]   12/18 22/11
asking [2]   3/24 21/2
assess [4]   4/14 22/23 24/24
 26/6
assessed [1]   4/18
assessment [16]   4/20 4/21 5/5
 5/8 5/13 5/14 14/10 14/11
 21/25 22/11 22/25 23/5 23/13
 23/15 23/20 27/1
assessments [17]   8/3 11/11
 12/9 12/14 12/17 19/10 20/19
 20/21 21/3 21/8 22/5 22/7 22/9
 22/18 22/21 27/9 29/12
assistance [1]   9/25
assume [1]   26/13
assumed [2]   5/9 6/7
assuming [2]   23/24 25/20
assumption [2]   5/20 17/3

**A**

Atlantic [1] 3/19
attachments [1] 10/11
audit [3] 4/19 5/8 30/8
auditor [4] 14/15 30/10 30/13
 30/14
authorized [1] 32/9
availability [1] 7/2
available [7] 3/15 6/24 7/3
 8/10 9/17 11/11 30/24
Ave [3] 1/19 2/2 2/10

**B**

back [11] 7/6 7/16 8/12 8/17
 8/18 15/7 17/1 17/11 20/22
 30/2 30/10
Barry [1] 1/22
based [4] 9/22 17/9 18/6 23/23
basically [3] 16/15 23/14
 25/12
basis [4] 4/9 5/2 14/3 22/24
be [51]
became [1] 28/10
because [30] 5/10 6/21 7/11
 8/18 9/6 9/7 12/1 12/21 14/5
 14/17 15/13 18/4 18/6 19/8
 20/23 20/24 21/12 21/25 22/15
 22/15 22/23 23/14 24/5 26/10
 26/25 27/11 28/4 28/9 29/2
 29/18
been [12] 11/9 13/13 15/11
 15/18 24/15 25/1 28/6 29/14
 29/25 30/3 30/5 30/6
before [6] 1/10 6/11 16/2 16/3
 19/8 26/5
behind [1] 22/5
being [8] 3/14 6/1 6/2 10/4
 11/15 16/11 18/10 30/24
belief [1] 15/11
believe [9] 4/7 5/18 10/14
 14/3 18/21 19/25 23/12 24/8
 25/10
believed [1] 13/25
benefit [1] 3/21
best [1] 6/11
better [3] 24/24 24/25 25/6
between [2] 6/2 6/3
beyond [2] 11/10 20/6
bill [2] 8/25 24/11
billed [3] 9/21 22/2 23/16
billing [1] 9/22
bills [1] 9/25
bit [2] 4/5 30/1
bizrocket.com [1] 15/20
blame [1] 17/6
blowup [1] 17/20
Blvd [1] 1/23
borne [1] 29/2
Boston [1] 1/19
both [2] 23/2 24/23
bothered [1] 28/9
brief [2] 6/21 8/7
building [1] 25/14
burden [1] 16/24
burdensome [1] 30/3
business [1] 14/8
busy [1] 12/25

**C**

call [1] 3/4
came [6] 4/19 5/8 11/23 19/17
 19/18 20/7
can [14] 3/23 4/5 13/7 15/21
 16/6 16/11 17/11 18/17 20/16
 21/3 27/12 27/14 29/6 30/21
can't [8] 13/4 19/7 19/22
 14/24 15/3 18/3 24/17 25/8
caption [1] 32/12
case [20] 1/3 3/4 3/7 4/20
 4/21 4/24 5/7 6/24 9/1 9/6
 10/8 11/2 12/7 15/16 15/20
 17/8 17/15 22/4 23/4 25/4
cases [2] 8/6 24/8
cause [1] 32/12
certain [3] 3/17 17/9 18/3
certification [5] 22/8 23/15
 24/10 28/4 28/8
certifications [1] 24/7
certified [1] 5/1
certify [3] 12/12 12/18 32/9
cetera [1] 20/10
chain [1] 20/9
challenge [1] 28/11
chance [1] 25/12
change [1] 25/25
changing [3] 9/9 22/7 25/13
charged [1] 6/3
cheat [1] 3/9
chose [1] 22/22
chosen [1] 4/16
circumstance [1] 24/20
circumstances [6] 13/13 13/21
 17/22 18/19 24/14 24/25
citation [1] 10/14
cited [1] 8/6
City [1] 32/17
claim [30] 4/15 4/25 5/1 5/11
 5/24 6/1 6/2 6/9 7/9 7/25 8/6
 12/16 12/21 14/25 16/1 20/19
 20/23 20/23 20/25 21/23 22/3
 22/19 23/5 23/8 23/10 23/11
 23/13 24/11 26/19 27/3
claimed [3] 5/3 5/22 6/2
claims [3] 9/1 23/14 29/18
clarified [1] 8/19
clarify [2] 27/4 29/8
CLAUDIA [3] 2/9 32/6 32/21
clear [1] 14/16
clearly [1] 14/16
closed [1] 20/3
closes [1] 25/24
CMC [2] 1/7 3/7
CNS [1] 30/14
coded [1] 9/21
Cohen [1] 1/22
cold [1] 4/5
come [2] 8/17 26/10
comes [4] 20/6 24/11 28/21
 30/10
coming [7] 11/20 11/24 12/5
 16/7 19/2 19/7 20/13
company [4] 7/18 15/6 30/7
 30/11
complain [1] 18/7
complaint [4] 4/23 8/2 8/4
 8/22 9/20 12/14 18/7 19/12
 21/6 21/8 22/6
complaints [1] 24/15
complete [6] 14/3 14/4 14/18
 17/3 28/4 28/8
completely [1] 18/18
complicates [1] 26/4
Computer [1] 32/10
concerned [1] 23/21
concluded [2] 5/16 31/2
conclusion [1] 24/9
conclusions [2] 23/22 24/4
confirm [1] 14/23
confusion [1] 16/2
connection [1] 3/18
considerable [1] 25/24
consideration [1] 25/5
consisted [1] 23/1
consistent [1] 30/17
constitute [2] 8/6 32/14
contemplated [1] 18/1
continuing [1] 26/3
conundrum [1] 28/18
converts [1] 5/4
cookiefry [1] 2/11
copied [1] 8/14
copy [2] 14/1 26/25
core [1] 4/21
correct [3] 17/5 18/10 32/14
corresponding [1] 5/22
cost [1] 19/5
costly [2] 17/13 19/5
costs [1] 28/25
could [9] 5/7 10/1 12/16 18/22
 18/22 19/14 21/13 22/15 25/4
couldn't [1] 7/3
counsel [2] 4/6 21/19
count [1] 5/17
COUNTY [2] 32/4 32/17
course [3] 14/8 25/7 25/17
Court [28] 2/9 2/9 3/4 3/24
 13/20 13/23 13/24 13/24 17/14
 18/21 20/16 23/18 23/21 24/2
 24/12 24/12 24/13 24/20 25/7
 26/7 28/15 28/17 28/17 28/24
 30/20 32/6 32/7 32/21
Court's [2] 13/6 13/12
criteria [1] 10/7
critical [1] 21/25
cured [1] 16/11
current [1] 25/22
custodial [1] 20/9
CV [2] 1/3 3/8

**D**

damages [3] 6/1 10/18 14/25
DARKEN [1] 1/22 3/10
data [6] 12/12 15/5 15/7 15/8
 21/14 26/23
database [1] 11/12 26/24
databases [1] 19/10
date [3] 4/16 14/24 15/3
dates [2] 16/7 19/15
Daubert [1] 10/17
day [2] 22/25 32/18
days [3] 15/7 22/23 27/8
DC [2] 1/15 2/3
deadline [2] 19/22 19/23
deadlines [1] 13/12
dealing [1] 30/17
dealt [1] 22/16
December [3] 7/23 14/20 16/2
declaration [2] 14/16 30/14
default [4] 4/10 6/8 18/9
 28/25
Defendant [4] 3/12 13/18 15/10
 29/5
Defendants [40]
Defendants' [10] 6/14 10/15
 11/3 16/16 18/22 20/11 20/12
 24/14 25/21 26/1
defense [2] 20/15 21/20
DELANEY [5] 1/18 1/18 3/10
 16/13 27/20

**D**

delaneykester.com [1] 1/20
describe [1] 3/17
detail [1] 11/17
determine [1] 30/4
determined [1] 22/2
did [20] 4/12 4/19 5/6 5/7
 5/10 6/20 7/6 8/16 9/23 9/23
 11/1 12/20 12/21 12/25 13/1
 13/1 14/3 18/18 21/7 32/10
didn't [13] 7/5 8/1 8/2 8/4
 8/24 10/6 10/7 17/19 18/5
 19/23 21/6 26/19 30/20
difference [2] 6/1 6/2
different [1] 27/11
difficulty [1] 17/6
digested [1] 26/8
digital [2] 32/11 32/15
diligent [1] 29/25
directed [1] 9/13
disabled [1] 9/24
discover [1] 19/16
discovered [3] 17/18 17/19
 18/5
discovery [16] 13/6 13/15 16/8
 16/22 18/24 19/1 19/7 19/13
 19/20 20/3 20/7 21/16 24/5
 24/18 25/23 28/4
discretion [1] 18/21
dispute [1] 26/1
disputed [2] 13/4 13/7
dissected [1] 24/23
DISTRICT [4] 1/1 15/21 32/7
 32/7
DIVISION [2] 1/2 32/8
do [25] 3/24 5/7 5/7 7/5 7/18
 9/4 11/12 12/15 12/22 16/21
 17/17 18/21 19/21 20/24 21/4
 21/19 21/23 21/24 23/4 23/19
 26/1 28/10 29/22 30/17 32/9
doctors' [1] 14/9
document [6] 4/21 4/23 10/9
 12/13 22/1 30/10
documentation [9] 4/15 5/10
 6/24 7/9 7/24 8/5 14/21 22/2
 30/1
documents [44]
does [7] 8/20 10/21 10/22
 21/22 23/5 28/17 29/5
doesn't [4] 8/5 21/16 22/14
 26/25
doing [5] 4/18 10/24 15/17
 22/24 24/16
dollars [1] 5/4
don't [10] 3/22 12/11 13/4
 16/20 20/12 20/19 21/4 24/3
 26/11 30/10
done [10] 7/10 9/5 9/5 14/22
 20/23 21/8 21/9 21/12 23/20
 27/2
door [1] 29/3
doublecheck [1] 28/9
doubtful [1] 26/12
Dr [1] 2/6
draw [1] 28/15
drawn [1] 10/5
due [4] 3/19 7/7 20/13 20/15
dumping [1] 25/24
DUNSFORD [2] 2/5 3/11

**E**

each [1] 10/5

earlier [3] 7/11 7/20 9/10
easily [1] 27/6
easy [1] 27/10
effect [3] 8/6 9/2 17/23
effort [1] 12/20
either [1] 13/5
electronic [2] 11/12 19/10
else [1] 3/13
end [2] 4/1 21/16
ended [1] 10/4
enormous [1] 30/6
enough [4] 12/21 23/7 23/11
 23/13
entering [1] 27/18
entire [2] 19/8 25/13
entirely [7] 17/13 17/15 18/13
 23/20 23/23 23/25 24/2
Esq [1] 1/18
ESQUIRE [4] 1/18 1/22 2/1 2/1
essentially [1] 9/8
establish [1] 23/8
established [1] 10/19
establishes [1] 30/15
et [3] 1/7 3/7 20/10
Evans [1] 1/14
even [12] 8/4 12/23 12/11 15/1
 15/23 16/8 18/18 19/1 20/20
 21/6 21/12 27/6
every [1] 7/1
everything [4] 13/14 16/23
 17/4 22/13
evidence [5] 11/6 17/10 18/12
 32/11 32/15
ex [2] 1/3 3/6
exactly [3] 17/5 19/16 20/7
exclude [1] 21/5
excluded [1] 21/3
exist [7] 20/24 21/2 21/4 21/4
 26/20 28/5 29/22
existed [1] 26/23
existence [2] 29/12 29/12
expenditure [1] 30/6
expense [1] 17/8
expensive [1] 7/18
expert [64]
expert's [7] 4/10 10/17 10/23
 11/6 18/10 21/18 24/9
experts [9] 4/18 10/18 12/25
 15/21 16/17 16/18 17/8 20/22
 29/14
expired [1] 16/8
explain [4] 4/12 6/9 8/20
 26/22
expressed [1] 5/3
extend [1] 11/10
extent [3] 10/16 18/3 24/3
extra [1] 10/4
extremely [2] 17/13 30/3

**F**

F13 [1] 1/19
faced [2] 28/18 28/20
facilities [6] 11/21 11/23
 11/25 12/3 14/2 27/7
facility [2] 14/17 30/18
fact [20] 11/5 11/15 14/4 16/8
 18/23 19/14 19/15 20/22 21/21
 22/7 22/17 22/21 23/4 23/7
 23/9 23/10 23/19 24/1 27/5
 29/22
fair [3] 13/12 13/14 28/20
fairly [1] 23/2
fairness [1] 13/12

faith [8] 13/25 14/2 14/7
 14/13 25/1 28/3 28/3 28/11
false [13] 4/3 4/25 8/6 9/1
 20/19 20/23 21/23 23/8 23/10
 23/11 23/13 27/3 29/18
falsified [1] 21/10
far [1] 13/7
fashion [2] 26/11 28/24
fault [2] 23/19 29/3
February [2] 1/7 3/2
Feld [1] 2/2
felt [1] 27/16
Figel [1] 1/14
file [20] 4/19 5/11 7/4 7/5
 8/15 9/17 9/19 9/22 10/6 10/25
 14/12 14/17 14/18 21/13 22/22
 26/23 27/1 29/19 30/11 30/18
files [35]
finally [1] 28/23
financial [1] 28/10
find [5] 7/3 14/21 14/24 15/3
 15/6
finding [1] 25/4
findings [3] 4/10 4/19 18/10
Firm [1] 2/6
first [4] 7/14 8/20 11/13
 11/21
fit [1] 10/7
five [1] 4/22
FL [3] 1/23 2/7 2/10
FLORIDA [7] 1/1 1/3 1/6 2/10
 15/21 32/3 32/18
focusing [1] 14/25
foliated [1] 22/16
follow [1] 16/14
follow-up [1] 16/14
followed [2] 8/23 30/16
foregoing [1] 32/13
form [12] 5/1 5/2 5/3 5/5 5/6
 5/8 5/22 8/13 11/5 22/19 24/11
 26/24
forms [3] 27/25 28/3 28/5
forth [1] 4/25
forward [1] 23/24
found [5] 8/23 16/19 18/6
 22/21 27/15
four [2] 15/24 16/6
frankly [3] 17/17 18/4 18/25
fraud [1] 4/24
fraudulent [2] 5/23 5/25
Friday [1] 3/16
FRY [3] 2/9 32/6 32/21
full [1] 7/5
fundamentally [1] 18/11
further [3] 24/22 26/3 28/14

**G**

gave [3] 14/19 15/23 16/6
get [5] 6/10 12/25 13/1 13/1
 17/9
getting [1] 17/4
give [4] 17/4 21/22 23/11
 23/13
given [1] 25/5
go [10] 8/12 8/18 9/12 17/9
 17/11 18/2 18/14 22/23 23/24
 30/3
goals [1] 18/25
goes [7] 5/2 9/6 15/7 20/5
 22/3 22/19 30/11
going [5] 15/14 17/23 20/16
 21/1 22/7

**G**

gone [1] 10/18 17/8
good [10] 3/4 3/14 13/25 14/2 14/7 14/13 15/11 28/3 28/9 28/11
got [5] 3/9 7/19 7/21 16/3 21/11
gotcha [2] 7/8 12/15
Government [4] 5/2 24/11 30/9 30/17
grant [1] 13/20
great [2] 26/14 26/15
grossly [1] 16/25
group [7] 6/8 6/16 6/22 6/23 8/25 9/4 9/13
guess [3] 3/19 9/4 26/6
Gump [1] 2/2

**H**

had [18] 7/1 7/4 7/5 7/11 7/22 10/6 11/13 12/24 13/9 13/18 14/2 15/6 15/9 15/10 15/24 16/2 18/4 28/15
Hampshire [1] 2/2
hand [1] 32/16
Hansen [1] 1/14
happened [2] 14/19 17/2
hard [1] 14/1
harm [3] 9/7 11/4 11/7
has [9] 13/18 15/5 15/11 17/2 24/15 25/20 26/22 28/9 29/13
hasn't [1] 16/8
Hauer [1] 2/2
have [39]
haven't [2] 24/5 24/5
having [3] 3/21 5/5 17/6
hear [2] 4/5 12/23
hearing [4] 3/21 10/17 25/19 25/19
her [3] 12/24 20/6 27/10
here [28] 3/9 3/11 3/12 3/19 3/24 4/4 4/7 8/22 9/9 13/3 14/19 16/15 16/24 16/25 17/2 17/22 18/3 18/8 18/16 18/25 19/20 21/7 21/20 23/20 25/6 26/6 29/8 30/23
HEREBY [1] 32/9
hereto [1] 32/12
hereunto [1] 32/16
hey [1] 18/17
highest [1] 5/11
HILLSBOROUGH [2] 32/4 32/17
history [3] 11/2 11/15 25/4
Honor [38]
Honor's [1] 15/14
HONORABLE [1] 1/10
hope [1] 4/5
how [11] 5/16 10/19 10/21 10/22 13/12 13/14 19/18 20/13 22/1 27/13 28/20
However [1] 20/4
Huber [1] 1/14
huge [1] 17/20
hundred [2] 6/17 10/4

**I**

I'd [1] 18/14
I'm [12] 16/15 17/6 17/15 18/9 18/11 18/16 20/6 20/12 25/19 25/19 25/19 26/6
I've [1] 3/9
i.e [1] 10/3
idea [2] 26/14 26/15

**I(identified)**

identified [2] 14/6 29/16
identify [2] 7/6 9/2
III [1] 1/7 3/7
III [1] 1/10
implemented [1] 10/19
important [2] 14/22 29/8
inaccurate [1] 24/4
include [1] 29/15
included [1] 10/13
includes [1] 11/25
including [1] 11/16
inclusive [1] 32/13
incomplete [3] 6/25 8/11 21/22
inconsistent [2] 13/17 17/14
incorrect [2] 19/15 20/24
increase [1] 9/21
incurred [1] 11/18
indeed [2] 9/20 29/14
indicate [1] 12/11
indicating [1] 3/10
indications [1] 28/13
information [10] 4/25 9/22 11/20 11/20 13/19 16/18 19/5 23/25 25/8 28/19
instance [2] 7/15 11/13
instances [1] 9/3
instead [4] 7/6 7/16 8/25 17/2
interest [1] 28/10
interrogatories [1] 11/17
is [108]
isn't [1] 16/9
issue [11] 5/14 10/16 16/1 16/11 26/4 26/5 27/2 27/10 28/20 29/17 30/23
issues [7] 5/13 12/7 22/8 29/10 29/13 29/16 29/23
it [52]
it's [17] 6/11 13/13 14/5 14/21 15/1 15/15 16/10 17/7 17/10 17/13 17/13 19/2 20/1 22/2 26/9 28/14 29/8
its [2] 18/21 25/7
itself [2] 21/22 23/11

**J**

January [5] 15/25 16/4 20/22 26/18 29/21
January 22nd [4] 15/25 16/4 26/18 29/21
JUDGE [2] 1/11 18/15
judgment [2] 8/4 28/25
jump [3] 4/1 5/15 13/3
June [1] 11/17
jury [1] 24/1
just [37] 4/12 7/11 7/16 8/14 11/10 15/9 16/10 16/13 17/10 19/22 20/4 20/16 22/14 22/16 26/12 27/4 28/23

**K**

kdarken [1] 1/24
keep [1] 16/7
Kellogg [1] 1/14
Kennedy [1] 1/23
kept [3] 8/14 8/15 14/8
KEVIN [2] 1/22 3/10
key [2] 4/23 5/5
khhte.com [1] 1/16
kind [4] 7/8 15/14 16/24 28/11
knew [2] 17/5 19/9
know [27] 4/23 5/1 7/16 7/20 10/16 13/11 14/22 17/7 17/15 17/17 18/3 18/8 18/10 18/24

18/25 19/3 20/12 21/5 22/14 22/20 24/2 25/21 26/9 26/11 27/4 27/12 29/29
knows [1] 24/2

**L**

lack [1] 8/25
lacking [1] 22/18
laid [1] 29/3
large [1] 14/5
last [4] 7/19 29/5 29/11 30/2
late [8] 12/9 18/24 19/1 20/1 24/18 28/15 28/16 28/22
lately [1] 11/9
later [3] 11/16 17/20 22/11
LaVee [1] 15/7
lawsuit [1] 14/16
LDL [1] 2/6
ldlfirm.com [1] 2/8
Leafing [1] 4/4
least [3] 13/8 13/8 28/15
leeway [1] 13/20
left [1] 6/4
Legal [1] 1/22
legally [1] 20/20
legitimacy [1] 20/9
less [1] 18/13
let [13] 3/22 5/15 8/18 11/3 13/3 16/14 18/2 21/19 24/1 25/3 25/6 26/7 26/8
let's [4] 3/4 13/8 15/4 30/7
level [9] 5/4 5/10 5/11 5/22 5/22 6/3 6/3 22/1 23/16
light [6] 11/4 13/13 16/5 16/12 16/25 25/3
like [5] 10/24 16/2 19/16 28/12 28/23
limited [1] 5/13
line [3] 4/6 5/14 28/16
litigation [2] 14/16 15/19
little [4] 3/9 9/9 17/6 18/9
LLC [2] 1/7 3/7
LLP [1] 2/2
locate [1] 21/13
located [1] 29/20
long [3] 3/22 7/12 11/15 19/14
look [3] 6/17 17/12 30/11
looked [1] 12/12
looking [3] 10/7 16/18 17/1
losing [1] 18/3
lot [1] 29/23
lowest [1] 5/10
LYNAM [7] 2/1 3/11 6/19 12/23 13/22 20/14 26/16
Lynam's [1] 22/20

**M**

MA [1] 1/19
made [5] 5/20 13/18 17/3 21/20 28/14
MAGISTRATE [1] 1/11
majority [2] 14/5 15/13
make [2] 8/19 25/4
makes [4] 9/20 14/16 18/13 26/6
making [2] 20/5 21/1
manner [2] 12/8 17/25
many [5] 5/16 12/11 20/13 24/6 29/13
March [4] 16/9 21/16 25/24 32/18
March 21st [2] 21/16 25/24
marked [1] 12/2

**M**

material [2] 26/2 28/22
materials [1] 26/2
matter [3] 13/11 13/12 28/1
matters [2] 13/5 17/2
may [9] 4/6 5/12 16/13 18/18
 19/6 23/20 23/22 27/21 28/18
maybe [5] 3/21 6/14 21/21 24/2
 25/19
MCCOUN [1] 1/10
MDS [54]
me [17] 3/22 4/1 4/5 5/15 6/4
 6/9 8/18 9/6 11/3 13/3 16/14
 16/20 17/22 18/2 21/19 25/3
 26/5
mean [9] 10/18 10/23 12/16
 16/23 22/14 22/22 23/8 23/21
 25/25
meanwhile [1] 12/23
Medicaid [4] 6/22 6/23 10/5
 23/2
medical [4] 4/13 7/17 12/19
 22/12
Medicare [6] 6/22 6/23 10/3
 10/5 22/24 23/2
meet [1] 19/23
mere [2] 21/21 23/10
MIDDLE [2] 1/1 32/7
might [1] 24/9
million [5] 7/17 13/2 14/12
 29/11 30/3
minded [1] 28/24
missing [29] 4/20 5/16 5/17
 5/19 6/8 6/16 6/25 7/9 7/24
 8/2 8/5 8/10 8/23 9/12 9/18
 11/16 14/6 14/20 16/17 20/18
 21/9 21/22 22/14 22/15 22/25
 23/1 23/5 23/10 23/12
missive [1] 29/6
mix [1] 11/25
mixed [1] 12/2
moment [1] 8/18
months [1] 7/23
more [4] 13/9 23/18 26/7 28/16
morning [1] 3/4
motion [6] 1/10 3/16 3/24
 24/17 24/21 26/7
moving [1] 8/3
Mr [3] 14/16 16/13 30/14
Mr. [3] 3/11 12/23 22/20
Mr. Lynam [2] 3/11 12/23
Mr. Lynam's [1] 22/20
MS [3] 1/13 2/5 2/9
Ms. [1] 26/21
Ms. Strikis [1] 26/21
MSS [1] 5/13
much [2] 9/24 12/24
must [1] 27/23
my [8] 4/4 6/5 23/6 23/6 23/7
 29/19 32/14 32/16

**N**

nature [1] 19/17
necessarily [1] 8/24
need [5] 9/23 19/6 25/12 26/1
 27/18
needed [1] 7/2
needing [1] 9/24
needs [1] 25/25
neighborhood [1] 19/6
never [1] 19/10
nevertheless [1] 27/1

new [3] 2/2 21/11 25/24
no [16] 1/2 7/5 7/24 9/9 11/8
 16/11 16/14 16/14 19/22 21/24
 23/19 24/10 25/7 27/10 27/17
 28/16 29/19
nobody [1] 28/9
non [1] 29/12
normal [1] 14/8
normally [2] 8/13 14/14
North [1] 2/10
not [68]
notes [2] 14/9 14/9
nothing [1] 25/18
notified [1] 16/16
now [10] 5/12 8/3 11/2 11/23
 12/23 15/24 16/4 17/1 18/7
 28/21
number [5] 3/7 10/22 13/7 14/6
 24/8
numbered [1] 32/13
numerous [1] 29/10
nurses' [1] 14/9
NW [2] 1/15 2/2

**O**

objection [1] 27/17
obligated [2] 16/20 27/16
obliged [5] 10/24 10/25 11/1
 17/1 17/18
oblique [1] 12/4
occasion [1] 13/9
occasions [1] 13/8
occur [1] 25/16
October [1] 11/18
Official [3] 2/9 32/6 32/21
oh [1] 22/14
okay [4] 3/9 11/4 15/4 30/22
old [1] 15/7
one [17] 6/4 8/24 9/3 9/4
 10/24 13/9 13/11 15/3 17/13
 18/13 18/25 23/9 23/10 23/14
 23/18 29/13 30/21
ones [1] 5/13
only [6] 5/9 14/11 20/25 27/7
 29/13 30/21
opening [1] 19/3
opens [1] 25/13
operate [1] 17/15
opinion [1] 17/11
opinions [3] 17/12 29/15 30/20
opposed [1] 24/15
opposition [2] 6/21 11/22
order [2] 4/14 13/6
ordering [1] 16/22
original [1] 19/5
originally [1] 18/1
other [13] 4/6 5/12 8/9 8/23
 10/1 14/9 14/15 15/5 23/1
 29/16 29/23 30/14 30/19
our [22] 6/20 7/1 8/7 11/1
 15/23 18/17 18/25 19/5 20/20
 20/25 22/16 23/5 26/17 26/22
 27/13 27/19 28/2 28/13 28/14
 29/13 29/15 29/24
out [14] 4/22 7/12 14/23 15/6
 15/9 16/7 16/19 19/14 26/10
 26/12 26/24 27/24 28/2 28/19
outline [1] 4/4
outlined [1] 6/6
over [5] 6/2 8/13 13/3 17/19
 17/19

**P**

P.L.L.C [1] 1/14

pages [6] 7/17 13/2 14/12
 29/11 30/4 32/13
paid [1] 5/4
paper [1] 26/23
papers [2] 26/22 27/19
paragraph [1] 4/22
part [3] 6/6 14/11 24/16
particular [3] 7/3 14/24 22/4
particularly [1] 13/11
parties [1] 4/14
patient [18] 4/16 9/18 9/19
 10/5 10/6 10/8 12/17 13/10
 14/1 14/18 17/3 22/10 22/12
 27/16 28/6 29/10 29/14 30/9
patient's [1] 9/17
patients [15] 4/11 4/13 5/12
 6/22 6/24 9/23 9/24 11/24 14/5
 15/2 15/12 20/21 22/23 22/25
 23/2
payor [2] 10/3 10/4
people [2] 20/1 22/6
percentage [1] 23/3
performed [1] 23/15
perhaps [1] 9/6
period [10] 15/8 16/8 17/24
 19/16 19/21 21/16 21/17 27/6
 27/9 27/11
periodically [1] 14/22
permission [1] 27/21
person [1] 6/18
persuaded [1] 17/16
phone [1] 3/13
physical [1] 14/1
place [2] 6/7 9/11
Plaintiff [5] 8/18 11/5 11/7
 16/17 29/4
Plaintiffs [5] 1/5 1/13 10/12
 13/16 17/7
Plaintiffs' [2] 6/15 16/17
played [1] 7/8
pleadings [4] 3/20 6/5 10/15
 21/21
PLLC [1] 2/6
plural [1] 20/12
plus [1] 11/20
point [8] 8/8 8/19 19/24 20/5
 22/17 24/21 27/24 28/2
pointed [1] 14/23
portion [1] 18/13
pose [1] 27/23
position [8] 7/1 10/23 24/24
 24/25 26/13 28/14 30/2 30/7
preclude [2] 3/17 18/22
preemptively [2] 24/16 25/7
prefer [1] 18/14
prejudice [6] 9/7 10/23 15/15
 16/2 16/10 25/1
preparing [1] 13/2
present [3] 22/10 24/1 25/11
presented [2] 10/18 24/15
previously [2] 15/19 15/22
primary [1] 18/25
principle [2] 21/23 21/25
printed [3] 15/9 19/14 26/24
prior [5] 11/1 13/6 13/18
 22/20 28/1
probably [2] 6/11 17/5
problem [2] 10/6 23/24
problems [1] 7/20
procedure [1] 30/16
proceedings [4] 1/10 31/2
 32/11 32/15
process [4] 4/17 7/11 7/18

**P**

process [1] 25/13
produce [9] 4/9 4/14 14/15
26/3 27/16 30/1 30/8 30/9
30/18
produced [45]
producing [2] 16/23 19/11
production [10] 10/21 11/3
11/23 12/10 13/17 17/21 24/13
25/2 28/2 28/16
productions [2] 28/13 28/14
proper [2] 19/22 19/25
propose [1] 16/4
proposition [1] 15/21
protocol [14] 6/6 6/15 6/21
8/21 8/22 9/2 9/5 9/11 9/16
9/17 10/1 10/11 10/17 10/19
proven [2] 14/4 15/11
provided [3] 24/10 27/25 29/9
pull [4] 6/16 8/24 8/24 9/3
purposes [1] 6/10
put [3] 9/25 13/8 21/6
putting [3] 11/2 17/6 20/12

**Q**

quantum [1] 17/10
question [12] 4/16 9/4 9/7
15/14 16/15 23/1 23/6 23/7
23/7 23/18 27/24 28/3
quick [2] 3/20 6/5
quickly [1] 20/16
quite [1] 30/1

**R**

raise [1] 6/20
raised [4] 26/22 29/10 29/13
29/24
raises [1] 28/3
rather [1] 10/22
re [2] 11/8 29/1
re-review [1] 11/8
re-reviewing [1] 29/1
reached [1] 23/22
read [2] 6/5 6/13
really [5] 4/21 13/4 13/6 16/1
20/25
reason [2] 11/13 12/16
reasonable [3] 14/2 15/11 30/2
rebut [1] 10/25
rebuttal [7] 10/25 11/6 15/16
25/17 27/18 29/15 29/19
rebutting [2] 26/19 30/19
receive [1] 9/23
received [6] 12/10 19/13 22/11
22/12 22/13 28/12
record [2] 16/25 20/2
records [15] 4/13 6/7 7/17
7/21 8/9 8/23 9/12 12/19 14/1
16/19 18/17 18/18 22/12 23/23
30/4
redoing [1] 17/23
reference [1] 12/4
referenced [1] 4/22
referring [1] 29/17
reflects [1] 27/1
reformulate [1] 17/12
regard [3] 26/17 26/21 29/10
regards [1] 11/3
reimbursed [1] 5/9
rel [2] 1/3 3/6
related [1] 3/18
relatively [1] 14/5
Relator [27] 3/11 7/22 8/20

12/1 12/24 14/6 14/14 14/19
16/24 18/23 18/24 28/20/3/20/16
21/2 20/14 23/13 25/3 25/10
25/11 25/14 25/20 26/8 27/6
29/4 29/9 29/18 29/23
Relator's [18] 3/16 4/10 4/12
4/17 4/23 5/6 10/12 10/18
10/20 12/14 14/23 15/2 16/17
19/4 20/18 21/19 24/4 26/19
Relator's expert [1] 10/20
Relators [5] 3/23 7/1 9/13
18/2 25/10
relevant [1] 28/19
relied [1] 23/25
relief [3] 4/2 4/7 20/5
rely [1] 15/22
relying [1] 15/18
remedy [7] 17/10 18/8 18/16
19/19 19/21 25/22 19/25
Remember [1] 14/11
reopen [2] 17/11 19/20
reopening [1] 17/24
repeatedly [4] 12/18 13/14
21/20 22/11
replacement [9] 6/23 7/4 7/13
7/14 8/9 8/25 9/3 9/13 10/1
report [26] 3/19 10/11 10/15
10/25 11/6 13/2 13/16 15/17
19/4 19/5 20/17 20/20 21/18
24/14 24/15 24/22 25/11 25/18
25/21 26/7 26/10 28/1 28/2
29/15 32/10 32/15
Reporter [4] 2/9 2/9 32/6
32/21
reporting [2] 17/24 17/24
19/21
reports [18] 7/7 7/8 7/23
14/20 15/24 16/3 16/5 16/12
17/9 20/6 20/12 21/11 24/24
27/13 28/13 29/1 29/9 29/24
representations [1] 13/18
representative [1] 18/19
represented [2] 13/9 13/14
representing [1] 16/23
reproducing [1] 29/1
requesting [2] 20/1 24/16
requests [1] 13/6
require [1] 11/8
required [4] 12/12 13/5 17/21
22/8
resources [1] 30/7
respect [1] 13/24
respond [2] 19/4 25/12 25/23
26/1
response [5] 6/14 7/21 14/15
29/19 29/21
responses [2] 11/1 11/16
result [2] 17/23 21/7
results [2] 10/17 18/10
review [2] 11/8 12/24
reviewing [4] 12/25 29/1 29/14
29/25
revisit [1] 26/9
rework [1] 11/8
rhetorical [1] 27/23
right [6] 3/5 3/14 4/3 23/17
25/21 30/22
ripe [1] 16/22
rise [3] 21/22 23/11 23/13
RMR [1] 2/9
RN [1] 12/12
ROBERT [2] 2/1 3/11
Rory [2] 3/10 27/20

round [2] 12/5 19/4
route [2] 11/5 30/17
routinely [1] 14/6
royce [3] 1/11 19/17/18 1/20
RPR [1] 2/9
rsalcido [1] 2/4
RUCKH [2] 1/4 3/7
RUG [9] 5/3 5/10 5/11 5/21
5/22 6/3 6/3 22/1 23/16
rule [1] 24/21
run [2] 3/20 25/7

**S**

said [8] 7/8 14/20 15/4 17/17
18/2 20/18 29/18 32/15
SALCIDO [2] 2/1 3/12
same [4] 18/17 24/9 28/18
28/20
sample [4] 4/13 6/22 14/24
15/3
sampling [1] 22/24
sanction [1] 18/24
sanctioned [1] 4/10
sat [2] 7/6 7/16
say [24] 7/24 11/19 13/8 16/15
17/11 18/17 19/22 20/17 20/21
22/13 23/8 24/17 24/24 25/3
25/7 26/10 26/18 27/14 27/15
28/5 28/12 28/16 28/23 29/5
saying [2] 15/3 27/2
says [3] 24/22 29/2 30/10
scenario [1] 30/13
schedule [5] 16/6 17/14 25/13
25/23 25/25
screaming [1] 18/5
search [1] 18/12
searched [1] 12/3
secondly [1] 8/5
security [2] 12/8 22/8
see [8] 7/8 12/15 15/4 21/13
24/21 27/13 27/14 30/10
seeks [1] 20/5
seems [3] 9/6 16/25 17/22
seen [1] 25/20
selected [1] 6/22
sense [1] 26/7
separate [1] 5/1
served [1] 25/6
set [5] 7/4 7/13 7/14 17/14
32/16
sets [3] 4/25 5/2 8/9
she [2] 27/7 27/9
sheet [1] 3/9
shifting [1] 16/24
shorthand [2] 32/11 32/15
shortly [1] 3/20
should [13] 4/9 7/10 7/10 7/12
11/12 13/20 20/1 23/21 24/13
25/7 28/15 29/2 30/5
shouldn't [1] 25/20
side [1] 8/20
sides [1] 24/23
signature [1] 27/5
signatures [3] 26/21 26/25
27/10
signed [3] 12/9 19/15 26/25
significant [1] 23/3
SILVIJA [8] 1/13 3/10 3/25 4/4
9/15 10/15 18/20 29/5
simply [10] 6/16 7/4 12/2 20/6
27/24 28/5 28/15 28/21 29/17
29/20
since [2] 15/24 28/13
sit [1] 26/7

**S**

situation [1] 30/9
sizable [1] 10/22
small [2] 14/6 14/11
so [56]
solution [1] 27/12
some [16] 5/12 6/6 7/20 7/24
 11/24 11/25 14/6 14/20 14/21
 15/5 15/7 15/18 19/7 19/16
 26/11 28/24
somebody [3] 6/9 6/10 17/5
something [5] 7/3 8/3 29/8
 30/4 30/23
sometimes [1] 8/14
somewhere [2] 6/13 12/2
soon [1] 30/23
sort [6] 6/8 7/6 9/8 10/6
 17/23 19/20
source [1] 10/3
Southern [1] 15/20
SPANGLER [3] 2/9 32/6 32/21
SPANGLER-FRY [3] 2/9 32/6
 32/21
speak [2] 6/11 27/21
speaking [1] 27/21
specific [3] 9/16 15/3 22/23
spring [1] 7/23
sstrikis [1] 1/16
St [1] 1/15
started [1] 15/20
starts [1] 4/22
state [8] 1/3 3/23 7/22 8/13
 14/15 30/13 32/3 32/17
stated [2] 11/22 32/12
statement [1] 22/20
STATES [5] 1/1 1/3 1/11 3/6
 32/7
Ste [2] 1/23 2/2
still [1] 16/7
stop [1] 19/1
stored [1] 12/9
Strauss [1] 2/2
STRIKIS [8] 1/13 3/10 3/25 4/5
 9/15 18/20 25/10 26/21
stuck [2] 19/23 20/2
styled [1] 32/12
subject [1] 28/1
submissions [1] 10/13
submit [3] 13/24 16/11 27/13
submitted [4] 4/16 12/9 13/16
 16/3
submitting [2] 15/16 23/14
subsequently [1] 27/25
substitute [3] 6/17 10/8 10/8
succinctly [1] 3/23
such [2] 30/10 30/11
suggested [1] 27/19
suggesting [1] 19/20
Suite [2] 1/15 2/6
supplement [4] 11/1 16/5 16/12
 17/21
supplemental [1] 11/23
supply [1] 25/17
support [7] 5/11 5/21 19/13
 22/18 23/5 24/7 24/10
support our [1] 23/5
supported [1] 4/15
supporting [1] 22/3
supports [5] 20/9 22/1 23/9
 23/9 23/16
suppressing [1] 18/12
sure [3] 19/1 20/6 27/22

**T**

take [3] 2/22 17/12 23/18
taking [1] 30/2
TAMPA [7] 1/2 1/6 1/23 2/7
 2/10 32/7 32/17
tampalawfirm.com [1] 1/24
tdunsford [1] 2/8
Team [1] 1/22
TELEPHONIC [1] 1/10
tell [3] 4/1 13/7 20/16
telling [1] 16/20
TERENCE [5] 2/1 6/19 13/22
 20/14 26/16
terms [1] 16/10
testimony [2] 18/13 19/9
than [1] 13/9 18/13
thank [5] 3/14 29/7 30/23
 30/25 31/1
Thanks [1] 3/14
that [261]
that's [18] 7/9 7/13 7/24 8/3
 9/13 11/20 14/12 14/17 15/4
 18/14 20/19 20/25 21/13 25/18
 26/14 26/15 29/1 30/13
their [23] 7/7 8/1 9/22 9/25
 10/23 11/21 13/16 14/19 14/25
 16/3 16/5 17/12 19/9 21/6 21/7
 21/11 25/11 27/24 28/1 28/10
 29/13 29/18 29/19
them [24] 7/19 7/19 7/22 8/10
 11/13 11/15 12/11 15/23 15/24
 16/2 16/3 16/6 16/11 17/18
 17/19 18/6 18/6 18/23 19/11
 21/1 21/5 21/17 22/25 27/17
them to [1] 7/19
themselves [1] 27/17
then [17] 6/9 6/23 7/7 7/22
 7/23 9/12 12/4 14/13 17/1
 21/11 24/22 25/11 26/8 27/17
 28/5 28/17 30/11
theory [5] 9/9 20/20 21/6
 21/12 23/8
therapy [3] 9/21 9/23 9/24
there [51]
there's [10] 10/14 11/15 12/4
 15/4 20/23 22/18 25/1 27/10
 29/19 29/23
therefore [8] 5/23 5/25 17/4
 20/19 20/22 26/19 27/25 28/8
therein [2] 4/15
Thereupon [1] 31/2
these [43]
they [102]
they're [13] 3/23 8/3 11/5
 12/11 14/24 20/15 21/8 22/14
 24/6 26/3 27/2 27/11 28/8
they've [4] 7/11 15/24 17/8
 29/16
thing [2] 25/7 27/4
things [2] 6/4 16/22
think [18] 3/22 10/16 13/4
 13/23 16/20 17/7 17/17 17/20
 19/3 19/21 20/20 21/6 25/3
 26/14 27/12 27/18 29/8 30/20
this [67]
THOMAS [1] 1/10
Thomas' [2] 14/16 30/14
those [7] 4/11 4/18 9/3 14/3
 18/18 28/5 29/16
though [2] 12/3 18/18
thought [3] 3/21 6/13 10/3
threw [1] 26/12

through [9] 3/20 4/4 4/13 6/5
 10/10 17/2 23/13 30/3 32/18
Thursday [2] 20/15 27/18
till [1] 21/16
time [11] 7/12 12/22 12/24
 15/8 19/16 19/18 20/3 27/6
 27/11 28/21 30/7
timely [1] 13/17
times [1] 15/10
timing [2] 16/1 16/10
TINA [2] 2/5 3/11
tlynam [1] 2/4
Todd [1] 1/14
together [1] 12/2
told [2] 11/15 19/10
too [5] 3/22 9/7 20/1 28/15
 28/21
took [1] 30/7
top [1] 5/14
total [1] 27/8
transcript [2] 1/10 6/11
transcription [2] 32/10 32/14
treated [1] 11/22
trial [5] 16/7 18/11 18/15
 21/3 25/13
tried [1] 26/22
tries [1] 30/11
troubled [1] 18/9
true [2] 15/11 32/14
truth [1] 18/12
try [1] 30/4
trying [2] 26/6 27/4
turn [2] 17/18 17/19
two [7] 9/5 10/25 13/12 16/21
 17/13 27/7 28/12
type [1] 10/4
types [1] 12/13
typical [2] 30/8 30/13

**U**

UB [9] 5/1 5/3 5/22 22/2 22/19
 23/14 23/16 24/7 24/10
UB-04 [9] 5/1 5/3 5/22 22/2
 22/19 23/14 23/16 24/7 24/10
ultimately [2] 5/4 22/1
unclear [1] 6/4
uncommon [1] 18/23
under [6] 5/7 13/5 13/6 16/1
 25/22 28/16
understand [1] 4/6
understanding [1] 16/15
undertaking [1] 12/20
unfair [1] 16/25
unintelligible [2] 5/7 27/25
unique [1] 25/18
UNITED [5] 1/1 1/3 1/11 3/6
 32/7
unsigned [2] 12/10 24/6
until [3] 7/7 16/9 28/10
untimely [4] 3/17 4/9 25/1
 25/5
unusual [1] 15/16
up [12] 4/19 5/2 6/16 8/24 9/3
 10/4 14/12 16/8 16/14 17/14
 19/3 25/13
urging [1] 9/8
us [5] 7/24 14/19 19/5 19/10
 28/7
use [16] 3/17 4/8 6/9 7/4 7/13
 8/10 11/5 17/25 18/17 18/22
 18/23 24/17 25/8 27/14 28/22
 32/10
used [3] 8/25 9/17 13/15

**U**

using [1]   13/23
usual [1]   25/17

**V**

valid [1]   20/20
validated [2]   15/12 22/21
vast [1]   15/13
versus [1]   3/7
very [6]   6/5 7/12 7/18 20/16
 28/15 29/25
view [1]   18/11

**W**

wage [1]   24/25
wait [1]   24/21
waited [1]   7/7
waiting [1]   25/6
want [1]   30/20
wanted [1]   8/19
wanting [1]   6/10
was [65]
Washington [2]   1/15 2/3
wasn't [8]   9/5 17/5 17/25 23/6
 23/6 24/2 26/25 30/5
way [6]   10/1 13/8 13/23 13/24
 17/14 18/14
we [74]
we'll [5]   3/22 8/17 17/11
 27/13 30/23
we're [4]   10/24 10/25 15/17
 18/12
we've [1]   19/12
weeks [2]   15/24 16/6
well [22]   4/6 5/13 8/1 8/20
 11/7 14/9 15/4 15/15 15/23
 17/11 19/19 21/15 21/17 21/17
 23/12 25/9 25/10 26/5 28/5
 28/17 29/20 30/10
went [3]   4/13 16/18 21/13
were [80]
weren't [7]   15/1 19/8 19/11
 20/8 20/23 21/12 21/12
what [48]
what's [2]   23/18 23/22
whatever [3]   6/7 22/16 26/2
when [21]   6/15 8/10 9/16 9/17
 9/25 13/16 13/25 14/13 14/19
 16/21 16/21 20/6 20/11 20/13
 21/4 22/10 23/18 24/1 28/21
 29/18 30/9
where [13]   5/16 5/19 8/23 9/11
 9/12 9/19 10/23 13/13 17/8
 19/2 19/7 19/17 20/7
where's [1]   11/4
WHEREOF [1]   32/16
whether [8]   4/14 13/25 14/2
 20/8 25/1 26/6 26/9 30/4
which [26]   3/19 4/19 4/25 5/1
 5/3 11/9 11/11 11/21 12/8
 12/12 15/11 15/17 16/7 17/5
 19/5 20/19 24/4 24/6 24/17
 26/3 27/2 28/2 28/3 28/18
 28/19 28/19
while [1]   12/24
who's [1]   26/10
whole [2]   4/18 27/4
why [5]   9/5 13/20 14/12 20/8
 21/13
will [11]   17/21 19/2 19/5
 20/17 20/21 24/9 26/18 28/14
 29/15 29/20 30/19
win [1]   18/3

wiser [1]   24/20
within [4]   9/15 18/23 31/15
 21/17
without [4]   12/20 22/10 22/18
 30/2
WITNESS [1]   32/16
witnesses [1]   19/9
won't [1]   26/10
words [1]   8/23
worked [6]   7/12 10/2 16/7 27/7
 27/7 27/10
would [27]   3/21 4/7 5/9 6/8
 6/16 9/12 9/12 11/8 12/5 13/24
 14/14 16/2 17/20 19/16 21/2
 21/7 24/7 24/20 25/12 25/16
 25/17 26/1 28/12 28/23 29/24
 30/3 30/6
wrong [4]   6/13 6/18 21/7 25/19

**Y**

Yeah [1]   5/25
year [4]   7/19 16/21 29/11 30/2
years [1]   16/21
yes [4]   22/13 22/13 22/13 29/7
yet [1]   16/9
you [58]
you'd [1]   18/5
you're [11]   4/2 7/24 9/8 9/8
 14/20 16/20 16/24 17/4 19/19
 19/23 24/16
you've [2]   8/18 24/23
your [61]
yourselves [1]   6/12