UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA and
STATE OF FLORIDA
*ex rel.* ANGELA RUCKH,

    Plaintiffs,

v.                                      CASE NO. 8:11-cv-1303-T-23TBM

SALUS REHABILITATION, INC., et al.,

    Defendants.
_____/

**ORDER**

A jury found the defendants, which operate fifty-three skilled nursing facilities in Florida, liable for 446 violations of the False Claims Act, and the judgments against the defendants total $347,864,285. In fiscal year 2016, CMC II earned $3.99 million before income tax, depreciation, and amortization; 803 Oak Street Operations earned $875,000; and 207 Marshall Drive Operations earned $30,000. (Doc. 447-2 at 5)  In other words, the defendants lack the ability to pay "any amount near" $347 million.  (Doc. 447 at 4 (citing Arrowsmith Dec. at ¶¶ 8, 15–17))  Arguing that the government's executing on the judgments might trigger the collapse of scores of skilled nursing facilities in seventeen states, the defendants move (Doc. 447) under

Rule 62(b), Federal Rules of Civil Procedure, to stay execution on the judgments until the disposition of the renewed motion for judgment as a matter of law.

MidCap Financial lends operating capital to the defendants and to more than a hundred non-party skilled nursing facilities under a single agreement. (Doc. 447-2 at 6–7) Twice a week, MidCap provides the facilities with money for payroll and rent, and each facility commits to repay every other facility's loan. (Doc. 447-2 at 7, explaining that all 183 facilities participating in the MidCap loan "are pledged as collateral, as are the receivables of the facilities") The facilities owe MidCap about $168 million. (Doc. 447-2 at 7)

Under the loan, a facility's failure to pay a judgment for more than $500,000 triggers a default if a judgment creditor begins collection or if the judgment persists for more than twenty days without a stay of execution. (Doc. 447-2 at 8) A default permits MidCap to halt lending to all 183 skilled nursing facilities and to accelerate the $168 million debt, which the facilities "cannot afford to pay." (Doc. 447-2 at 9) In other words, executing on the judgments exposes the defendants and more than a hundred non-party skilled nursing facilities to an abrupt halt in operations. In Florida, closing more than eighty skilled nursing facilities — providers of 11.5% of the nursing-facility beds in the state — will jolt the nursing market and will jeopardize the health of several thousand vulnerable patients.

Rule 62(b) permits a stay of execution "[o]n appropriate terms for the opposing party's security" during the pendency of a post-trial motion and exposes a judgment

creditor to only the minimal uncertainty attributable to a brief delay in execution.[1] In contrast, a stay pending appeal subjects the judgment creditor to prolonged uncertainty, including fluctuation in the value of collateral or loss of collateral or both. *Int'l Wood Processors v. Power Dry, Inc.*, 102 F.R.D. 212, 215 (D.S.C. 1984) (MacMahon, J.) (observing that Rule 62(b) omits mention of a security bond). In this circumstance, the defendants' proposal (Doc. 447 at 2), which bars a transaction except in the ordinary course of business and which permits inspection of the defendants' financial records, secures the government to the extent of the government's likely recovery.

## CONCLUSION

The specter of a "cascading default" that might force the closing of 183 skilled nursing facilities and might displace more than 17,000 vulnerable patients warrants a stay of execution on the judgments during the pendency of the defendants' renewed motion for judgment as a matter of law. *See Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133 (2d Cir. 1986) (Mansfield, J.) (enjoining execution of an $11.1 billion state-court judgment where execution would force Texaco into bankruptcy, causing the lay-off of several thousand workers and the loss of several billion dollars in market capitalization), *rev'd on other grounds*, 481 U.S. 1 (1987). The unopposed motion

---

[1] *Compare* Rule 62(b) ("On appropriate terms for the opposing party's security, the court may stay the execution of a judgment . . ."), *with* Rule 62(d) ("If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . .").

(Doc. 447) to stay execution on the judgments is **GRANTED**.[2] Execution on the judgments (Docs. 432–36) is **STAYED** under Rule 62(b) until the disposition of the defendants' renewed motion for judgment as a matter of law, and the clerk must not issue a writ of execution. In this action, the United States and the State of Florida must not record a judgment, docket an execution, or undertake levy or any other collection action until the expiration of this stay. Until the disposition of the renewed motion for judgment as a matter of law, the defendants:

> (1) must not conduct any transaction except in the ordinary course of business,
>
> (2) must respond promptly to a reasonable request by the relator, the United States, or the State of Florida for information about the defendants' finances, and
>
> (3) must permit the relator, the United States, and the State of Florida access to the defendants' financial records.

If the defendants' finances or conduct warrants an additional security requirement (other than a bond), the relator, the United States, or the State of Florida may request the additional requirement.

ORDERED in Tampa, Florida, on March 15, 2017.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[2] Because the parties lack authorization to submit the proposed "agreed order staying execution of judgments" (Doc. 450-1), the proposed order (Doc. 450-1) is **STRICKEN**. *See* Local Administrative Procedure IV(A)(4) ("No proposed order or judgment may be submitted unless authorized by the assigned judge.").