UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
AND STATE OF FLORIDA
*ex rel.* ANGELA RUCKH,

    Plaintiffs,

v.                                                           CASE NO. 8:11-cv-1303-T-23TBM

SALUS REHABILITATION, et al.,

    Defendants.
_____/

## **ORDER**

Nearly six years ago, the relator sued the defendants in this False Claims Act *qui tam* action. After twice moving successfully to extend the time within which to intervene and after solemnly deliberating for nine months, the United States deferred to the relator — represented by counsel expert in *qui tam* litigation — to conduct the action in the United States' behalf. (Doc. 10) Through years of discovery and a six-week trial, the United States attended other matters. The relator won $347,864,285. Attempting to overturn that result, the defendants move for judgment as a matter of law, and in a thorough response the relator opposes the motion.

Despite the relator's spectacular result, the United States moves (Doc. 453) for leave to submit a "statement of interest" and cites 28 U.S.C. § 517, which provides:

> The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in

> a court of the United States, or in a court of a State, or to attend to any other interest of the United States.

**1. Section 517 provides no right to submit a "statement of interest."**

Title 28, Part II (in which Section 517 resides), organizes the Department of Justice. Section 517 says nothing about a "statement of interest" — in a district court, in a *qui tam* action, or otherwise — but permits the Attorney General to dispatch the forces of the Solicitor General or another attorney at the Department of Justice to any federal or state court to attend to an "interest of the United States." One of several provisions in Chapter 31 that authorize the Attorney General to deploy a subordinate in place of the Attorney General, Section 517 contributes to the supervised exercise of delegated responsibility. Nothing about Section 517 supports an intent to create in the Solicitor General the right to appear and submit argument in any case in which the United States articulates a generic interest in the "development" and the "correct application" of the law.

The United States assumes that Congress obliquely provided in Section 517 the special opportunity to submit a "statement of interest." But throughout Title 28, for example, in Chapter 161, Congress unambiguously identifies the circumstances in which the United States can participate in an action. Within Chapter 161, 28 U.S.C. § 2403(a) empowers the United States to intervene in any federal-court action that questions the constitutionality of an "Act of Congress affecting the public interest." The clarity with which Congress establishes elsewhere the right to participate in an action belies the assumption that Congress conceals in an organizational chapter the

purported right to submit a "statement of interest" and to intervene-in-fact without formally intervening in accord with the False Claims Act.

**2. The United States identifies no interest inadequately protected by the relator.**

Even if Section 517 permits a "statement of interest" in some unspecified circumstance in an effort to preserve some inadequately protected interest, the United States fails to identify an interest inadequately protected by the relator. First, the United States asserts a "specific interest in . . . the development of law applicable to complex FCA cases" (Doc. 453 at 3), an interest manifest in this action (and every other *qui tam* action) from the outset. The United States presumedly maintains an enlivened interest in the development of all federal law, and little, if anything, distinguishes this action from all the others, except the prospect of the lion's share of $350 million. Understanding a party's interest in money requires no additional briefing. Second, the United States asserts a "keen interest" in the "correct" application of the False Claims Act. But the United States proffers no explanation why the relator's counsel, who successfully represented the relator in *United Health Services., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), cannot adequately interpret *Escobar*. And the United States' involvement in *Escobar* suggests, and the United States identifies, no unique insight into the correct interpretation and application of the False Claims Act. In *Escobar*, the United States urged affirming the lower court's decision; *Escobar* unanimously vacates the lower court's decision.

Although in this instance the United States' proposed "statement of interest" appears calculated to duplicate the relator's argument about the interpretation of

*Escobar*, in another circumstance the United States' participation might have offered a distinct perspective.  For example, the defendants moved (Doc. 447) to stay execution, which threatened to "jolt the nursing market and [] jeopardize the health of several thousand vulnerable patients."  (Doc. 451 at 2)  Arguing that the "public interest" favored a stay of execution, the defendants explained that denying the stay might unnecessarily disrupt the operation of more than a hundred skilled-nursing facilities. (Doc. 447 at 10)  As the public's representative, the United States might have explained whether and why the "public" favored or opposed the defendants' motion.  Instead, the United States declined to consent to the defendants' motion for a stay but sought no opportunity to submit a brief.  (Doc. 447 at 10)

**3. The False Claims Act specifies the circumstances in which the United States can participate in a *qui tam* action.**

Even if Section 517 authorizes a "statement of interest" and even if the United States identifies an interest inadequately represented by the relator, Section 517 appears inapplicable in an action under the False Claims Act.  Because the United States declined to intervene, Section 3730(c)(3) of the False Claims Act specifically limits the United States' participation to receiving a pleading and a transcript of a deposition.  *See Nguyen v. United States*, 556 F.3d 1244, 1253 (11th Cir. 2009) ("[A] specific statutory provision trumps a general one."); *see also United States v. Whyte*, --- F.Supp.3d --- , 2017 WL 377949 at *4 (W.D. W. Va. Jan. 26, 2017) (Kiser, J.) ("[I]f the government elects not to intervene . . . it is entitled to receive pleadings and deposition transcripts, but no more.").  The United States' invoking

Section 517 to proffer argument about the interpretation of the False Claims Act impermissibly circumvents the narrow role prescribed in Section 3730(c)(3).

## CONCLUSION

Five years and one day after declining to intervene and deferring to the relator, the United States requests leave to submit a "statement of interest" — a euphemism for an advocate's brief. But Section 517, an organizational statute, says nothing about a judge's receiving a post-judgment "statement of interest." Even if Section 517 establishes some opportunity to submit a "statement of interest," the United States can identify no interest inadequately represented by the relator. If the United States decides that the relator inadequately represents the United States' interest, under Section 3730(c)(3) the United States can move at any time to intervene and to conduct the litigation. But absent intervention, the United States cannot gratuitously compound the post-judgment argument by belatedly "weighing in" on behalf of the relator (and the $350 million). The motion (Doc. 453) for leave to submit a "statement of interest" is **DENIED**.

ORDERED in Tampa, Florida, on April 26, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE