# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF FLORIDA *ex rel.* ANGELA RUCKH,<br><br>    Plaintiffs,<br><br>             v.<br><br>CMC II, LLC; SEA CREST HEALTH CARE MANAGEMENT, LLC, d/b/a LAVIE MANAGEMENT SERVICES OF FLORIDA; SALUS REHABILITATION, LLC, d/b/a LAVIE REHAB; 207 MARSHALL DRIVE OPERATIONS, LLC, d/b/a MARSHALL HEALTH AND REHABILITATION CENTER; 803 OAK STREET OPERATIONS, LLC, d/b/a GOVERNOR'S CREEK HEALTH AND REHABILITATION CENTER,<br><br>    Defendants. | CIVIL ACTION NO.<br>8:11 CV 1303 SDM-TBM |

## RELATOR'S MOTION TO STAY ENFORCEMENT OF
## <u>ORDER AWARDING COSTS</u>

Relator, by and through her attorneys, hereby moves for a stay of enforcement of the order of costs (Dkt. No. 546) during the pendency of her appeal. If Relator prevails on her appeal, there will be no basis for an order of costs against Relator, and thus Defendants will have to repay to Relator any amounts they receive under

the current order. For the reasons stated below, the Court should avoid this needless and potentially damaging complication by staying enforcement of the order awarding costs during the pendency of Relator's appeal.

## BACKGROUND

Defendants are the management company, therapy company, and two facility operating companies in Florida's largest skilled nursing facility chain. Relator, an individual, is a registered nurse. On March 1, 2017, the Court entered judgments against Defendants totaling approximately $347 million, based on a jury verdict finding that Defendants had engaged in a years-long scheme to defraud Medicare and Medicaid. Dkt. No. 431. On January 11, 2018, the Court granted Defendants' motion for judgment as a matter of law. Dkt. No. 468. Relator timely filed a notice of appeal on February 8, 2018. Dkt. No. 476. That appeal remains pending, and Relator's opening brief is due on July 13, 2018.

On April 20, 2018, this Court entered an order granting an award of costs against Relator in the amount of $86,945.44. Dkt. No. 546. In light of her appeal, Relator now moves for a stay of enforcement of the order granting costs to Defendants during the pendency of her appeal.

## LEGAL STANDARD

The Court has discretion to stay enforcement of its orders based on the "balance of the equities," and a stay that merely preserves the status quo "is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the [relief] would

inflict irreparable injury on the movant." *LabMD, Inc. v. Fed. Trade Comm'n*, 678 F. App'x 816, 819 (11th Cir. 2016); *see also Fed. Trade Comm'n v. Lanier Law, LLC*, No. 3:14-CV-786-J-34PDB, 2015 WL 12915697, at *3 (M.D. Fla. Apr. 22, 2015) (same) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).

## ARGUMENT

**I.     The Balance of Equities Strongly Favors a Stay of Enforcement**

In evaluating awards of costs, courts "may consider the losing party's financial condition." *Gupta v. Walt Disney World Co.*, No. 605CV-1432-ORL-22UAM, 2007 WL 2002454, at *3 (M.D. Fla. July 5, 2007). That authority permits the Court to reduce or eliminate the award of costs in its entirety. *Id.* Relator's motion asks for far less: simply a stay of enforcement of the award until the resolution of the appeal. The disparity between the two parties and the size of the award — Defendants are a large business with billions of dollars in annual revenues, and the award of approximately $86,000 in costs would not be material to their operations — strongly favors granting this stay, particularly given that the outcome of the appeal may ultimately mean that Relator is entitled to an award of costs from Defendants and not the other way around. *See Kaw v. Sch. Bd. of Hillsborough Cty., Fla.*, No. 807CV2222T33TGW, 2010 WL 2293193, at *1 (M.D. Fla. June 8, 2010) ("If this court does not enter a stay, there is a possibility that monies paid for costs will have to be transferred multiple times before the final successful party obtains their cost. While this would not be a burden for the school district, it is a terrible burden for Ms.

Kaw, a kindergarten teacher.").

## II. Relator's Appeal Presents a Serious Legal Question

Relator's appeal presents "a serious legal question." As an initial matter, the appeal presents a novel question of whether the Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), which set forth the materiality standard for claims that included implied false certifications, extends with equal force to expressly false claims. In *Escobar*, for example, the relator alleged that the defendants' bills to the government stating that mental health services were provided contained implicit but false representations that the defendants' employees were properly licensed to provide those services. *See id.* at 2000-01. The Court held that these implied misrepresentations were actionable, but that the relator was required to show that the false representations were of the type that had a tendency to impact the government's decision whether to pay. *See id.* at 2001.

Here, by contrast, Relator introduced evidence that Defendants made *express* misrepresentations to the government in their bills to Medicare, stating that they had provided services when in fact they had not. There is a serious legal question as to whether *Escobar* should be extended to express false claims in this way. Moreover, the Supreme Court may revisit the *Escobar* decision. The Supreme Court has asked the Solicitor General to weigh in on whether the government's continued reimbursement of goods or services once it learns of the fraud — standing alone — is

sufficient to defeat materiality. *See Gilead Sciences, Inc. v. United States ex rel. Campie*, U.S. Docket No. 17-936 (Apr. 16, 2018).

Additionally, Relator's appeal presents several other questions of first impression, all of which are serious legal questions. For example, *Escobar* held that "proof of materiality … is *not* necessarily limited to" evidence of whether "the defendant knows that the Government consistently refuses to pay claims" of this sort. *Escobar*, 136 S. Ct. at 2003 (emphasis added), but this Court granted judgment as a matter of law on the basis that "*Escobar* indisputably requires that … the relator must prove" that "the vendor knew or reasonably should have known the government would refuse entirely to pay" (Dkt. No. 468 at 12). The appeal presents the question of first impression of whether *Escobar* in fact requires this additional level of proof (as well as the substantial question of whether Relator's evidence was sufficient to satisfy even that higher standard). Similarly, the appeal presents the question of whether *Escobar*'s materiality requirement demands proof that the misrepresentation would cause the government to "refuse entirely to pay," (Dkt. No. 468 at 12) or merely that the misrepresentation could affect the amount of the government's payment or the probability that it will pay. *See Escobar*, 136 S. Ct. at 2003; Restatement (2d) of Torts § 538(2)(a), at 80 (1977) (information is material if it influences the government "in determining [its] choice of action in the transaction").

This is more than enough to present a "serious legal question." *See Ruiz v. Estelle*, 650 F.2d 555, 569 (5th Cir. 1981) (appeal of district court's application of

recent Supreme Court case that presented questions of first impression has "substantial merit" sufficient to justify stay order).

### III. Relator Will Suffer Irreparable Injury Absent a Stay of Enforcement

The award of more than $86,000 is significant for Relator. Compounding that significance is the possibility that Defendants will enter bankruptcy prior to the resolution of the appeal. *See, e.g.*, Dkt. No. 463-1 at 4-5 (describing Defendants' losses of tens of millions of dollars per year). Thus, there is a real risk that in the absence of a stay, Relator will be required to pay more than $86,000 — an immaterial amount to a company with revenues in the billions — and then have that award reversed after appeal, only to find that Defendants have shielded themselves from repayment of that amount. There is no reason to risk such injury.

### IV. Defendants Will Not Suffer Substantial Harm from a Stay

A stay of enforcement on this Court's award of costs will not substantially harm Defendants because the amount at issue is immaterial to their operations. Defendants' operations are on the scale of billions of dollars. *See* Dkt. No. 463-1 (describing Defendants' cash flow and loan obligations). A potential delay of a few months to recover $86,000 in costs during the pendency of the appeal will not seriously impact Defendants' finances or operations.

### V. An Injunction Is in the Public Interest

Staying enforcement of the award of costs pending appeal will benefit the public interest. The False Claims Act is intended to protect the public fisc by

deterring fraud against the government.  *Cook Cty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003).  The possibility of cases by "private litigant[s]" are "crucial deterrent[s] to potential violators."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635 (1985).  Here, Relator brought serious claims of fraud on the Medicare and Medicaid programs that a jury ultimately concluded was born out by the facts.  Requiring Relator to pay the award of costs in advance of appeal, particularly in light of the equities and financial conditions described above, would deter individuals from bringing meritorious claims in the future and would undermine the purposes of the False Claims Act.  This would run strongly counter to the public interest.

## CONCLUSION

The Court should stay enforcement of its order awarding costs to Defendants pending resolution of Relator's appeal.

## LOCAL RULE 3.01(g) STATEMENT

Pursuant to Local Rule 3.01(g), Relator has conferred with Defendants prior to filing this motion. Counsel for Defendants has stated that Defendants take no position on the motion.

Dated: May 4, 2018                                          Respectfully submitted,

                                                            *s/ Silvija A. Strikis*

| | |
|---|---|
| Kevin J. Darken (FL. Bar No. 0090956) | Silvija A. Strikis (*pro hac vice*) |
| THE COHEN LAW GROUP | James M. Webster (*pro hac vice*) |
| 201 East Kennedy Boulevard, Suite 1950 | Joseph S. Hall (*pro hac vice*) |
| Tampa, FL 33602 | Rebecca A. Beynon (*pro hac vice*) |
| Telephone: (813) 225-1655 | Bradley E. Oppenheimer (*pro hac vice*) |
| Facsimile: (813) 225-1921 | KELLOGG, HANSEN, TODD, |
| kdarken@tampalawfirm.com |   FIGEL & FREDERICK, P.L.L.C. |
| | 1615 M Street, N.W., Suite 400 |
| | Washington, DC 20036 |
| | Telephone: (202) 326-7900 |
| | Facsimile: (202) 326-7999 |
| | sstrikis@kellogghansen.com |
| | jwebster@kellogghansen.com |
| | jhall@kellogghansen.com |
| | rbeynon@kellogghansen.com |
| | boppenheimer@kellogghansen.com |
| | |
| Rory Delaney (*pro hac vice*) | Charles F. Kester (*pro hac vice*) |
| DELANEY KESTER LLP | DELANEY KESTER LLP |
| 50 Congress Street, Suite 600 | 4505 Las Virgenes Road, Suite 203 |
| Boston, MA 02109 | Calabasas, CA 91302 |
| Telephone: (857) 498-0384 | Telephone: (818) 974-8627 |
| royston@delaneykester.com | Facsimile: (818) 914-6911 |
| | charles@delaneykester.com |

*Counsel for Relator*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 4, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for Defendants.

*s/ Silvija A. Strikis*